UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **ZENAIDA PEREZ,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FAIRFAX COUNTY SCHOOL BOARD,** | ) | |
| | ) | |
| **MONTELL BROWN**, individually and in his official capacity as Assistant Principal of Centreville High School, | ) ) ) | **Case No. 1:25-cv-2126-AJT-IDD** |
| | ) | |
| **CHAD LEHMAN,** individually and in his official capacity as Former Principal of Centreville High School, | ) ) ) | |
| | ) | |
| **ERIK HEALEY,** individually and in his official capacity as Principal of Centreville High School, | ) ) ) | |
| | ) | |
| **MICHELLE REID,** individually and in her official capacity as Superintendent of Fairfax County Public Schools, | ) ) ) | |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THE MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE**

## **TABLE OF CONTENTS**

**BACKGROUND AND OVERVIEW** ................................................................................. 1

**SUMMARY OF ARGUMENTS** ..................................................................................... 5

**KEY FACTUAL ALLEGATIONS** ................................................................................. 5

**LEGAL STANDARDS** ..................................................................................................... 9

**ARGUMENT** ...................................................................................................................... 11

I.      Plaintiff's VWPL Claim (Count I) Is Barred by Sovereign Immunity. ....................... 11

II.     Plaintiff's Defamation Claim (Count II) Is Subject to Dismissal on Multiple
        Grounds. ........................................................................................................................ 13

        A.      The School Board Is Entitled to Sovereign Immunity. .......................................... 14

        B.      The Individual Defendants Also Have Sovereign Immunity for Alleged
                Acts Taken in Their Official Capacity. .................................................................... 15

        C.      Qualified Privilege Further Immunizes the Allegedly Defamatory
                Statements. ............................................................................................................. 15

        D.      Plaintiff Fails to Plead Facts Sufficient to Support a Claim for Defamation
                *Per Se*. ..................................................................................................................... 18

        E.      Plaintiff's Claims Are Further Barred by Virginia's Anti-SLAPP Statute. ........... 20

III.    Plaintiff's State Free Speech Claim (Count III) Is Subject to Dismissal. .................... 22

IV.     Plaintiff's First Amendment Retaliation Claim (Count IV) Is Subject to
        Dismissal. ...................................................................................................................... 23

        A.      Plaintiff Fails to Adequately Plead That She Spoke on a Matter of Public
                Concern. ................................................................................................................. 24

        B.      The Individual Defendants Are Entitled to Qualified Immunity. .......................... 25

        C.      The School Board Is Immune from Liability Under *Monell*. ............................... 26

V.      Alternatively, Plaintiff's Immaterial and Impertinent Allegations Should Be
        Struck from the Complaint. ........................................................................................... 28

**CONCLUSION** ................................................................................................................. 29

## TABLE OF AUTHORITIES

**FEDERAL AND STATE CASES**

*Anderson v. Sch. Bd. of Gloucester Cnty., Virginia*,
    2020 WL 2832475 (E.D. Va. May 29, 2020) .......................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................10

*Atkinson v. Godfrey*,
    100 F.4th 498 (4th Cir. 2024) ..............................................................................................25

*Baldwin v. Baker*,
    2016 WL 11663756 (Va. Cir. Ct. 2016) (Prince Edward) ....................................................19

*Barry v. Novartis Pharms. Corp.*,
    2022 WL 2373452 (E.D. Va. June 30, 2022) .......................................................................11

*Baynard v. Malone*,
    268 F.3d 228 (4th Cir. 2001) ...............................................................................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................10

*Bradford v. Sch. Dist. No. 20, Charleston, S.C.*,
    244 F. Supp. 768 (E.D.S.C. 1965), *aff'd*, 364 F.2d 185 (4th Cir. 1966) .................................1

*Brayboy v. Durrette*,
    2019 WL 4033856 (Va. Aug. 27, 2019) ..............................................................................14

*Brooks-Buck v. Wahlstrom*,
    921 S.E.2d 223 (Va. 2025)...................................................................................................20

*CACI v. Premier Tech., Inc. v. Rhodes*,
    536 F.3d 280 (4th Cir. 2008) ...............................................................................................18

*Cale v. City of Covington, Va.*,
    586 F.2d 311 (4th Cir. 1978) ...............................................................................................23

*Campbell v. Galloway*,
    483 F.3d 258 (4th Cir. 2007) ...............................................................................................26

*Cashion v. Smith*,
    749 S.E.2d 526 (Va. 2013)...................................................................................................15

*Cole v. Buchanan County Sch. Bd.*,
    661 F. Supp. 2d 569 (W.D. Va. 2009) .................................................................................14

*Connick v. Myers*,
    461 U.S. 138 (1983)...........................................................................................26

*Croghan v. Fairfax Cnty. Sch. Bd.*,
    2002 WL 1941177 (Va. Cir. Ct. May 22, 2002) (Fairfax)......................................14

*Crouse v. Town of Moncks Corner*,
    848 F.3d 576 (4th Cir. 2017) ...........................................23, 24, 26, 27, 28

*Cunningham v. Gen. Dynamics Info. Tech, Inc.*,
    888 F.3d 640 (4th Cir. 2018) ...................................................................9, 10

*Dahm v. Flynn*,
    60 F.3d 253 (7th Cir. 1994), *as amended on denial of reh'g* (July 24, 1995) ........................21

*Davidson v. D.C.*,
    2010 WL 11583333 (D.D.C. June 4, 2010)...........................................................28

*Deedrich v. Danville Redevelopment & Hous. Auth.*,
    2025 WL 1265536 (W.D. Va. Apr. 30, 2025) .................................................11, 12

*Dewitt v. Prince William Cnty. Sch.*,
    2019 WL 13295861 (E.D. Va. Jan. 16, 2019) .......................................................14

*DiGiacinto v. Rector & Visitors of George Mason Univ.*,
    704 S.E.2d 365 (Va. 2011).................................................................................22

*DiMeglio v. Haines*,
    45 F.3d 790 (4th Cir. 1995) .........................................................................25, 26

*Edwards v. Schwartz*,
    378 F. Supp. 3d 468 (W.D. Va. 2019) .................................................................10

*Emesowum v. Arlington Cty.*,
    2020 WL 3050377 (E.D. Va. June 5, 2020) ...........................................................15

*Fairfax v. CBS Broad. Inc.*,
    534 F. Supp. 3d 581 (E.D. Va. 2020) ...............................................................11, 18

*Fairfax v. CBS Corp.*,
    2 F.4th 286 (4th Cir. 2021) ..........................................................................11, 21

*Fairfax v. New York Pub. Radio*,
    2023 WL 3303125 (E.D. Va. Apr. 4, 2023), *aff'd*, 2024 WL 3935041
    (4th Cir. Aug. 26, 2024)..........................................................................10, 17, 22

*Fayetteville Invs. v. Com. Builders, Inc.*,
    936 F.2d 1462 (4th Cir. 1991) ..........................................................................11

*Fischer v. Fort Belvoir Residential Cmtys. LLC*,
    2023 WL 5352297 (E.D. Va. Aug. 21, 2023)..........................................................28

*Ford v. Northam*,
    2023 WL 2767780 (W.D. Va. Mar. 31, 2023)..........................................................23

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008) ...................................................................................10

*Harless v. Nicely*,
    900 S.E.2d 503 (Va. App. 2024)...............................................15, 16, 17, 21, 22

*Ibanez v. Albemarle Cnty. Sch. Bd.*,
    897 S.E.2d 300 (Va. App. 2024)...............................................................................22

*Int'l Union v. Mystic, LLC*,
    2016 WL 4596353 (S.D.W. Va. Sept. 2, 2016) .......................................................10

*Isle of Wight Cnty. v. Nogiec*,
    704 S.E.2d 83 (Va. 2011)..........................................................................................20

*Jordan v. Kollman*,
    612 S.E.2d 203 (Va. 2005)........................................................................................20

*Jordan v. Sch. Bd. of City of Norfolk*,
    2023 WL 12069359 (Va. Cir. Ct. June 13, 2023) (Norfolk) ...................................14

*Jordan v. Sch. Bd. of City of Norfolk*,
    640 F. Supp. 3d 431 (E.D. Va. 2022) ...............................................................11, 12

*Katz v. Odin, Feldman & Pittleman, P.C.*,
    332 F. Supp. 2d 909 (E.D. Va. 2004) ......................................................................20

*Kellam v. Sch. Bd. of City of Norfolk*,
    117 S.E.2d 96 (Va. 1960)..........................................................................................14

*Kentucky v. Graham*,
    473 U.S. 159 (1985)........................................................................................15, 26, 27

*Konate v. Norfolk State Univ.*,
    CL 21-5524 (Va. Cir. Ct. Feb. 7, 2022) (Norfolk)................................................. 11

*Larimore v. Blaylock*,
    528 S.E.2d 119 (Va. 2000)................................................................................15, 16

*Lee v. Hawaii*,
    2010 WL 235009 (D. Haw. Jan. 20, 2010) ..............................................................21

*Long v. Old Point Bank of Phoebus,*
   1997 WL 33616272 (Va. Cir. Ct. 1997) (Norfolk) ................................................ 20

*Love-Lane v. Martin,*
   355 F.3d 766 (4th Cir. 2004) ....................................................................... 15, 27

*Lytle v. Doyle,*
   326 F.3d 463 (4th Cir. 2003) ............................................................................. 27

*Magill v. Appalachia Intermediate Unit 08,*
   646 F. Supp. 339 (W.D. Pa. 1986) .................................................................... 28

*Mais v. Albemarle Cnty. Sch. Bd.,*
   657 F. Supp. 3d 813 (W.D. Va. 2023) ..................................................... 13, 22, 23

*Mansfield v. Bernabei,*
   2011 WL 7478297 (Va. Cir. Ct. 2011) (Fairfax), *aff'd,* 727 S.E.2d 69
   (Va. 2012) ....................................................................................................... 20

*Martinez v. City of Opa-Locka, Fla.,*
   971 F.2d 708 (11th Cir. 1992) .......................................................................... 21

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,*
   674 F.3d 369 (4th Cir. 2012) ............................................................................ 18

*McCaffrey v. Chapman,*
   2017 WL 4553533 (E.D. Va. Oct. 12, 2017) ................................................ 22, 23

*McKay v. Clarke Cnty. Sch. Bd.,*
   1988 WL 619141 (Va. Cir. Ct. Mar. 1, 1988) (Clarke) ....................................... 14

*Monell v. Dept. of Soc. Services of City of New York,*
   436 U.S. 658 (1978) ..................................................................................... 26, 27

*Morse v. Frederick,*
   551 U.S. 393 (2007) ........................................................................................... 1

*Moschetti v. Off. Inspector Gen.,*
   2022 WL 3329926 (E.D. Va. Aug. 11, 2022) ..................................................... 12

*National Viatical Inc. v. Universal Settlements Int'l, Inc.,*
   2012 WL 3704773 (W.D. Mich. Aug. 27, 2012) ................................................. 29

*Nwoga v. N. Virginia Mental Health Inst.,*
   2025 WL 259203 (E.D. Va. Jan. 21, 2025) .......................................................... 9

*Pembaur v. City of Cincinnati,*
   475 U.S. 469 (1986) .......................................................................................... 28

vi

*Pigford v. Veneman*,
 215 F.R.D. 2 (D.D.C. 2003)................................................................................28, 29

*Porter v. Bd. of Trustees of N. Carolina State U.*,
 72 F.4th 573 (4th Cir. 2023) .........................................................................................25

*Purdham v. Fairfax Cnty. Sch. Bd.*,
 2009 WL 4730713 (E.D. Va. Dec. 9, 2009), *aff'd*, 637 F.3d 421
 (4th Cir. 2011)................................................................................................................12

*Pusey v. Fairfax Cnty. Sch. Bd.*,
 1990 WL 10039291 (Va. Cir. Ct. 1990) (Fairfax) .........................................12, 13

*Riddick v. Sch. Bd. of City of Portsmouth*,
 238 F.3d 518 (4th Cir. 2000) ........................................................................................27

*Schaecher v. Bouffault*,
 772 S.E.2d 589 (Va. 2015)..............................................................................................20

*Stickley v. Sutherly*,
 667 F. Supp. 2d 664 (W.D. Va. 2009) ......................................................................28

*Suiter v. Taylor*,
 2024 WL 3466186 (W.D. Va. July 19, 2024)...............................................23, 25, 26

*Treichel v. Natl Bus. Educ. Ass'n*,
 2020 WL 6323757 (E.D. Va. Aug. 19, 2020) ..........................................................19

*United States v. Ancient Coin Collectors Guild*,
 899 F.3d 295 (4th Cir. 2018) ......................................................................................11

*Van Vleck v. Sallyport Glob. Holdings, Inc.*,
 2019 WL 2273845 (E.D. Va. May 28, 2019) ....................................................16, 20

*Virginia Student Power Network v. City of Richmond*,
 2021 WL 6550451 (Va. Cir. Ct. 2021) (Richmond)..............................................23

*Watson v. Wake Cnty. Pub. Sch. Sys.*,
 2025 WL 2528711 (E.D.N.C. Aug. 26, 2025)...................................................24, 27

*Wiley v. Doory*,
 14 F.3d 993 (4th Cir. 1994) ........................................................................................25

*Wood v. Bristol Virginia Util. Auth.*,
 2023 WL 7921252 (W.D. Va. Nov. 16, 2023) .......................................................12

*Z.G. v. Pamlico Cty. Pub. Schs. Bd.*,
 744 F. App'x 769 (4th Cir. 2018) .............................................................................15

## CONSTITUTIONAL AND STATUTORY PROVISIONS

U.S. Const., amend. I ...............................................................................21, 22, 23, 24, 27

18 U.S.C. § 1983 ........................................................................................................23, 27

Va. Const., art. I, § 12 ..............................................................................................22, 23

Va. Const., art. VIII, § 7 ................................................................................................28

Va. Code § 8.01-223.2 ..............................................................................................20, 21

Va. Code § 22.1-253.13.7 ..............................................................................................28

Va. Code § 40.1-2 ......................................................................................................12, 13

Va. Code § 40.1-2.1 ...................................................................................................12, 13

Va. Code § 40.1-27.3 .............................................................................................5, 11, 12

Va. Code § 40.1-28.9 .......................................................................................................13

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1) ................................................................................................1, 9

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1, 10

Fed. R. Civ. P. 12(f) ...............................................................................................1, 11, 28

Fed. R. Evid. 201(b) .......................................................................................................10

Code of Pretrial and Trial Conduct, E.D. Va.,
    https://www.vaed.uscourts.gov/code-pretrial-and-trial-conduct ..............................29

Defendant Fairfax County School Board ("School Board"), together with Fairfax County Public Schools ("FCPS") administrators Montell Brown, Chad Lehman, and Erik Healey, and FCPS Superintendent Dr. Michelle Reid (collectively, "Defendants"), respectfully submit this memorandum of law supporting their motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff's First Amended Complaint ("FAC") with prejudice or, alternatively, to strike immaterial allegations under Rule 12(f).

## BACKGROUND AND OVERVIEW

Public school administrators "have a difficult job, and a vitally important one." *Morse v. Frederick*, 551 U.S. 393, 409 (2007). This job includes "a duty to the public to maintain close scrutiny and supervision of all teachers at all times to ensure their fitness and competence for the important task of educating young and impressionable students." *Bradford v. Sch. Dist. No. 20, Charleston, S.C.*, 244 F. Supp. 768, 772 (E.D.S.C. 1965), *aff'd*, 364 F.2d 185 (4th Cir. 1966). This case emanates from Defendants' efforts to fulfill that critical duty by providing appropriate scrutiny and oversight of a teacher who, over a period of years, has engaged in patterns of misconduct, at times violating school rules and disregarding direction from her superiors.

Plaintiff, Mrs. Zenaida Perez, is an English for Speakers of Other Languages ("ESOL") teacher at Centreville High School ("CHS"). As school records show, and the FAC acknowledges, Plaintiff has a tendency to involve herself in the personal affairs of students and their families. As one example, Plaintiff agreed, on behalf of a student and his family, to title the student's car in her own name and to purchase car insurance, representing herself to be the owner and driver. ECF 6 ¶ 36. Plaintiff has involved herself in other personal matters with students and their families, viewing this as a form of generosity without accepting or respecting admonitions from her school superiors who have emphasized the importance of maintaining professional distance and

1

boundaries. This pattern of behavior has created challenges for present and past CHS administrators, and Plaintiff, when subjected to scrutiny, has at times escalated narrower inquiries into broader, more contentious disputes. Plaintiff has often appeared to respond to such scrutiny by pressuring students and others within the school community to come to her defense. Plaintiff has also responded with complaints of her own challenging the actions of other school personnel whom she regards as her in-school adversaries.

In or around May 2022, Plaintiff was alleged to have provided pregnancy tests to a minor student, prompting a school investigation. *Id.* ¶ 12. CHS social worker Mrs. Carolina Diaz was a witness in that investigation, and she reported to school administrators what she learned from the student and her guardian. *Id.* ¶ 13. In response to Plaintiff's belief that she had been "set up" with false allegations by Mrs. Diaz, *id.* ¶¶ 12-13, Plaintiff began developing her own allegations against Mrs. Diaz—allegations that Mrs. Diaz had engaged in far more serious misconduct also involving student pregnancy issues.

In November 2022, during a meeting she requested with then-Principal Chad Lehman, Plaintiff reported that she had evidence of Mrs. Diaz secretly facilitating abortions for CHS students, without parental or guardian knowledge or consent. *Id.* ¶ 15. Upon learning of Plaintiff's abortion-related allegations, Defendant Lehman promptly investigated and found no proof to substantiate Plaintiff's claims. *Id.* ¶ 17. Lehman reported this back to Plaintiff and asked if she had any further evidence to share. *Id.* Plaintiff by this time had collected a written statement from the student whom she alleged had an abortion procedure facilitated and paid for by Mrs. Diaz, and apparently also had recordings of phone conversations with the same student and that student's adult relative. *Id.* ¶¶ 17-19. Yet Plaintiff failed to disclose these materials to Defendant Lehman, who thereafter closed his investigation in early December 2022. *Id.* ¶ 17.

For years after this, Plaintiff—outside the knowledge of school administrators—continued her own private, unauthorized investigation seeking to compile evidence of criminal wrongdoing by Mrs. Diaz. Then, in early August 2025, Plaintiff collaborated with a social media blogger who published a story making her abortion-related allegations public and revealing related evidence gathered by Plaintiff. *Id.* ¶ 20. Through this story and various published interviews that followed it, Plaintiff publicly accused Mrs. Diaz of criminal wrongdoing and Lehman of engaging in a related cover up.[1]

Following Plaintiff's public revelations, Virginia Governor Glenn Youngkin directed the Virginia State Police to commence a criminal investigation. ECF 6 ¶ 22. Learning of these allegations for the first time through the August 2025 social media story and follow-on reports, FCPS's senior leadership retained outside counsel to conduct a thorough investigation and to respond to related government inquiries. *Id.* ¶¶ 63-65. Two additional government inquiries soon followed—a request for information from the U.S. Senate Committee on Health, Education, Labor & Pensions ("HELP"), and a similar request from the Student Privacy Policy Office of the U.S. Department of Education. *Id.* ¶ 65.

On October 16, 2025, FCPS provided detailed written submissions to both government bodies, answering their questions and summarizing the interim conclusions of FCPS's fact-finding. Fields Decl., Exhs. A, B, and C. Those same responses were made public by FCPS through a letter sent the same day from Defendant Reid to the CHS community. Fields Decl., Exh. D.

As reported in FCPS's October 16 written submission, the facts uncovered by the Division's external counsel investigation point to the conclusion that Plaintiff's abortion-related

---

[1] *See* Declaration of Lucas M. Fields ("Fields Decl."), Exhs. A, B, and C. As explained below, *infra* at 10-11, Defendants have attached certain materials that the Court is at liberty to consider in the context of ruling upon this motion.

accusations are likely untrue and appear to have been predicated on witness statements that were false, if not knowingly false. ECF 6 ¶¶ 59-60; Fields Decl., Exhs. A, B, and C. FCPS's October 16 written submission also reviewed detailed facts indicating that Plaintiff herself may have fabricated or manipulated certain witness statements to lend credence to her accusations. *Id.* at 2, 6, 9, 23, 27-30. The same investigation revealed concerns regarding Plaintiff's personal behavior and apparent violations of school rules. *Id.* at 6-7, 10-12, 18-19. Following standard procedures, on October 23, Plaintiff was placed on paid administrative leave pending the completion of an investigation focusing on multiple forms of suspected misconduct, including (i) unauthorized disclosure of student-identifying information; (ii) apparent actions in withholding relevant requested information during an official school investigation, and possibly also withholding relevant information subject to an external Freedom of Information Act request; (iii) apparent actions in procuring falsified and/or manipulated statements for use in school-related matters; (iv) apparent failure to respect professional boundaries with students and their families; (v) apparent actions in making serious accusations against other school personnel based on false, and potentially knowingly false, information; and (vi) repeated failure to cooperate with reasonable requests made by school administrators or by outside legal counsel acting on FCPS's behalf. Fields Decl., Exhs. E, F.

On October 28, five days after being placed on administrative leave, Plaintiff filed the present lawsuit. In her original complaint filed in Fairfax County Circuit Court, Plaintiff alleged that CHS's current Principal (Erik Healey), a former CHS Principal (Chad Lehman), a current CHS Assistant Principal (Montell Brown), FCPS's Superintendent (Michelle Reid), and FCPS itself all have retaliated against and defamed Plaintiff because of her "complaint[s] of unlawful abortion trafficking." ECF 1-1 ¶ 11 (emphasis removed). In her FAC, filed in this Court on November 25,

following removal, Plaintiff reiterated the same basic claims, substituting the School Board in place of FCPS as a defendant.

## SUMMARY OF ARGUMENTS

Through this motion, Defendants now seek dismissal of Plaintiff's claims.

Plaintiff's claim for retaliation in violation of the Virginia Whistleblower Protection Act, Va. Code § 40.1-27.3, against the School Board (Count I) fails because the statute applies only to "employers" and, for purposes of this statute, the General Assembly excluded Virginia school boards and other Commonwealth subdivisions from that definition, thus preserving sovereign immunity.

Plaintiff's claim for defamation *per se* against all Defendants (Count II) also fails due to various pleading deficiencies and the broad applicability of qualified immunity. Fundamentally, the challenged statements all lack defamatory "sting."

Plaintiff's constitutional "free speech" claims (Counts III and IV) should both be dismissed because Plaintiff has failed to demonstrate that she engaged in protected speech on matters of genuine public concern. Count III is further barred by sovereign immunity, and Count IV is subject to dismissal based on the doctrines of official and qualified immunity.

Finally*,* even if the Court declines to dismiss the FAC in its entirety, it should strike Plaintiff's immaterial and impertinent attacks on Defendants' counsel. These ad hominem charges against a non-party (and officer of the court) serve no purpose other than to color the Court's opinion of Defendants and their counsel.

## KEY FACTUAL ALLEGATIONS

Plaintiff alleges that on May 5, 2022, she informed her immediate supervisor, Assistant Principal George Parker, and another assistant principal, Alexis Wenzel, that CHS social worker

Carolina Diaz had provided "pregnancy tests and 'pregnancy solutions'" to students. ECF 6 ¶ 12. Plaintiff acknowledges that she made these claims "[i]n response" to separate allegations that she herself had previously provided pregnancy tests to a student—allegations that Plaintiff claims to be "false" and the result of a "set up" perpetrated by Mrs. Diaz. *Id.* ¶¶ 12-13. Plaintiff avers that she then sent a memo to Parker and Defendant Lehman on May 13, 2022, reiterating her belief that Diaz "provided pregnancy tests" and "support" to students and insisting she had "evidence" that Diaz helped a specific student "solve" a "pregnancy issue." *Id.* ¶ 12. Plaintiff does not allege that she identified the student by name at this time or provided any evidence of her claims. Plaintiff avers that she then sent an email, on June 9, 2022, to Defendant Lehman, stating, "[W]e all know that the social worker helps the students to solve pregnancy situations." *Id.* ¶ 14.

Plaintiff next claims that months later, in November 2022, she met with Defendant Lehman and at this time revealed the identity of the student (Doe #1) she believed obtained an abortion "that Diaz had facilitated." *Id.* ¶ 15. Plaintiff also alleges that the student's uncle, whom she alleges "was her legal guardian," was not told of the abortion. *Id*. During their November meeting, Plaintiff alleges that Defendant Lehman did not remember being told about school personnel "facilitating abortions," which led Plaintiff to "re-forward" to him an email in which she previously claimed that Mrs. Diaz helped students with "pregnancy solution[s]"—a term that Plaintiff alleges Lehman should have understood as referring to abortions. *Id.* ¶ 16. Plaintiff acknowledges that Lehman later followed up with her explaining that he had spoken to Mrs. Diaz and a school counselor, Ms. Villeda, and that they reported "a very different version" of events. *Id.* ¶ 17.[2]

---

[2] Plaintiff alleges that her late-November meeting with Lehman (at 12:30 p.m.) and his follow-up email (at 1:05 p.m.) occurred the same day, November 22, 2022, and on this basis she accuses Defendant Lehman of being a "One Minute Manager," suggesting he had little time to conduct a proper investigation. *Id.* However, contemporaneous documents show that Plaintiff actually met with Lehman the day before, on November 21, 2022. Fields Decl., Exh. G; *see also* Fields Decl.,

Although Plaintiff acknowledges that Defendant Lehman invited her to "share" any "further information" she may have regarding her allegations, she does not allege that she shared anything more, despite averring that by this time she possessed "the evidence to prove" her claims, including a purported written statement she "procured from Doe #1." *Id.* ¶¶ 17-18.

Plaintiff alleges that the next time she raised her abortion-related concerns to any FCPS representative was roughly two-and-a-half years later, on March 7, 2025, when she met with FCPS's outside counsel during what she describes as an "unrelated investigation." *Id.* ¶ 46. She alleges that on May 2, 2025, she also shared her claims with James Mackie from FCPS's Office of Employee Relations ("OER"). *Id.* ¶¶ 38, 42, 53.

Plaintiff alleges that on August 5, 2025, the statement she procured from Doe #1 was published online by Walter Curt. *Id.* ¶ 20.[3] As already noted, shortly after that August 5 blog post the Virginia State Police were directed by the Governor to launch a criminal investigation, and not long thereafter the Senate HELP Committee and Department of Education each launched their own related inquiries.

As noted, Plaintiff filed her initial defamation and retaliation suit on October 28, 2025, in the Fairfax County Circuit Court, and later filed her FAC following removal to this Court on November 25.

Plaintiff bases her defamation claims on allegedly defamatory statements falling into several categories. She alleges that Defendants Brown and Healey made defamatory statements about her inappropriate attempts to assist students with personal affairs, specifically that Plaintiff:

- "helped [a student] acquire a pregnancy test" and "facilitated the logistics for the student, Doe #3, to purchase a pregnancy test," ECF 6 ¶¶ 31, 32;

---

Exh. C at 16, n.69.
[3] *See* Fields Decl., Exh. H.

- "violated Regulation 4444.1 – Prevention of sexual misconduct and abuse," *id.* ¶ 35;

- "hid student Doe #3 in her classroom," *id.* ¶ 48; and

- "falsified records" and "had an inappropriate relationship with a student [Doe #4]," *id.* ¶ 40; *see also* ¶ 36.

She next alleges that Defendants Brown and Healey made defamatory statements about two instances where Plaintiff failed to perform certain duties because she:

- "blatantly disregarded a directive to review and correct her gradebook," *id.* ¶ 45; and

- "didn't leave lesson plans for her classes" when she was "on sick leave," *id.* ¶ 56.

She also alleges that Defendant Reid made defamatory statements when, in October 2025, she referenced outside counsel's interim fact findings in statements to CHS staff and families, specifically these statements:

- "It appears that the teacher who made these allegations may have falsified the evidence and intentionally refused to cooperate with the original school-based investigation of her allegations in 2022," and that "[w]e have an obligation to protect our staff from wrongful and unjustified accusations," *id.* ¶ 59; and

- "these 2021 allegations are likely untrue. We have an obligation to protect our staff from wrongful and unjustified accusations," *id.* ¶ 60.

Finally, Plaintiff alleges that:

- Defendants Brown and Healey told attorneys that Plaintiff "instigated bullying" among students, *id.* ¶ 58;

- "FCPS and/or King & Spalding" "fabricated" a "claim that [Plaintiff] somehow manipulated evidence or witnesses," *id.* ¶ 66; and

- "FCPS, through its King & Spalding counsel" "accused [her] of 'trespass[ing] onto FCPS property without authorization,'" *id.* ¶ 68.

Plaintiff's retaliation claims date back to November 2022 when she alleges that Lehman began ignoring her in the school hallways. *Id.* ¶ 24. Plaintiff further insists that her teaching load

was "more burdensome" than that of other ESOL instructors for the 2023-2024 school year. *Id.* ¶ 25. By December 2024, she claims that Brown was purportedly encouraging students "to do or say things about [Plaintiff] to get her in trouble." *Id.* ¶ 33. Plaintiff alleges that Brown instructed two male students to ask Plaintiff for rides in her car and to report the incidents to Brown. *Id.* ¶¶ 44, 49. Plaintiff also blames Brown and Healey for the supposed rumor that Plaintiff had "an inappropriate illicit relationship with a male student"—the same male student that Plaintiff admits she helped obtain title, registration, and insurance for his car. *Id.* ¶ 36; *see also id.* ¶¶ 39-40.

In further support of her retaliation claims, Plaintiff points to her one-day suspension on May 1, 2025. *Id.* ¶ 52. Plaintiff alleges that her suspension resulted from Brown's alleged report that Plaintiff had locked a student in her classroom earlier that year. *Id.* ¶ 48. Plaintiff likewise alleges that Brown revised her teaching assignments for the upcoming academic year out of spite. *Id.* ¶¶ 50, 54. Plaintiff further alleges that in May 2025 Brown asked two male students why they had been texting Plaintiff on her personal cell phone. *Id.* ¶ 55. From this, Plaintiff concludes that Brown was monitoring her personal texts and emails—although she acknowledges that she linked her personal cellphone and email to FCPS networks and accessed her personal email on her school-issued laptop. *Id.* Finally, Plaintiff insinuates that Defendants prevented her from transferring to another school; however, as Plaintiff alleges, it was administrators from another school who informed Plaintiff that she could not interview while under contract at CHS. *Id.* ¶ 51.

## LEGAL STANDARDS

"A motion to dismiss pursuant to 12(b)(1) should be granted where a court lacks jurisdiction to hear any or all claims before it." *Nwoga v. N. Virginia Mental Health Inst.*, 2025 WL 259203, at *2 (E.D. Va. Jan. 21, 2025). A federal court lacks subject matter jurisdiction "[w]here sovereign immunity applies." *Id.* at *3 (citing *Cunningham v. Gen. Dynamics Info. Tech,*

9

*Inc.*, 888 F.3d 640, 649 (4th Cir. 2018)).

Rule 12(b)(6) requires dismissal where a plaintiff fails "to 'state a claim [to] relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is not sufficiently plausible "where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct." *Id.* at 679. Although the Court in ruling upon a Rule 12(b)(6) motion must construe the factual allegations in Plaintiff's favor, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citation omitted). Moreover, recognizing the high cost of defending "baseless defamation claims . . . federal courts have historically given close scrutiny to pleadings" in the context of such actions. *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 500 (W.D. Va. 2019).

Although courts ordinarily confine review to the complaint and its attachments for purposes of ruling upon Rule 12(b)(6) motions, two relevant exceptions apply here. Specifically, the Court here may consider: (1) public records properly subject to judicial notice under Federal Rule of Evidence 201(b); and (2) materials attached to or incorporated by reference in the complaint. *See Int'l Union v. Mystic, LLC*, 2016 WL 4596353, at *6 (S.D.W. Va. Sept. 2, 2016); *Fairfax v. New York Pub. Radio*, 2023 WL 3303125, at *3 (E.D. Va. Apr. 4, 2023), *aff'd*, 2024 WL 3935041 (4th Cir. Aug. 26, 2024). In defamation cases in particular, where the plaintiff's claim "appears to be based" on statements in materials like publications, recordings, and other extrinsic materials, and those materials are attached to a motion to dismiss, a court may consider those materials because, to "determin[e] whether [alleged statements] are actionable, the statements *must be considered . . . in their entirety*." *New York Pub. Radio*, 2023 WL 3303125, at *3 (emphasis added). These doctrines allow a court to consider complete versions of selectively quoted or

10

characterized materials to assess context. When a court considers such extrinsic materials, both the allegations in the complaint and the "referenced [materials], are assumed true." *Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581, 585 & n.2 (E.D. Va. 2020), *aff'd sub nom. Fairfax v. CBS Corp.*, 2 F.4th 286 (4th Cir. 2021). However, "[w]here the bare allegations of the complaint conflict with any document incorporated therein [for its truth], the document prevails." *Barry v. Novartis Pharms. Corp.*, 2022 WL 2373452, at *2 n.2 (E.D. Va. June 30, 2022) (citing *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

Finally, Rule 12(f) permits a court to strike "from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A district court has considerable discretion in determining whether to strike matters from the pleadings and may do so on a motion or *sua sponte. See United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 324-25 (4th Cir. 2018).

## ARGUMENT

### I.    Plaintiff's VWPL Claim (Count I) Is Barred by Sovereign Immunity.

Plaintiff's Virginia Whistleblower Protection Law ("VWPL") claim against the School Board (Count I) fails as a matter of law because the statute, by its terms, only applies to "employer[s]." Va. Code § 40.1-27.3(A)(1) ("An employer shall not discharge, discipline . . . or take other retaliatory action . . . because [an] employee . . . in good faith reports a violation of any federal or state law."). Courts construing Virginia law have consistently held that school boards— along with universities, agencies, and other public bodies—do not qualify as an "employer" for purposes of claims under this provision. *See Jordan v. Sch. Bd. of City of Norfolk*, 640 F. Supp. 3d 431, 452-53 (E.D. Va. 2022); *see also* Order, *Konate v. Norfolk State Univ.*, CL 21-5524 (Va. Cir. Ct. Feb. 7, 2022) (Norfolk) (sustaining Norfolk State University's plea in bar because it was not an "employer" under Section 40.1-27.3); *Deedrich v. Danville Redevelopment & Hous. Auth.*, 2025 WL 1265536, at *4 (W.D. Va. Apr. 30, 2025) (granting motion to dismiss "[b]ecause Virginia's

11

anti-retaliation statute [Section 40.1-27.3] does not contemplate entities like the Housing Authority within its definition of 'employer'"); *Wood v. Bristol Virginia Util. Auth*., 2023 WL 7921252, at *2 (W.D. Va. Nov. 16, 2023) (dismissing count under Section 40.1-27.3 because the statutory definition of "employer" "does not include political subdivisions of the Commonwealth")*; Moschetti v. Off. Inspector Gen*., 2022 WL 3329926, at *10 (E.D. Va. Aug. 11, 2022) (granting motion to dismiss because the "Commonwealth and its agencies . . . are immune from suit under § 40.1-27.3").

Section 40.1-27.3 itself does not define "employer"; it relies on the general definitions and exclusions found in Section 40.1-2 of the same title of the Virginia Code. *See Jordan*, 640 F. Supp. at 451 ("the definition of 'employer' that applies to [Section 40.1-27.3] is the general definitions provision . . . Va. Code § 40.1-2," because "Article 1, within which Section 40.1-27.3 is organized, contains no . . . article-specific definitions"). Section 40.1-2's general definition of "employer" does not mention the Commonwealth, its agencies, institutions, and political subdivisions, including school boards. *Id.* at 452 ("failing to provide a definition of employer in Section 40.1-27.3 that includes the Commonwealth and other public bodies was an *intentional omission* by the General Assembly") (emphasis added); *see also Purdham v. Fairfax Cnty. Sch. Bd.*, 2009 WL 4730713, at *4 (E.D. Va. Dec. 9, 2009) (finding that the "School Board is a political subdivision of the State"), *aff'd*, 637 F.3d 421 (4th Cir. 2011); *Pusey v. Fairfax Cnty. Sch. Bd.*, 1990 WL 10039291, at *1 (Va. Cir. Ct. 1990) (Fairfax) ("the School Board is a . . . political subdivision of the Commonwealth of Virginia").

Section 40.1-27.3's omission of political subdivisions, including school boards, is by design. The Virginia General Assembly has unambiguously preserved sovereign immunity for such entities in Section 40.1-2.1, which states:

> The provisions of this title and any rules and regulations promulgated pursuant thereto **shall not apply** to the Commonwealth or any of its agencies, institutions, or political subdivisions, or any public body, **unless and to the extent that, coverage is extended by specific regulation** of the Commissioner or the Board.

Va. Code § 40.1-2.1 (emphasis added); *see also* Va. Code § 40.1-2 (defining "Commissioner" as the "Commissioner of Labor and Industry" and "Board" as the "Safety and Health Codes Board"). Where the General Assembly wishes to waive sovereign immunity under this title, it does so expressly by specifying that the Commonwealth or certain state entities qualify as an "employer" for purposes of the statute. *See, e.g.*, Va. Code § 40.1-28.9 (defining "employer" as "the Commonwealth, any of its agencies, institutions, or political subdivisions, and any public body"). Because the VWPL includes no such waiver for school boards, the School Board retains its sovereign immunity, and the claim must be dismissed. *See Pusey*, 1990 WL 10039291, at *1-2 (dismissing with prejudice because Fairfax County School Board is a "political subdivision" "immune from suit"); *Mais v. Albemarle Cnty. Sch. Bd.*, 657 F. Supp. 3d 813, 819, 823 (W.D. Va. 2023) (dismissing claims on sovereign immunity grounds against "Albemarle County [School Board]" as it was a "political subdivision" with general "immunity from liability for tortious injury.").

## II.    Plaintiff's Defamation Claim (Count II) Is Subject to Dismissal on Multiple Grounds.

Plaintiff's claim for defamation *per se* fails for five reasons. ECF 6 ¶¶ 91-104. First, the School Board has sovereign immunity. Second, the individual Defendants acting in their official capacities also enjoy sovereign immunity. Third, the claims against the individual Defendants relating to alleged acts taken in their individual capacities are protected by qualified privilege. Fourth, the alleged defamatory statements, as pled, do not amount to defamation *per se*. Finally, Virginia's Anti-SLAPP statute separately entitles Defendants to immunity and fees.

A.      **The School Board Is Entitled to Sovereign Immunity.**

Virginia courts have long held that school boards function as arms of the Commonwealth and share its absolute immunity from tort liability, including in relation to defamation claims. *See Kellam v. Sch. Bd. of City of Norfolk*, 117 S.E.2d 96, 97 (Va. 1960). Accordingly, federal and state courts applying Virginia law have consistently dismissed defamation claims against school boards. *See Dewitt v. Prince William Cnty. Sch.*, 2019 WL 13295861, at *3 (E.D. Va. Jan. 16, 2019) (dismissing defamation claim because "Prince William County School Board, as 'a governmental agency or arm of the state' is entitled to sovereign immunity from liability for tort claims"); *Cole v. Buchanan County Sch. Bd.*, 661 F. Supp. 2d 569, 573 (W.D. Va. 2009) (dismissing defamation claim against school board "because Virginia common law holds that county school boards are immune from state-law tort liability, which includes claims of defamation"); *Brayboy v. Durrette*, 2019 WL 4033856, at *1-2 (Va. Aug. 27, 2019) (affirming judgment that "sustain[ed] a plea in bar against the School Board" on "sovereign immunity" grounds in a "defamation action"); *McKay v. Clarke Cnty. Sch. Bd.*, 1988 WL 619141, at *1, *3 (Va. Cir. Ct. Mar. 1, 1988) (Clarke) (sustaining "demurrer based on sovereign immunity" in "action for defamation brought by a former teacher" "as to the [School] Board, its members and the division superintendent").

This immunity applies regardless of the severity of the allegations. *See Croghan v. Fairfax Cnty. Sch. Bd.*, 2002 WL 1941177, at *2 (Va. Cir. Ct. May 22, 2002) (Fairfax) (dismissing claims against Fairfax County School Board because "the immunity shared by the state and its agencies (including school boards) is absolute and applies as a bar to liability whether the degree of alleged negligence is simple or gross"); *Jordan v. Sch. Bd. of City of Norfolk*, 2023 WL 12069359, at *1 (Va. Cir. Ct. June 13, 2023) (Norfolk) (sustaining "Special Plea of Immunity asserted by the School Board" against claims of "discrimination" and "retaliation" under the Virginia Human Rights Act). Consequently, the defamation claim against the School Board should be dismissed with prejudice.

**B.    The Individual Defendants Also Have Sovereign Immunity for Alleged Acts Taken in Their Official Capacity.**

It is well settled that a school board's immunity extends to individual school administrators sued in their official capacities. Official-capacity claims against such individuals "represent only another way of pleading an action against an entity of which an officer is an agent," and thus "the real party in interest is the entity," "*not . . .* the official personally." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (emphasis in original; citation omitted). As such, where sovereign immunity applies to a government entity, including a school board, courts routinely dismiss claims against that entity's constituent officers acting in their official capacity. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (affirming dismissal of official-capacity claim against school superintendent); *Z.G. v. Pamlico Cty. Pub. Schs. Bd.*, 744 F. App'x 769, 780 (4th Cir. 2018) (same); *Emesowum v. Arlington Cty.*, 2020 WL 3050377, *6 (E.D. Va. June 5, 2020) (dismissing claims against county officials acting in their official capacity). Thus, Plaintiff's defamation claims against the individual Defendants in their official capacities should also be dismissed with prejudice.

**C.    Qualified Privilege Further Immunizes the Allegedly Defamatory Statements.**

Under Virginia law, qualified privilege attaches to "[c]ommunications between persons on a subject in which the persons have an interest or duty," and is grounds for dismissal of defamation claims. *Cashion v. Smith*, 749 S.E.2d 526, 532 (Va. 2013) (citation omitted). The privilege extends to communications between "co-employees and employers in the course of employee disciplinary or discharge matters." *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000). To overcome qualified privilege, a plaintiff must allege "that the defamatory words were spoken with common-law malice," which is "defined as some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff." *Harless v. Nicely*, 900 S.E.2d 503, 509 (Va. App. 2024) (internal quotation marks omitted). This is a high bar and in employment matters "the

15

absence of malice is presumed." *Larimore*, 528 S.E.2d at 122.

The recent *Harless* decision is instructive. There, a high school teacher and football coach sued four employees of Roanoke County Public Schools—including the principal, a school board member, and the superintendent—based on their statements that the plaintiff had acted in a racist manner and engaged in illicit player recruiting practices. 900 S.E.2d at 505-09. The court affirmed the dismissal, reasoning that qualified privilege applied because the defendants: (1) made the statements in the course of their duties to "express their concerns about another employee who could have potentially been violating . . . policies—which could ultimately lead to that employee's discipline or to the termination of his employment"; and (2) shared a common interest in "ensuring that their students are not subjected to . . . unsportsmanlike practice[s]" and in "protecting the well-being of each and every student." *Id.* at 508-09.

Here, the statements by FCPS and CHS administrators that Plaintiff challenges as defamatory—all of which focus on Plaintiff's actual or suspected failures to comply with school rules (e.g., by furnishing students with pregnancy tests, titling and insuring a student's car in her own name, etc.)—were made by Defendants in the course of performing their duties. *See* ECF 6 ¶¶ 32, 35, 40, 45, 48. As school officials, Defendants have a vested interest in safeguarding students and ensuring employees comply with school division policies and regulations. *See Harless*, 900 S.E.2d at 509-10. This privilege applies equally to statements made by school administrators to parents/guardians and to staff who share a common interest in student well-being, as well as to communications with legal counsel. *See id.; see also Van Vleck v. Sallyport Glob. Holdings, Inc.*, 2019 WL 2273845, at *2-3 (E.D. Va. May 28, 2019).

All of the allegedly defamatory statements by the individual Defendants occurred within the scope of their administrative and supervisory functions, triggering qualified privilege.

Moreover, every such statement on which Plaintiff bases her claim was made in the context of communications among FCPS staff or with FCPS counsel, or statements directed to students and their families. To overcome qualified privilege, Plaintiff would be required to plead facts sufficient to show that Defendants acted with malice, yet the pleadings in this regard are woefully deficient. Plaintiff does not identify a single specific statement or action that she claims to evidence malice. Instead, she makes only conclusory allegations that Defendants acted with "spite" or "ill-will," ECF 6 ¶¶ 99-101—precisely the types of "general conclusion[s]" that do not suffice to state a claim. *Harless*, 900 S.E.2d at 509-10 (plaintiff's conclusory allegations that public school officials held "malicious animus" against him were insufficient to plead malice); *see also New York Pub. Radio*, 2023 WL 3303125, at *4 ("[R]ote and conclusory allegations that merely repeat the standards applicable to establishing actual malice, without any particularized facts, are insufficient to plausibly allege actual malice.").

The closest Plaintiff possibly comes to alleging malice is her apparent claim that Brown published a statement he "knew" to be "false" when he referred in an internal memo to Plaintiff having "violated Regulation 4444.1-Prevention of sexual misconduct and abuse." ECF 6 ¶¶ 35, 97 (emphasis removed). Plaintiff suggests that Brown "said that [she] enabled students for inappropriate sexual misconduct," *id.* ¶ 97, but this is highly misleading and not supported by her own allegations. The memo in question references Regulation 4444.1, which does expressly reference the prevention of sexual misconduct. Fields Decl., Exh. I. However, this regulation is focused far more broadly on "encourag[ing] healthy relationships with students," and prohibits a wide variety of behaviors that generally involve crossing appropriate boundaries with students, including "[v]isit[ing] the homes of students" and "[t]ransporting students in personal vehicles." *Id.* The memo in question, which Plaintiff alleges Brown "read . . . out loud," makes clear that the

reason Plaintiff was found to have violated this particular regulation involved nothing sexual in nature, but rather concerned her actions in transporting a student in her vehicle without "permission from an administrator or consent of the parents." Fields Decl., Exh. J. Plaintiff herself concedes that she engaged in forms of behavior that also arguably violate this same regulation. *See, e.g.*, ECF 6 ¶ 39 (acknowledging that Plaintiff "helped [a student] get the title, registration, and insurance for his car"). Even taking her allegation at face value, the claim that Brown made a statement she claims he "*knew*" "[a]t the time" to be "false," *id.* ¶¶ 97-98 (emphasis added), is not enough in itself to satisfy the high standard for pleading common-law malice. *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (plaintiffs' assertion that defendants' "statements 'were known by [them] to be false at the time they were made'" were "entirely insufficient" to plead malice).

### D.    Plaintiff Fails to Plead Facts Sufficient to Support a Claim for Defamation *Per Se*.

A statement is "defamatory *per se*" if it, among other things, "impute[s] to a person unfitness to perform the duties of an office or employment" or "prejudice[s a] person in his or her profession or trade." *CACI v. Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 292-93 (4th Cir. 2008) (brackets omitted). Plaintiff does not allege a single statement in her FAC that meets this criteria.

The six statements Plaintiff challenges that involve school administrators' concerns about Plaintiff improperly involving herself in students' personal affairs, ECF 6 ¶¶ 31, 32, 35, 40, 48, are not defamatory *per se* because such statements do not inherently imply a "want of integrity" or "unfitness to perform the duties of" a teacher. *CBS Broad.*, 534 F. Supp. 3d at 591. At worst, these statements imply that Plaintiff needed to be reminded of appropriate teacher-student boundaries. Further, Plaintiff does not plead any facts suggesting Defendants acted with the requisite intent—rather, Plaintiff concedes that she had close relationships with many students, ECF 6 ¶¶ 18, 26, 36,

48, which FCPS administrators were obligated to monitor and, when Plaintiff crossed boundaries with students, FCPS administrators were obligated to inform her, in writing, what specific actions were inappropriate and why.[4]

Plaintiff also cannot base her defamation *per se* claim on statements by school administrators regarding two teaching-related performance issues: a statement about disregarding a directive to correct a gradebook and a statement about failing to leave lesson plans, *Id.* ¶¶ 45, 56. A "supervisor's rebuke of an employee's single failure to follow a directive is far removed from commenting that the employee wants for skills or qualities necessary for her position." *Baldwin v. Baker*, 2016 WL 11663756, at *5 (Va. Cir. Ct. 2016) (Prince Edward); *see also Treichel v. Natl Bus. Educ. Ass'n,* 2020 WL 6323757, at *7 (E.D. Va. Aug. 19, 2020) (statement that plaintiff failed to train her replacement and withheld emails and documents "may cast shame on Plaintiff" but was not defamatory). Put simply, a statement that an employee has "chosen not to follow directives" for a "limited" period of time "does not connote the requisite defamatory 'sting' to one's reputation." *Anderson v. Sch. Bd. of Gloucester Cnty., Virginia*, 2020 WL 2832475, at *41 (E.D. Va. May 29, 2020) (some internal quotations omitted).

Similarly, Plaintiff's allegations concerning Reid's statements to CHS staff and families about the interim findings of the Division's external investigation fall far short of defamation *per se*. ECF 6 ¶¶ 59-60. There is no specific allegation that Reid's statements were false, nor were they. Reid truthfully summarized for CHS staff and families what FCPS's counsel officially reported to the Department of Education and the Senate HELP Committee that same day. Fields Decl., Exhs.

---

[4] Indeed, had Defendants failed to monitor Plaintiff's relationships with students—including unauthorized rides in her vehicle—they could have been held liable for any harm that might have resulted. *See Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001) (principal's "desultory efforts at 'monitoring'" a teacher rendered her vicariously liable for teacher's sexual abuse of a student).

A, B, C. And, of course, "[t]rue statements do not support a cause of action for defamation." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005).[5]

Finally, Healey and Brown's alleged statement to FCPS's attorneys that Plaintiff "instigated bullying amongst the students," ECF 6 ¶ 58, was made in the course of communications with FCPS's outside counsel, subject to attorney-client privilege, and benefits from "absolute privilege" for purposes of a defamation claim. *See Mansfield*, 2011 WL 7478297, at *5-6*; Long*, 1997 WL 33616272, at *1-5. Similarly, FCPS's counsel's purported accusation that Plaintiff "trespass[ed] onto FCPS property," ECF 6 ¶ 68, "does not . . . carry the 'sting' of a reprehensible crime." *Schaecher v. Bouffault*, 772 S.E.2d 589, 595-96 (Va. 2015); *see* Fields Decl., Exh. K (stating that Plaintiff was "not to return to FCPS facilities without seeking prior approval" during her period of paid administrative leave). Nor does Plaintiff allege that the trespassing statement was published to a third-party, as required to state a defamation claim. *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 915 (E.D. Va. 2004).

### E.    Plaintiff's Claims Are Further Barred by Virginia's Anti-SLAPP Statute.

Finally, Defendants, in both their official and individual capacities, are immune from liability (and entitled to fees) under Virginia's Anti-SLAPP statute, Va. Code § 8.01-223.2(A), (C).

---

[5] Plaintiff's allegation that "FCPS and/or King & Spalding" "fabricated" "false" claims that she "manipulated evidence or witnesses," ECF 6 ¶ 66, likewise fails to state a claim for defamation *per se*. First, to the extent Plaintiff attributes this statement to the School Board and/or its employees, it fails due to sovereign immunity, as discussed *supra* at II.A. Second, to the extent Plaintiff attributes this statement to FCPS counsel, that allegation is fundamentally deficient, as counsel is a third party, not a defendant. Moreover, "absolute privilege" forecloses actionable defamation on official statements made to governmental bodies. *Mansfield v. Bernabei*, 2011 WL 7478297, at *5-6 (Va. Cir. Ct. 2011) (Fairfax) (explaining that because "it was necessary that [a client] be forthcoming with his lawyers in order for them to have a complete understanding of the situation," "absolute privilege" shielded the client and attorney from a defamation action based on statements in a draft complaint*), aff'd*, 727 S.E.2d 69 (Va. 2012); *see also Long v. Old Point Bank of Phoebus*, 1997 WL 33616272, at *1-5 (Va. Cir. Ct. 1997) (Norfolk); *Van Vleck*, 2019 WL 2273845, at *2; *Isle of Wight Cnty. v. Nogiec*, 704 S.E.2d 83, 90 (Va. 2011); *Brooks-Buck v. Wahlstrom*, 921 S.E.2d 223, 228 (Va. 2025).

"Generally speaking, anti-SLAPP statutes aim to weed out and deter lawsuits brought for the improper purpose of harassing individuals who are exercising their protected right to freedom of speech." *CBS Corp.*, 2 F.4th at 296. Virginia's law provides immunity from tort claims based, *inter alia*, on statements "regarding matters of public concern that would be protected under the First Amendment." Va. Code § 8.01-223.2(A). As the court in *Harless* concluded, a public school teacher's "practices" and "behavior around student[s] . . . are certainly statements 'regarding matters of public concern that would be protected under the First Amendment.'" 900 S.E.2d at 511.

Similarly, FCPS's formal responses to pending federal government inquiries are by definition statements regarding matters of public concern protected by the First Amendment. *See Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 712 (11th Cir. 1992) (concluding that "testimony before [a] legislative body and statements to an investigator of the State Attorney's office . . . in the context of an examination into the activities of City personnel by officials with authorized investigatory powers . . . was speech that clearly affected a matter of public concern"); *Dahm v. Flynn*, 60 F.3d 253, 258 (7th Cir. 1994), *as amended on denial of reh'g* (July 24, 1995) (noting that testimony "before a legislative body, at its request . . . clearly appears to be on a matter of public concern"); *Lee v. Hawaii*, 2010 WL 235009, at *12 (D. Haw. Jan. 20, 2010) ("Legislative testimony by its nature involves a subject that a legislative body has invited comment on in aid of deciding what legislative action to take. Such speech has a high likelihood of involving a matter of public concern.").

Plaintiff can only overcome this statutory immunity by showing that the speaker "knew or should have known [the statements] were false or were made with reckless disregard for whether they were false." Va. Code § 8.01-223.2(B). Just as Plaintiff failed to plead facts sufficient to

overcome the qualified privilege, she fails to plead facts sufficient to overcome immunity under Virginia's Anti-SLAPP statute. As such, Defendants are entitled to both statutory immunity and attorney's fees and costs. *See New York Pub. Radio*, 2023 WL 3303125, at *8 (concluding that "an award of [anti-SLAPP] attorney's fees [was] warranted and necessary" where plaintiff's defamation claim was "meritless, unreasonable, and without any substantial basis in law or fact"); *Harless*, 900 S.E.2d at 511 (concluding that defendants may be "entitled to reasonable [anti-SLAPP] attorney fees and costs").

## III.    Plaintiff's State Free Speech Claim (Count III) Is Subject to Dismissal.

Plaintiff brings two constitutional free speech claims, one under state law (Count III) and the other under federal law (Count IV). Both claims exclusively seek damages as a remedy for the alleged "deprivation" of Plaintiff's right to speak on matters of public concern. ECF 6 ¶¶ 108, 112. Article I, Section 12 of the Virginia Constitution is co-extensive with the First Amendment. *See McCaffrey v. Chapman*, 2017 WL 4553533, at *5 (E.D. Va. Oct. 12, 2017). Hence, the same substantive defects in Plaintiff's First Amendment theory (Count IV), discussed below, require dismissal of her parallel Section 12 claim.

In addition, Plaintiff's Section 12 claim is barred by sovereign immunity. Given the Commonwealth's strong commitment to sovereign immunity, Virginia law permits a private cause of action under the Virginia Constitution against a governmental entity *only* where the provision is self-executing or where the General Assembly, by creating a cause of action, has expressly waived sovereign immunity. *See Mais*, 657 F. Supp. 3d at 823.

While courts have found that Section 12 is self-executing for purposes of declaratory and injunctive relief, they have stopped short of authorizing suits for money damages. *See Ibanez v. Albemarle Cnty. Sch. Bd.*, 897 S.E.2d 300, 311-12 (Va. App. 2024); *DiGiacinto v. Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365, 370 (Va. 2011). Courts have also consistently found that

Section 12 is "only self-executing for claims challenging [the constitutionality of] laws or ordinances." *Suiter v. Taylor*, 2024 WL 3466186, at *4 (W.D. Va. July 19, 2024) (quoting *Mais*, 657 F. Supp. 3d at 825); *see also Ford v. Northam*, 2023 WL 2767780, at *8 (W.D. Va. Mar. 31, 2023) (plaintiff had "no viable claim under Section 12 . . . as his claims [were] not based on a law or ordinance, but on procedures and policies of a state agency"); *Virginia Student Power Network v. City of Richmond*, 2021 WL 6550451, at *2 (Va. Cir. Ct. 2021) (Richmond) ("Article I, Section 12 . . . limits the right of action to only those circumstances in which a party challenges laws enacted by the General Assembly or ordinances adopted by localities") (collecting cases).

Because Plaintiff's Section 12 claim does not challenge a law or ordinance and seeks only damages, to proceed with her claim Plaintiff would need to point to an express legislative waiver of sovereign immunity allowing such a claim against a school board and school officials acting in their official capacity. *See McCaffrey*, 2017 WL 4553533, at *5 ("the Supreme Court of Virginia has *never* recognized an implied cause of action for *damages* under Article I, Section 12") (emphasis added). Given that nothing in Section 12 or in any implementing legislation supplies such a waiver, sovereign immunity bars Plaintiff's claim for damages under Article I, Section 12.

## IV.    Plaintiff's First Amendment Retaliation Claim (Count IV) Is Subject to Dismissal.

Plaintiff fares no better in alleging that Defendants' actions "constituted unconstitutional retaliation" under the First Amendment—a claim that should have been pled as a violation 18 U.S.C. § 1983. *See Cale v. City of Covington, Va.*, 586 F.2d 311, 318 (4th Cir. 1978). As a government employee claiming retaliation under the First Amendment, Plaintiff must allege facts sufficient to show that (1) she "was speaking as a citizen on a matter of public concern," rather than as an employee about "a matter of personal interest," (2) her interest in speaking on the matter of public concern "outweighed" Defendants' interest in providing effective and efficient public service, and (3) her speech "caused the disciplinary action." *Crouse v. Town of Moncks Corner*,

23

848 F.3d 576, 583 (4th Cir. 2017). Even if Plaintiff's false accusations against her coworker and employer were a matter of public concern (they are not), Defendants are entitled to qualified and official immunity.

### A.    Plaintiff Fails to Adequately Plead That She Spoke on a Matter of Public Concern.

Speech involves a matter of public concern where it addresses "'a matter of interest to the community' rather than 'complaints over internal office affairs,'" and reflects "an effort to participate in a larger public dialogue." *Id.* at 583, 585 (citation omitted). Although the present dispute largely emanates out of Plaintiff's personal tensions with a coworker (Diaz) and a supervisor (Lehman), she attempts to cast her grievances and complaints as speech opposing "unlawful abortion trafficking." ECF 6 ¶ 11 (emphasis removed). However, in assessing whether the speech involves a matter of public concern, the Court must look to the content of the speech, not Plaintiff's labels.

As in another very recent case involving a teacher's claims against a public school system, the FAC "painstaking[ly] chronicles [a] myriad [of] workplace disagreements" but does not "plausibly allege that [Plaintiff] attempted to participate in a larger public dialogue." *Watson v. Wake Cnty. Pub. Sch. Sys.*, 797 F. Supp. 3d 591, 611 (E.D.N.C. Aug. 26, 2025). In *Watson*, the plaintiff alleged that the defendants failed to renew her contract because she had engaged in protected speech, principally complaining about alleged race discrimination within the school system. *Id.* at 609. But those complaints, as here, were directed at her colleagues. In other words, she spoke "as an employee on a matter of private interest," not "as a citizen on a matter of public concern," and this led the court to dismiss her First Amendment retaliation claim with prejudice. *Id.* at 610. Similarly, here it is evident from Plaintiff's own allegations that the speech she asserts led to the claimed retaliation was speech complaining *internally* to CHS administrators about an

*internal* coworker—specifically "[i]n response" to allegedly being "set up" by that same coworker with what Plaintiff claims were "false allegations that she had provided a pregnancy test to a student." ECF 6 ¶¶ 12-13. *See also Porter v. Bd. of Trustees of N. Carolina State U.*, 72 F.4th 573, 583-84 (4th Cir. 2023) (a professor's "wholly internal communications" critiquing the school's handling of diversity initiatives was not a matter of public concern).

## B.    The Individual Defendants Are Entitled to Qualified Immunity.

Even if Plaintiff's speech arguably was protected, the individual Defendants are entitled to qualified immunity because their conduct did not violate clearly established law. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Suiter*, 2024 WL 3466186, at *4 (citation omitted). Where a motion to dismiss asserts qualified immunity, the court considers whether (1) "the facts, viewed in the light most favorable to the plaintiff, show that the [defendant's] conduct violated a federal right," and (2) that "right was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional." *Id.* (citation omitted). A court "may address these questions in the order that would best facilitate the fair and efficient disposition of the case." *Atkinson v. Godfrey*, 100 F.4th 498, 504 (4th Cir. 2024). As long as the answer to "either prong is 'no,' the doctrine of qualified immunity shields the defendant from liability." *Suiter*, 2024 WL 3466186, at *4 (citation omitted).

A broadly framed right to free speech by a public school teacher is not sufficient to show that the right was clearly established. Courts instead focus on the asserted right's "application to the specific conduct being challenged." *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (quotation omitted). That means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *DiMeglio v. Haines*, 45 F.3d 790, 804

25

(4th Cir. 1995). That is, "existing precedent must have placed the statutory or constitutional question beyond debate." *Crouse*, 848 F.3d at 583. Against this backdrop, "only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply, and not yet well-defined." *DiMeglio*, 45 F.3d at 806 (collecting cases and quoting *Connick v. Myers*, 461 U.S. 138, 150 (1983)).

Plaintiff cites no controlling authority establishing a teacher's right to make unsubstantiated accusations against coworkers in the context of a personal squabble, yet from the reasonable vantage point of CHS administrators that is precisely what this matter involved. *See Suiter*, 2024 WL 3466186, at *6 (dismissing where no "controlling authority" had "clearly established" the right to film law enforcement conducting a traffic stop of someone else). Furthermore, a reasonable official in Defendants' position would not have understood their actions to be unconstitutional. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007). Here, Plaintiff alleges that Defendant Lehman investigated the allegations, communicated to Plaintiff that he had received contrary information from the individuals accused by Plaintiff during his investigation, and requested that she share any further information to corroborate her claims. Yet Plaintiff still did not come forward with any of her purported evidence of alleged school-facilitated student abortions. ECF 6 ¶¶ 13-15. Because the individual Defendants (to the extent they even knew of Plaintiff's abortion-related allegations) "reasonably [could] have viewed" Plaintiff's allegations as being baseless and designed to "foment complaints" against a coworker she disliked, *Crouse*, 848 F.3d at 584, qualified immunity applies.

### C.    The School Board Is Immune from Liability Under *Monell*.

Finally, Plaintiff's claim against the School Board (and Defendants in their official

capacities, *see Graham*, 473 U.S. at 165) must be dismissed because Plaintiff fails to allege that an official policy or custom caused the alleged violation. The School Board is a local government entity that may only be held liable under § 1983 (which Plaintiff has not properly alleged) in the narrow circumstances laid out in *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 663 (1978), and its progeny. *See Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 n.3 (4th Cir. 2000) ("In *Monell*, the Court recognized that school boards and municipalities are indistinguishable for purposes of § 1983."). Under *Monell*, a "local government may be held liable for a decision made by an individual whose edicts or acts may fairly be said to represent official policy," but not for "going along with the discretionary decisions made by [a] subordinat[e]." *Lytle v. Doyle*, 326 F.3d 463, 472 (4th Cir. 2003) (internal quotation marks omitted). In the First Amendment retaliation context, "[t]o hold a municipality (a local government entity) liable for a constitutional violation under § 1983, the plaintiff must show that the execution of a policy or custom of the municipality caused the violation." *Love-Lane*, 355 F.3d at 782.

Plaintiff identifies no official policy or custom that led to the alleged retaliation. Instead, she challenges discretionary decisions—a temporary suspension and administrative leave—made by individual employees. ECF 6 ¶¶ 52, 67. *Cf. Watson*, 797 F. Supp. 3d at 609 (the plaintiff's perception that her supervisor "looked angry" did not constitute retaliation for purposes of Title VI, nor could she base her retaliation claim on "[co-workers] declining to have lunch with her, an alleged vehicle break-in, alleged WCBE surveillance, an alleged hack of [her] home computer, or meetings called to discuss complaints other teachers and staff filed against [the plaintiff]"). And a local government cannot be liable merely for "going along with the discretionary decisions made by [a] subordinat[e]." *Lytle*, 326 F.3d at 472. Official immunity is thus appropriate for such isolated incidents. *See Crouse*, 848 F.3d at 583 n.3 (official immunity applies where plaintiffs challenged

"a single employment decision involving no municipal policy").

While a single decision can sometimes create liability, that decision must be made by the official with "final [policymaking] authority." *Stickley v. Sutherly*, 667 F. Supp. 2d 664, 673 (W.D. Va. 2009) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.12 (1986)). Under Virginia law, only the School Board possesses final policymaking authority for personnel decisions. Va. Const. art. VIII, § 7; Va. Code § 22.1-253.13.7, Std. 7. Plaintiff does not allege any facts demonstrating that the School Board itself directed her suspension or administrative leave. Rather, she appears to attribute that conduct to individuals, like Brown and Healey (as well as Bill Fulton, the Director of OER). ECF 6 ¶¶ 52, 67. Even if the School Board delegated to FCPS employees "discretion to hire and fire . . . and [they] exercised that discretion in an unconstitutional manner[,] the decision to act unlawfully would *not* be the decision of the Board." *Stickley*, 667 F. Supp. 2d at 673 (citation omitted; emphasis added). Because Plaintiff fails to challenge a specific policy or custom or identify an adverse action by an individual with final policymaking authority, the School Board is entitled to qualified immunity.

## V.    Alternatively, Plaintiff's Immaterial and Impertinent Allegations Should Be Struck from the Complaint.

Rule 12(f) authorizes a court to strike "any . . . immaterial [or] impertinent . . . matter" from a pleading. Fed. R. Civ. P. 12(f). Courts will, accordingly, strike allegations that "reflect adversely on the moral character of an individual who is not a party." *Magill v. Appalachia Intermediate Unit 08*, 646 F. Supp. 339, 343 (W.D. Pa. 1986)*; see also Fischer v. Fort Belvoir Residential Cmtys. LLC*, 2023 WL 5352297, at *5 (E.D. Va. Aug. 21, 2023). A motion to strike is especially appropriate where the pleading attacks opposing counsel. As several courts have recognized, such allegations often violate local rules of civility and professional conduct. *See Davidson v. D.C.*, 2010 WL 11583333, at *1 (D.D.C. June 4, 2010); *Pigford v. Veneman*, 215 F.R.D. 2, 5 (D.D.C.

2003).[6]

Here, Plaintiff accuses one of the undersigned counsel and his law firm of unprofessional and unethical behavior, including: (1) "threatening [Plaintiff] with termination"; (2) "hounding [Plaintiff] and her lawyers"; (3) submitting a report to governmental authorities with "vindictive and retributive" motives; (4) "fabricat[ing]" a "false" claim that Plaintiff manipulated evidence or witnesses; and (5) wrongly "accus[ing]" Plaintiff of trespassing in an "unnecessary" and "harassing" message." ECF 6 ¶¶ 63-66, 68.[7] These accusations are irrelevant to any element of Plaintiff's claims, improperly impugn counsel's character, and invite prejudice against Defendants and their attorneys. Put simply, these allegations are "indefensible and wholly inappropriate and have no place in filings in this court." *Pigford*, 215 F.R.D. at 3-5 (striking "groundless" accusations that opposing counsel engaged in dishonest and "deplorable" behavior). Courts commonly strike allegations that "only serve to damage the reputation of the attorneys and the decorum of court proceedings." *National Viatical Inc. v. Universal Settlements Int'l, Inc*., 2012 WL 3704773, at *1 (W.D. Mich. Aug. 27, 2012). The same result is warranted here. Plaintiff's ad hominem attacks do not bear on liability or damages, flout the Court's standards of professional civility, and threaten to sidetrack the case with collateral disputes about counsel's conduct. The Court can and should therefore strike paragraphs 63-66 and 68 from Plaintiff's complaint.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the FAC

---

[6] This District's standards of professionalism require that lawyers "must be courteous . . . when dealing with opposing counsel," "should not make disparaging personal remarks or display acrimony toward opposing counsel," and "must avoid demeaning or humiliating words in written and oral communication with adversaries." Code of Pretrial and Trial Conduct, E.D. Va., at 4, https://www.vaed.uscourts.gov/code-pretrial-and-trial-conduct.

[7] For more context on the actual communications by counsel that Plaintiff references and grossly mischaracterizes, *see* Fields Decl., Exhs. E, F.

with prejudice or, in the alternative, strike FAC paragraphs 63-66 and 68.

Dated: December 16, 2025
As Corrected December 23, 2025

Respectfully submitted,

*/s/ Edward Lee Isler*
Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
Email: eisler@islerdare.com
Email: mticatch@islerdare.com
*Counsel for Defendants*


M. Sean Royall, *pro hac vice*
Lucas M. Fields, *pro hac vice*
Zoe M. Beiner, *pro hac vice*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Phone: (202) 626-2994
Email: sroyall@kslaw.com
Email: lfields@kslaw.com
Email: zbeiner@kslaw.com
*Counsel for Defendants*