## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **ZENAIDA PEREZ,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | )   **Case No. 1:25-cv-2126-AJT-IDD** |
| | ) |
| **FAIRFAX COUNTY SCHOOL BOARD,** *et al.* | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## <u>THEIR MOTION TO DISMISS</u>

Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Tel: (703) 748-2690
Fax: (703) 748-2695
Email: eisler@islerdare.com
Email: mticatch@islerdare.com

M. Sean Royall, *pro hac vice*
Lucas M. Fields, *pro hac vice*
Zoe M. Beiner, *pro hac vice*
KING & SPALDING LLP
1700 Pennsylvania Ave., NW, Suite 900
Washington, D.C. 20006
Tel: (202) 626-2627
Fax: (202) 626-3737
Email: sroyall@kslaw.com
Email: lfields@kslaw.com
Email: zbeiner@kslaw.com

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

**PRELIMINARY STATEMENT** ...................................................................................1

**BACKGROUND** ............................................................................................................3

**LEGAL STANDARDS** ..................................................................................................7

**ARGUMENT** .................................................................................................................9

I.    Plaintiff's VWPL Claim (Count I) Is Barred by Sovereign Immunity .........................9

II.   Plaintiff's FAWBPA Claim (Count II) Is Subject to Dismissal on Multiple
      Grounds ..............................................................................................................11

III.  Plaintiff's Defamation Claim (Count III) Fails on Multiple Grounds .........................14

      A.    Sovereign Immunity Protects the School Board and Individual
            Defendants Acting in Their Official Capacities ...............................................15

      B.    The Allegedly Defamatory Statements Are Protected by Qualified
            Privilege ...............................................................................................16

      C.    The Statements on Which Plaintiff's Defamation Claims Are Based
            Lack the Requisite Defamatory Sting ...........................................................20

IV.   Plaintiff's State Free Speech Claim (Count IV) Is Subject to Dismissal ...................23

V.    Plaintiff's Section 1983 Claim (Count V) Is Subject to Dismissal ...........................24

      A.    The Allegations Do Not Substantiate That Plaintiff Spoke on a Matter
            of Public Concern ...............................................................................25

      B.    The Individual Defendants Are Entitled to Qualified Immunity ....................26

      C.    The School Board Is Immune from Liability Under *Monell* .........................28

**CONCLUSION** ............................................................................................................29

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Anderson v. Sch. Bd. of Gloucester Cnty., Va.*,
   2020 WL 2832475 (E.D. Va. 2020)...................................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................................8

*Atkinson v. Godfrey*,
   100 F.4th 498 (4th Cir. 2024) ................................................................................................26

*Baldwin v. Baker*,
   2016 WL 11663756 (Prince Edward Cnty. Cir. Ct. 2016) ....................................................21

*Barry v. Novartis Pharms. Corp.*,
   2022 WL 2373452 (E.D. Va. 2022).........................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................................8

*Bradford v. Sch. Dist. No. 20, Charleston, S.C.*,
   244 F. Supp. 768 (E.D.S.C. 1965), *aff'd*, 364 F.2d 185 (4th Cir. 1966) .................................1

*Brayboy v. Durrette*,
   2019 WL 4033856 (Va. 2019) ...............................................................................................16

*Bryant-Shannon v. Hampton Roads Cmty. Action Program, Inc.*,
   856 S.E.2d 575 (Va. 2021)......................................................................................................18

*Campbell v. Galloway*,
   483 F.3d 258 (4th Cir. 2007) .................................................................................................27

*Cashion v. Smith*,
   749 S.E.2d 526 (Va. 2013)......................................................................................................16

*Clark Cnty. Sch. Dist. v. Breeden*,
   532 U.S. 268 (2001)................................................................................................................13

*Cole v. Buchanan Cnty. Sch. Bd.*,
   661 F. Supp. 2d 569 (W.D. Va. 2009) ...................................................................................16

*Crouse v. Town of Moncks Corner*,
   848 F.3d 576 (4th Cir. 2017) ..................................................................................25, 27, 28, 29

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
   888 F.3d 640 (4th Cir. 2018) ...................................................................................................8

*Deedrich v. Danville Redev. & Hous. Auth.*,
   2025 WL 1265536 (W.D. Va. 2025) ..................................................................10

*Dewitt v. Prince William Cnty. Sch.*,
   2019 WL 13295861 (E.D. Va. 2019) .................................................................16

*DiGiacinto v. Rector & Visitors of George Mason Univ.*,
   704 S.E.2d 365 (Va. 2011)................................................................................24

*DiMeglio v. Haines*,
   45 F.3d 790 (4th Cir. 1995) ..............................................................................27

*Dragulescu v. Va. Union Univ.*,
   223 F. Supp. 3d 499 (E.D. Va. 2016) ..........................................................20, 22

*Dwyer v. Smith*,
   867 F.2d 184 (4th Cir. 1989) .............................................................................17

*Ebersole v. Kline-Perry*,
   292 F.R.D. 316 (E.D. Va. 2013) .......................................................................22

*Edwards v. Schwartz*,
   378 F. Supp. 3d 468 (W.D. Va. 2019) .................................................................8

*Emesowum v. Arlington Cnty.*,
   2020 WL 3050377 (E.D. Va. 2020)....................................................................16

*Fairfax v. CBS Broad. Inc.*,
   534 F. Supp. 3d 581 (E.D. Va. 2020), *aff'd sub nom. Fairfax v. CBS Corp.*,
   2 F.4th 286 (4th Cir. 2021) ..................................................................................8

*Fairfax v. N.Y. Pub. Radio*,
   2023 WL 3303125 (E.D. Va. 2023), *aff'd*, 2024 WL 3935041 (4th Cir. 2024).................8, 19

*Ford v. Northam*,
   2023 WL 2767780 (W.D. Va. 2023) ..................................................................24

*Giarratano v. Johnson*,
   521 F.3d 298 (4th Cir. 2008) ...............................................................................8

*Goodman v. IKEA US Retail, LLC*,
   2024 WL 4554773 (E.D. Va. 2024)....................................................................18

*Harless v. Nicely*,
   900 S.E.2d 503 (Va. Ct. App. 2024)...............................................17, 18, 19, 25

*Hinton v. Va. Union Univ.*,
   185 F. Supp. 3d 807 (E.D. Va. 2016) ................................................................13

*Holmes v. Eddy*,
    341 F.2d 477 (4th Cir. 1965) ..................................................................................18

*Ibanez v. Albemarle Cnty. Sch. Bd.*,
    897 S.E.2d 300 (Va. Ct. App. 2024) ........................................................................24

*Int'l Union v. Mystic, LLC*,
    2016 WL 4596353 (S.D.W. Va. 2016) .......................................................................8

*Jordan v. Kollman*,
    612 S.E.2d 203 (Va. 2005)...............................................................................22, 23

*Jordan v. Sch. Bd. of City of Norfolk*,
    640 F. Supp. 3d 431 (E.D. Va. 2022) ...................................................................9, 10

*Katz v. Odin, Feldman & Pittleman, P.C.*,
    332 F. Supp. 2d 909 (E.D. Va. 2004) ......................................................................21

*Kellam v. Sch. Bd. of City of Norfolk*,
    117 S.E.2d 96 (Va. 1960).......................................................................................16

*Larimore v. Blaylock*,
    528 S.E.2d 119 (Va. 2000)......................................................................................17

*Laurent-Workman v. Wormuth*,
    54 F.4th 201 (4th Cir. 2022) ..................................................................................13

*Ligon v. Cnty. of Goochland*,
    689 S.E.2d 666 (Va. 2010).......................................................................................9

*Long v. Old Point Bank of Phoebus*,
    1997 WL 33616272 (Norfolk Cir. Ct. 1997) ............................................................21

*Love-Lane v. Martin*,
    355 F.3d 766 (4th Cir. 2004) ............................................................................16, 28

*Lytle v. Doyle*,
    326 F.3d 463 (4th Cir. 2003) ............................................................................28, 29

*Mais v. Albemarle Cnty. Sch. Bd.*,
    657 F. Supp. 3d 813 (W.D. Va. 2023) .................................................................11, 24

*Mansfield v. Bernabei*,
    2011 WL 7478297 (Fairfax Cnty. Cir. Ct. 2011), *aff'd*, 727 S.E.2d 69 (Va.
    2012) ................................................................................................................21, 23

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) ..................................................................................19

*McCaffrey v. Chapman,*
  2017 WL 4553533 (E.D. Va. 2017).........................................................23, 24

*McKay v. Clarke Cnty. Sch. Bd.,*
  1988 WL 619141 (Clarke Cnty. Cir. Ct. 1988) .........................................16

*Mills v. State of Alabama,*
  384 U.S. 214 (1966).................................................................................12

*Monell v. Dep't of Soc. Servs.,*
  436 U.S. 658 (1978).................................................................................28

*Morse v. Frederick,*
  551 U.S. 393 (2007)...................................................................................1

*Moschetti v. Office of Inspector General,*
  2022 WL 3329926 (E.D. Va. 2022)............................................................9

*Nwoga v. N. Va. Mental Health Inst.,*
  2025 WL 259203 (E.D. Va. 2025)...........................................................7, 8

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986).................................................................................29

*Porter v. Bd. of Trustees of N.C. State Univ.,*
  72 F.4th 573 (4th Cir. 2023) ...................................................................26

*Purdham v. Fairfax Cnty. Sch. Bd.,*
  2009 WL 4730713 (E.D. Va. 2009), *aff'd,* 637 F.3d 421 (4th Cir. 2011)..............10

*Pusey v. Fairfax Cnty. Sch. Bd.,*
  1990 WL 10039291 (Fairfax Cnty. Cir. Ct. 1990) .................................10

*Rector & Visitors of the Univ. of Va. v. Carter,*
  591 S.E.2d 76 (Va. 2004)...........................................................................9

*Riddick v. Sch. Bd. of City of Portsmouth,*
  238 F.3d 518 (4th Cir. 2000) ...................................................................28

*Roberts v. Glenn Indus. Grp., Inc.,*
  998 F.3d 111 (4th Cir. 2021) ...................................................................13

*Saleeby v. Free Press, Inc.,*
  197 Va. 761 (1956)...................................................................................22

*Schaecher v. Bouffault,*
  772 S.E.2d 589 (Va. 2015)..........................................................20, 21, 22

*Shabazz v. PYA Monarch, LLC*,
   271 F. Supp. 2d 797 (E.D. Va. 2003) ....................................................................18

*Stickley v. Sutherly*,
   667 F. Supp. 2d 664 (W.D. Va. 2009) ..................................................................29

*Suiter v. Taylor*,
   2024 WL 3466186 (W.D. Va. 2024) ........................................................24, 26, 27

*Treichel v. Nat'l Bus. Educ. Ass'n*,
   2020 WL 6323757 (E.D. Va. 2020)........................................................................21

*Va. Student Power Network v. City of Richmond*,
   2021 WL 6550451 (Richmond Cir. Ct. 2021) .......................................................24

*Van Vleck v. Sallyport Glob. Holdings, Inc.*,
   2019 WL 2273845 (E.D. Va. 2019)........................................................................18

*Watson v. Wake Cnty. Pub. Sch. Sys.*,
   2025 WL 2528711 (E.D.N.C. 2025)........................................................25, 26, 28

*Wiley v. Doory*,
   14 F.3d 993 (4th Cir. 1994) ...................................................................................27

*Wood v. Bristol Va. Util. Auth.*,
   2023 WL 7921252 (W.D. Va. 2023) ......................................................................10

*Wood v. Bristol Va. Util. Auth.*,
   661 F. Supp. 3d 538 (W.D. Va. 2023) ...................................................................13

*Workman v. LHC Grp., Inc.*,
   2024 WL 3572305 (W.D. Va. 2024) ......................................................................12

*Z.G. v. Pamlico Cnty. Pub. Schs. Bd.*,
   744 F. App'x 769 (4th Cir. 2018) ..........................................................................16

**Statutes**

42 U.S.C. § 1983...............................................................................................23, 24, 28

Va. Const. art. VIII, § 7 .............................................................................................29

Va. Code § 2.2-3010, -3011 .........................................................................11, 12, 13, 14

Va. Code § 8.01-223.2 .................................................................................................25

Va. Code § 22.1-253.13.7 ............................................................................................29

Va. Code § 40.1-2, -2.1 .............................................................................................9, 10

Va. Code § 40.1-28.9 .................................................................................................11

Va. Code § 40.1-27.3 ...............................................................................................9, 10

**Other Authorities**

Fed. R. Evid. 201(b) ..................................................................................................8

Fed. R. Civ. P. 12(b)(1) ..............................................................................................1

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1

Defendant Fairfax County School Board ("School Board"), together with Fairfax County Public Schools ("FCPS") administrators Montell Brown, Chad Lehman, and Erik Healey, and FCPS Superintendent Dr. Michelle Reid (collectively, "Defendants" and Brown, Lehman, Healey and Reid, the "Individual Defendants"), respectfully submit this memorandum of law supporting their motion, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss with prejudice Plaintiff's Second Amended Complaint ("SAC").

## PRELIMINARY STATEMENT

"School principals have a difficult job, and a vitally important one." *Morse v. Frederick*, 551 U.S. 393, 409 (2007). This job includes "a duty to the public to maintain close scrutiny and supervision of all teachers at all times to insure their fitness and competence for the important task of educating young and impressionable students." *Bradford v. Sch. Dist. No. 20, Charleston, S.C.*, 244 F. Supp. 768, 772 (E.D.S.C. 1965), *aff'd*, 364 F.2d 185 (4th Cir. 1966). This case emanates from Defendants' efforts to fulfill that critical duty by providing appropriate scrutiny and oversight of a teacher who, over a period of years, has engaged in patterns of misconduct, at times violating school rules and disregarding direction from her superiors.

Plaintiff, Zenaida Perez, is an English for Speakers of Other Languages ("ESOL") teacher at Centreville High School ("CHS"). In 2022, facing allegations that she had improperly provided pregnancy tests to minor students, Plaintiff accused a CHS social worker, Carolina Diaz (a witness in that pregnancy test investigation), of far more serious conduct—namely, secretly encouraging, facilitating, and even using school funds to pay for student abortions. Defendant Chad Lehman, then the Principal of CHS, promptly investigated and found no evidence substantiating Plaintiff's sensational abortion-related claims.

Approximately three years later, in August 2025, Plaintiff collaborated with a social media

blogger to publicly broadcast her allegations of school-facilitated, school-funded abortions, accusing Ms. Diaz of criminal wrongdoing and Mr. Lehman of a related cover up.[1]

Following Plaintiff's public assertions, FCPS's senior leadership quickly engaged outside counsel to thoroughly investigate the wide-ranging allegations. Within days, Virginia's Governor directed the State Police to commence a criminal investigation; additional government inquiries from the U.S. Senate Committee on Health, Education, Labor & Pensions ("HELP"), and the U.S. Department of Education ("DOEd") soon followed. On October 16, 2025, FCPS provided detailed written submissions to the HELP Committee and DOEd, answering their questions and summarizing the interim conclusions of FCPS's fact-finding, which showed that Plaintiff's abortion-related accusations were likely untrue and appeared predicated on witness statements that were false, if not knowingly false. Following standard procedures, on October 20, 2025, Plaintiff was placed on paid administrative leave pending completion of an investigation probing concerns about her own suspected misconduct.

Plaintiff filed the present lawsuit on October 28, 2025, accusing CHS's current Principal (Erik Healey), a former CHS Principal (Chad Lehman), a current CHS Assistant Principal (Montell Brown), FCPS Superintendent (Michelle Reid), and FCPS itself of defamation and retaliation in violation of state and federal law. After removal to this Court, Plaintiff filed a First Amended Complaint, substituting the School Board for FCPS as a defendant. ECF 6. Defendants moved to dismiss that complaint on December 16, 2025, ECF 12. On January 9, 2026, FCPS issued a supplemental written statement in response to the federal inquiries, in which it concluded that the available evidence shows Plaintiff's allegations of school-facilitated, school-funded abortions to

---

[1] *See* Declaration of Lucas M. Fields ("Fields Decl."), Exhs. A, B, C, D, and E. As explained *infra* at 8, Defendants have attached materials that the Court is at liberty to consider in ruling upon this motion.

be baseless. Plaintiff thereafter filed an Unopposed Motion for Leave to file a Second Amended Complaint, ECF 28, which was granted on January 20, 2026, ECF 30.

Like the original complaint, the SAC is legally and factually flawed.  Plaintiff cannot state a claim for retaliation in violation of the Virginia Whistleblower Protection Act against the School Board (Count I) because the statute applies only to "employers", and the School Board does not meet this statutory definition.

Plaintiff's claim for retaliation in violation of Virginia's Fraud and Abuse Whistle Blower Protection Act (Count II) likewise fails due to multiple pleading deficiencies, including that the statute does not authorize damages and Plaintiff has not plausibly pled causation or good faith.

Plaintiff also fails to state a claim for defamation *per se* (Count III). All or most of the statements on which the defamation claim is based lack the requisite defamatory sting and/or are otherwise nonactionable. Further, qualified privilege protects nearly all of the allegedly defamatory statements.

Finally, Plaintiff's constitutional claims (Counts IV and V) are equally infirm. Count IV is barred by sovereign immunity, and Count V is barred by the doctrines of official and qualified immunity. Moreover, Plaintiff cannot recast her baseless accusations against a co-worker as matters of public interest protected by the First Amendment.

For these reasons, Defendants' Motion to Dismiss should be granted.

## **BACKGROUND**

On May 5, 2022, Plaintiff informed her immediate supervisor, Assistant Principal George Parker, and another Assistant Principal, Alexis Wenzel, that Ms. Diaz had provided "pregnancy tests and 'pregnancy solutions'" to students. ECF 31 ¶ 12. Plaintiff did so "[i]n response" to allegations that she herself had provided a pregnancy test to a student—allegations that Plaintiff

believes Diaz "set up." *Id.* ¶¶ 12, 13. Plaintiff subsequently sent a written memo to Parker and Principal Lehman on May 13, 2022, reiterating her belief that Diaz "provided pregnancy tests" and "support" to students and insisting she had evidence that Diaz helped a specific student "solve" a "pregnancy issue." *Id.* ¶ 12. Plaintiff does not allege that she identified the student to Parker or Lehman or provided them with any evidence to substantiate her allegations. *Id.* On June 9, 2022, Plaintiff emailed Lehman once more, claiming that "we all know that the social worker helps students to solve pregnancy situations." *Id.* ¶ 14.

Months later, in November 2022, Plaintiff met with Lehman and revealed the identity of the student (Doe #1) she believed obtained an abortion "that Diaz had facilitated." *Id.* ¶ 15. Plaintiff alleges that the student's uncle, "who was her legal guardian," was not told of the abortion. *Id.* During the November meeting, Plaintiff claims Lehman did not remember being told about school personnel "facilitating abortions," which led Plaintiff to "re-forwar[d]" to him an email in which she previously claimed that Diaz helped students with "pregnancy solution[s]"—a term Plaintiff suggests Lehman should have understood as referring to abortions. *Id.* ¶ 16. Plaintiff acknowledges that Lehman later followed up with her explaining that he had spoken to Ms. Diaz and a school counselor, Ms. Villeda, and that they reported "a very different version" of events. *Id.* ¶ 17.[2]

Although Plaintiff acknowledges that Lehman invited her to "share" any "further information" she may have regarding her allegations, she does not allege that she shared anything more, despite averring that by this time she possessed "the evidence to prove" her claims, including a written statement she "procured from Doe #1." *Id.* ¶¶ 17-18. Rather, she alleges that the next

---

[2] Plaintiff alleges that her late-November meeting with Lehman (at 12:30 p.m.) and his follow-up email (at 1:05 p.m.) occurred the same day, November 22, 2022, and accuses Lehman of being a "One Minute Manager," suggesting he had little time to conduct a proper investigation. *Id.* As noted in Defendants' prior motion to dismiss, contemporaneous documents show that Plaintiff actually met with Lehman on November 21, 2022. Exh. F; *see also* Exh. C at 14 & n.69.

time she raised her abortion-related concerns to any FCPS representative was roughly two-and-a-half years later, on March 7, 2025, while meeting with FCPS's outside counsel during an "unrelated investigation." *Id.* ¶ 46. She also alleges that on May 2, 2025, she shared her claims with James Mackie from FCPS's Office of Employee Relations ("OER"). *Id.* ¶¶ 38, 42, 53.

Plaintiff alleges that on August 5, 2025, the statement she procured from Doe #1 was published online by Walter Curt. *Id.* ¶ 20; Exh. G. As noted, shortly after that August 5 blog post, the Virginia State Police launched a criminal investigation, and the Senate HELP Committee and DOEd each launched their own related inquiries.

FCPS submitted its initial responses to the HELP Committee and DOEd on October 16, 2025. Exhs. A, B, and C. FCPS made those same responses publicly available the same day, via a letter from Superintendent Reid to the CHS community. Exh. H. Those submissions reported that the facts uncovered by the Division's external counsel investigation point to the conclusion that Plaintiff's abortion-related accusations are likely untrue. ECF 31 ¶¶ 59-60; Exhs. A, B, and C. These submissions also reviewed detailed facts indicating that Plaintiff may have fabricated or manipulated certain witness statements to lend credence to her accusations. Exh. C at 2, 6, 9-10, 23, 27-30. Moreover, the same investigation revealed concerns regarding Plaintiff's personal behavior and apparent violations of school rules. Exh. C at 6-7, 10-12, 18-19.

Following standard procedures, on October 20, 2025, Plaintiff was placed on paid administrative leave pending completion of an investigation focusing on multiple forms of suspected misconduct, including (i) unauthorized disclosure of student-identifying information; (ii) withholding requested information during an official school investigation, and possibly also information subject to a Freedom of Information Act request; (iii) procuring falsified and/or manipulated statements for use in school matters; (iv) failure to respect professional boundaries

with students and their families; (v) making serious accusations against other school personnel based on false, and possibly knowingly false, information; and (vi) repeated failure to cooperate with requests from school administrators or legal counsel acting on FCPS's behalf. Exh. I.

Plaintiff filed her initial suit on October 28, 2025, in Fairfax County Circuit Court. ECF 1-1. Following removal, Plaintiff amended her complaint on November 25, 2025, ECF 6, which Defendants moved to dismiss on December 16, 2025. ECF 12. On January 9, 2026, FCPS provided a supplemental statement to both the HELP Committee and DOEd. That statement responded to Plaintiff's (and her counsel's) public comments and submissions following the October 16 report, and informed both governmental bodies that FCPS's external investigation was complete. ECF 31 ¶ 70; *see also* Exhs. D, E. FCPS also made the supplemental statement public through a letter sent the same day to the CHS community. ECF 31 ¶ 73; Exh. J. The supplemental statement confirmed that there was no credible evidence identified to support Plaintiff's allegations of school-facilitated student abortions and also detailed factual findings showing that Plaintiff not only withheld evidence from CHS officials attempting to investigate her claims in 2022 but also instructed a key witness not to speak with the school. Exh. E at 2-3, 6-7, 9-10, 13-21, 23-24.

Plaintiff filed the SAC on January 20, 2026, ECF 31, alleging that an array of interpersonal disputes and disciplinary incidents amount to actionable claims for defamation and retaliation in violation of state and federal law. To support her defamation claim, Plaintiff focuses on three buckets of allegedly defamatory statements: (1) statements by administrators concerning Plaintiff's relationships and interactions with students ("the Student Relationship Statements"), *id.* ¶¶ 31-32, 35-36, 40, 48; (2) statements concerning Plaintiff's teaching duties ("the Job Duties Statements"), *id.* ¶¶ 45, 56; and (3) statements related to FCPS's investigative findings, *id.* ¶¶ 59-60, 66, 68, 70-74 ("the Investigative Findings Statements").

Plaintiff's retaliation claims date back to November 2022, when she alleges that Lehman began ignoring her in the school hallways. *Id.* ¶ 24. Plaintiff further insists that her teaching load was "more burdensome" than that of other ESOL instructors for the 2023-2024 school year. *Id.* ¶ 25. By December 2024, she claims that Brown was encouraging students "to do or say things about [Plaintiff] to get her in trouble." *Id.* ¶ 33. Plaintiff alleges that Brown instructed two male students to ask Plaintiff for rides in her car and report the incidents to Brown. *Id*. ¶¶ 44, 49. Plaintiff also blames Brown and Healey for the supposed rumor that Plaintiff had "an inappropriate illicit relationship with a male student"—the same male student whom Plaintiff admits she helped obtain title, registration, and insurance for his car. *Id.* ¶ 36; *see also id.* ¶¶ 39-40.

In further support of her retaliation claims, Plaintiff points to her one-day suspension on May 1, 2025, *id.* ¶ 52, which she claims resulted from Brown's alleged report that Plaintiff had locked a student in her classroom, *id.* ¶ 48. Plaintiff likewise alleges that Brown revised her teaching assignments for the upcoming academic year out of spite. *Id.* ¶¶ 50, 54. Plaintiff further alleges that, in May 2025, Brown asked two male students why they had been texting Plaintiff on her personal cellphone. *Id.* ¶ 55. From this, Plaintiff concludes that Brown was monitoring her personal texts and emails—although she acknowledges that she linked her personal cellphone and email to FCPS networks and accessed her personal email on her school-issued laptop. *Id.* Finally, Plaintiff insinuates that Defendants prevented her from transferring to another school; however, she acknowledges it was administrators from another school who informed Plaintiff that she could not interview while under contract at CHS. *Id.* ¶ 51.

## LEGAL STANDARDS

"A motion to dismiss pursuant to [Rule] 12(b)(1) should be granted where a court lacks jurisdiction to hear any or all claims before it." *Nwoga v. N. Va. Mental Health Inst.*, 2025 WL

259203, at *2 (E.D. Va. 2025). A federal court lacks subject matter jurisdiction "[w]here sovereign immunity applies." *Id.* at *3 (citing *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018)).

Rule 12(b)(6) requires dismissal where a plaintiff fails "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Although a court must construe the factual allegations in Plaintiff's favor, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citation omitted). Moreover, recognizing the high cost of defending "baseless defamation claims . . . federal courts have historically given close scrutiny to pleadings" in the context of such actions. *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 500 (W.D. Va. 2019).

Although courts ordinarily confine review to the complaint and its attachments for purposes of ruling upon Rule 12(b)(6) motions, a court may consider (1) public records properly subject to judicial notice under Federal Rule of Evidence 201(b); and (2) materials attached to or incorporated by reference in the complaint, where appropriate. *See Int'l Union v. Mystic, LLC*, 2016 WL 4596353, at *6 (S.D.W. Va. 2016); *Fairfax v. N.Y. Pub. Radio*, 2023 WL 3303125, at *3 (E.D. Va. 2023), *aff'd*, 2024 WL 3935041 (4th Cir. 2024). Particularly in defamation cases, where the plaintiff's claim "appears to be based" on statements in publications, recordings, and other extrinsic materials, and those materials are attached to a motion to dismiss, a court may consider those materials because, to "determin[e] whether [alleged statements] are actionable, the statements *must be considered . . . in their entirety*." *N.Y. Pub. Radio*, 2023 WL 3303125, at *3 (emphasis added). When a court considers such extrinsic materials, both the allegations in the complaint and the "referenced [materials] are assumed true." *Fairfax v. CBS Broad. Inc.*, 534 F.

Supp. 3d 581, 585 & n.2 (E.D. Va. 2020), *aff'd sub nom. Fairfax v. CBS Corp.*, 2 F.4th 286 (4th Cir. 2021). However, "[w]here the bare allegations of the complaint conflict with any document incorporated therein [for its truth], the document prevails." *Barry v. Novartis Pharms. Corp.*, 2022 WL 2373452, at *2 n.2 (E.D. Va. 2022) (citation omitted).

## ARGUMENT

### I.    Plaintiff's VWPL Claim (Count I) Is Barred by Sovereign Immunity

Plaintiff's Virginia Whistleblower Protection Act ("VWPL") claim against the School Board (Count I) fails as a matter of law because the statute, by its terms, only applies to an "employer." Va. Code § 40.1-27.3(A)(1) ("An employer shall not discharge, discipline . . . or take other retaliatory action . . . because [an] employee . . . in good faith reports a violation of any federal or state law."). Courts construing Virginia law have consistently held that school boards— along with public universities, public agencies, and other public bodies—are not covered as an "employer" under this provision. *Jordan v. Sch. Bd. of City of Norfolk*, 640 F. Supp. 3d 431, 452- 53 (E.D. Va. 2022).

In dismissing a VWPL claim on sovereign immunity grounds, Judge Hudson in *Moschetti v. Office of Inspector General,* addressed this subject in detail, holding:

> "[T]he Commonwealth is immune from tort liability for the acts or omissions of its agents and employees unless an express statutory or constitutional provision waives that immunity." *Ligon v. Cnty. of Goochland*, 689 S.E.2d 666, 668 (Va. 2010). The Virginia Supreme Court has routinely found that general statutory language *is not* enough to waive sovereign immunity. *Id.* at 670 (listing other cases where general statutory language did not waive sovereign immunity). Sovereign immunity protects not only the Commonwealth, but also its agencies and instrumentalities. *Rector & Visitors of the Univ. of Va. v. Carter*, 591 S.E.2d 76, 78 (Va. 2004).
>
> Virginia Code § 40.1-27.3 contains no express waiver of sovereign immunity. The statute never mentions the Commonwealth, its agencies, or its officers and only creates liability for "employers" without expressly including the Commonwealth within the definition of that term. . . . . Thus, the Commonwealth and its agencies, including [the Office of Inspector General],

9

are immune from suit under § 40.1-27.3.

2022 WL 3329926, at *10 (E.D. Va. 2022) (emphasis added; some citations omitted); *see also Deedrich v. Danville Redev. & Hous. Auth.*, 2025 WL 1265536, at *4 (W.D. Va. 2025) (granting motion to dismiss "[b]ecause Virginia's anti-retaliation statute [Section 40.1-27.3] does not contemplate entities like the Housing Authority within its definition of 'employer'"); *Wood v. Bristol Va. Util. Auth.*, 2023 WL 7921252, at *2 (W.D. Va. 2023) (dismissing Section 40.1-27.3 claim because the statutory definition of "employer" "does not include political subdivisions of the Commonwealth").

Section 40.1-27.3 itself does not define "employer"; it relies on the general definitions and exclusions found in Section 40.1-2 of the same title of the Virginia Code. *See Jordan*, 640 F. Supp. 3d at 451. Section 40.1-2's general definition of "employer" does not mention the Commonwealth, its agencies, institutions, and political subdivisions, including school boards—an "*intentional omission* by the General Assembly." *Id.* at 452 (emphasis added); *see also Purdham v. Fairfax Cnty. Sch. Bd.*, 2009 WL 4730713, at *4 (E.D. Va. 2009) (finding that the "School Board is a political subdivision of the State"), *aff'd*, 637 F.3d 421 (4th Cir. 2011); *Pusey v. Fairfax Cnty. Sch. Bd.*, 1990 WL 10039291, at *1 (Fairfax Cnty. Cir. Ct. 1990) ("the School Board is a . . . political subdivision of the Commonwealth of Virginia").

Section 40.1-27.3's omission of political subdivisions, including school boards, is by design. The Virginia General Assembly has unambiguously preserved sovereign immunity for such entities in Section 40.1-2.1, which states:

> The provisions of this title and any rules and regulations promulgated pursuant thereto shall not apply to the Commonwealth or any of its agencies, institutions, or political subdivisions, or any public body, *unless and to the extent that, coverage is extended by specific regulation* of the Commissioner or the Board.

Va. Code § 40.1-2.1 (emphasis added); *see also* Va. Code § 40.1-2 (defining "Commissioner" as

the "Commissioner of Labor and Industry" and "Board" as the "Safety and Health Codes Board"). Where the General Assembly wishes to waive sovereign immunity under this title, it does so expressly by specifying that the Commonwealth or certain state entities qualify as an "employer" for purposes of the statute. *See, e.g.*, Va. Code § 40.1-28.9 (defining "employer" as "the Commonwealth, any of its agencies, institutions, or political subdivisions, and any public body"). Because the VWPL includes no such waiver for school boards, the School Board retains its sovereign immunity. *See Mais v. Albemarle Cnty. Sch. Bd.*, 657 F. Supp. 3d 813, 819, 823 (W.D. Va. 2023) (dismissing VWPL claims against "Albemarle County [School Board]" as it was a "political subdivision" with general "immunity from liability for tortious injury."). Count I should therefore be dismissed.

## II.    Plaintiff's FAWBPA Claim (Count II) Is Subject to Dismissal on Multiple Grounds

Virginia's Fraud and Abuse Whistle Blower Protection Act ("FAWBPA") provides that "[n]o employer may discharge, threaten, or otherwise . . . retaliate against a whistle blower" if the "employee who discloses information about suspected wrongdoing or abuse [does so] in good faith and upon a reasonable belief that the information is accurate." Va. Code § 2.2-3011(A)-(C). Plaintiff's FAWBPA claim fails for multiple reasons.

First, the FAWBPA does not provide whistleblower protection for public disclosures to media outlets. The FAWBPA expressly states that a whistleblower means:

> [A]n employee who witnesses or has evidence of wrongdoing or abuse and who makes or demonstrates by clear and convincing evidence that he is about to make a good faith report of, or testifies or is about to testify to, the wrongdoing or abuse to one of the employee's superiors, an agent of the employer, or an appropriate authority.

Va. Code § 2.2-3010. An "appropriate authority" is a "federal, state, or local agency or organization having jurisdiction over criminal law enforcement, regulatory violations, professional conduct or ethics, or abuse; or a member, officer, agent, representative, or supervisory employee of the agency

11

or organization." *Id.* Although Plaintiff alleges generally that she was subjected to retaliatory actions starting in 2021-2022, ECF 31 ¶ 99, it is clear from her pleading that the primary basis for her FAWBPA claim relates to being placed on administrative leave after she had participated in a social media webinar. *Id.* ¶ 100. Indeed, by at least August 2025, Plaintiff admits that she had reported her abortion-trafficking allegations to social media bloggers and journalists, ECF 31 ¶¶ 20, 21, who clearly are not government officials. *See Mills v. State of Alabama*, 384 U.S. 214, 219 (1966). Thus, to the extent Plaintiff premises her FAWBPA claim on her 2025 activities, her claim is fatally flawed.

Second, Plaintiff's 2022 reports do not satisfy FAWBPA's "good faith" requirement. Va. Code § 2.2-3010, 3011(C). FAWBPA does not protect disclosures "that are reckless or [that] the employee knew or should have known were false, confidential by law, or malicious." Va. Code § 2.2-3010, 3011(C). There are no well-pled factual allegations supporting Plaintiff's bare assertion that she "in good faith engaged in protected activities." ECF 31 ¶¶ 93, 99. To the contrary, the facts in the SAC show Plaintiff was reckless at best—in her own words, she accused Ms. Diaz "[i]n response" to an investigation into Plaintiff's own conduct. *Id.* ¶ 12. And Plaintiff does not claim she took any steps to investigate the veracity of Doe #1's statement or provide supporting evidence, despite Lehman's invitation to do so. *Id.* ¶ 17. Good faith requires more. *Cf. Workman v. LHC Grp., Inc.*, 2024 WL 3572305, at *4 (W.D. Va. 2024) (dismissing VWPL retaliation claim where the court could not assess good faith based on "insufficiently specific" allegations).

Third, and perhaps most critically, the facts as pled do not plausibly establish causation—*i.e.*, that her 2022 disclosures caused her suspension without pay in May 2025 and placement on administrative leave (and the consequences of that leave) in October 2025. To show causation, a plaintiff must either allege that "the retaliation . . . closely follow[s] the protected activity" or "put

forth a sufficient explanation for the time elapsed between the protected activity and the alleged retaliation." *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 837 (E.D. Va. 2016). Courts "uniformly hold that the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). And while "there is no bright line rule for temporal proximity, the Fourth Circuit has suggested that . . . sixty-two days . . . between the protected activity and the adverse employment action . . . is too long to establish causation by temporal proximity alone." *Wood v. Bristol Va. Util. Auth.*, 661 F. Supp. 3d 538, 553 (W.D. Va. 2023) (quoting *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218-19 (4th Cir. 2022), and collecting cases).

The facts alleged in the SAC completely undermine any allegation by Plaintiff that her 2022 disclosures to Parker, Lehman, and Wenzel prompted adverse employment actions by FCPS nearly three years later. Plaintiff does not allege that any Defendant besides Lehman knew about Plaintiff's 2022 reports in the first place. *See* ECF 31 ¶¶ 12, 15. This alone is fatal to her causation theory. *Cf. Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 125 (4th Cir. 2021) ("[A] *prima facie* case of retaliation requires that a plaintiff demonstrate that the decisionmaker imposing the adverse action have actual knowledge of the protected activity."). Plaintiff also fails to tie either consequence to her 2022 complaints in the SAC. She alleges that her May 1, 2025, suspension was based on Brown's belief that Plaintiff hid a student in her classroom. *Id.* ¶¶ 48, 52. As for her administrative leave, Plaintiff points only to her participation "in a publicly broadcast Webinar hosted by Americans United for Life" as proof of "temporal proximity." *Id.* ¶ 100. However, because the FAWBPA does not protect such conduct, any "temporal proximity" between the broadcast and Plaintiff's leave is irrelevant.[3] Thus, because the allegations of the SAC do not plead

---

[3] Note also that the FAWBPA does not authorize the relief Plaintiff seeks: "compensatory damages." ECF 31 at 29. FAWBPA does not create a cause of action for *damages* against

an actionable FAWBPA claim, the Court should dismiss Count II.[4]

### III.    **Plaintiff's Defamation Claim (Count III) Fails on Multiple Grounds**

The SAC attempts to establish a defamation claim by seizing upon various alleged statements made by Defendants in responding to Plaintiff's baseless claim that Ms. Diaz secretly encouraged, facilitated, and perhaps even paid for student abortions. As shown in the following chart, the alleged defamatory statements can be broken into three categories:

| Category | SAC ¶ No. | Statement |
|---|---|---|
| Student Relationship Statements | 31-32 | Brown and Healey's statement that Plaintiff "helped [a student] acquire a pregnancy test" and "facilitated the logistics for the student, Doe #3, to purchase a pregnancy test." |
| | 35 | Brown's statement that Plaintiff "violated Regulation 4444.1- Prevention of sexual misconduct and abuse." |
| | 36, 40 | Healey's statement that Perez "had falsified records" and "had had an inappropriate relationship with a student [Doe #4]." |
| | 48 | Brown's statement that Plaintiff "hid student Doe #3 in her classroom (Room # 217) on March 12, 2025." |
| Job Duties Statements | 45 | Healey's statement that Plaintiff "blatantly disregarded a directive to review and correct her gradebook." |
| | 56 | Brown's statement that Plaintiff "didn't leave lesson plans for her classes." |
| Investigative Findings Statements | 58 | Brown and Healey's statement to King & Spalding attorneys that Plaintiff "instigated bullying amongst the students." |
| | 59-60 | Reid's statement that Plaintiff's abortion-trafficking claims are "likely untrue," that "[i]t appears that the teacher who made these allegations may have falsified the evidence and intentionally |

government officials; it permits reinstatement to the same position or an equivalent, reinstatement of benefits, backpay, and a civil penalty paid into a state-held fund. Va. Code § 2.2-3011(D).

[4] In addition to these deficiencies, it is questionable whether the School Board, under the FAWBPA, could be considered an "employer," which the statute defines as "a person supervising one or more employees, including the employee filing a good faith report, a superior of that supervisor, or an agent of the governmental agency." Va. Code § 2.2-3010. As discussed *supra*, courts are loathe to find that the legislature has waived sovereign immunity absent an express statutory provision. *Moschetti*, 2022 WL 3329926, at *10.

| | | |
|---|---|---|
| | | refused to cooperate with the original school-based investigation of her allegations in 2022," and that "[b]ased on [outside counsel's] interim findings, which are deeply concerning, these 2021 allegations are likely untrue. We have an obligation to protect our staff from wrongful and unjustified accusations." |
| | 66 | FCPS's statement in its report to the Senate HELP committee and the U.S. Department of Education that Plaintiff manipulated evidence or witnesses. |
| | 68 | FCPS's statement through counsel that Plaintiff "trespass[ed] onto FCPS property without authorization." |
| | 70-74 | Statements included in outside counsel's final report and repeated by Reid that: <br><br>• Plaintiff "appears to have knowingly procured a false statement from the former CHS student (Student B) whom she claims obtained a school-funded abortion in 2021," <br><br>• Plaintiff "appears to have manipulated the content of a statement she procured from another student (Student C) whom she claims was pressured by Mrs. Diaz to obtain a late-term abortion," <br><br>• Plaintiff's "allegations are not only untrue but were based largely on statements that were misinterpreted, mistranslated, taken out of context, or in some cases knowingly fabricated," and <br><br>• that "innocent CHS personnel in this case were wrongly and publicly accused of criminal acts without a[] sound factual basis." |

Plaintiff's defamation claim suffers from multiple defects. First, the School Board and Individual Defendants acting in their official capacities enjoy sovereign immunity. Second, the claims against the Individual Defendants relating to alleged acts purportedly taken in their individual capacities are protected by qualified privilege. Third, the alleged defamatory statements, as pled, lack the requisite defamatory sting or are otherwise not actionable.

### A.    Sovereign Immunity Protects the School Board and Individual Defendants Acting in Their Official Capacities

Virginia courts have long held that school boards function as arms of the Commonwealth

and share its absolute immunity from tort liability, including in relation to defamation claims. *See Kellam v. Sch. Bd. of City of Norfolk*, 117 S.E.2d 96, 97 (Va. 1960). That immunity extends to a school board's constituent officers acting in their official capacity. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (affirming dismissal of official-capacity claim against school superintendent); *Z.G. v. Pamlico Cnty. Pub. Schs. Bd.*, 744 F. App'x 769, 780 (4th Cir. 2018) (same); *Emesowum v. Arlington Cnty.*, 2020 WL 3050377, at *6 (E.D. Va. 2020) (dismissing claims against county officials acting in their official capacity).

Federal and state courts applying Virginia law have consistently dismissed defamation claims against school boards. *See Dewitt v. Prince William Cnty. Sch.*, 2019 WL 13295861, at *3 (E.D. Va. 2019) (dismissing defamation claim because "Prince William County School Board, as 'a governmental agency or arm of the state[,]' is entitled to sovereign immunity from liability for tort claims"); *Cole v. Buchanan Cnty. Sch. Bd.*, 661 F. Supp. 2d 569, 573 (W.D. Va. 2009) (dismissing defamation claim against school board "because Virginia common law holds that county school boards are immune from state-law tort liability, which includes claims of defamation"); *Brayboy v. Durrette*, 2019 WL 4033856, at *1-2 (Va. 2019) (affirming judgment that "sustain[ed] a plea in bar against the School Board" on "sovereign immunity" grounds in a "defamation action"); *McKay v. Clarke Cnty. Sch. Bd.*, 1988 WL 619141, at *1, *3 (Clarke Cnty. Cir. Ct. 1988) (sustaining "demurrer based on sovereign immunity" in "action for defamation brought by a former teacher" "as to the [School] Board, its members and the division superintendent"). Consequently, the defamation claim against the School Board and Individual Defendants acting in their official capacities should be dismissed with prejudice.

## B.    The Allegedly Defamatory Statements Are Protected by Qualified Privilege

Under Virginia law, qualified privilege attaches to "[c]ommunications between persons on a subject in which the persons have an interest or duty," and is grounds for dismissal of defamation

claims. *Cashion v. Smith*, 749 S.E.2d 526, 532 (Va. 2013) (citation omitted). The privilege extends to communications between "co-employees and employers in the course of employee disciplinary or discharge matters." *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000); *see also Dwyer v. Smith*, 867 F.2d 184, 195 (4th Cir. 1989) (communications relating to matters of mutual interest and employee investigations into misconduct or discipline are presumptively privileged under Virginia law). To overcome qualified privilege, a plaintiff must allege "that the defamatory words were spoken with common-law malice," which is "defined as some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff." *Harless v. Nicely*, 900 S.E.2d 503, 509 (Va. Ct. App. 2024). This is a particularly high bar in employment matters, where "the absence of malice is presumed." *Larimore*, 528 S.E.2d at 122.

The recent *Harless* decision is instructive. There, a high school teacher and football coach sued four employees of Roanoke County Public Schools—including the principal, a school board member, and the superintendent—based on their statements that the plaintiff had acted in a racist manner and engaged in illicit player recruiting practices. 900 S.E.2d at 505-09. The court affirmed the dismissal, reasoning that qualified privilege applied because the defendants (1) made the statements in the course of their duties to "express their concerns about another employee who could have . . . been violating . . . policies—which could ultimately lead to that employee's discipline or to termination of his employment"; and (2) shared a common interest in "ensuring that their students are not subjected to . . . unsportsmanlike practice[s]" and in "protecting the well-being of each and every student." *Id.* at 508-09.

Here, the statements by FCPS and CHS administrators that Plaintiff challenges as defamatory—all of which focus on Plaintiff's actual or suspected failures to comply with school rules (*e.g.*, by furnishing students with pregnancy tests, titling and insuring a student's car in her

17

own name, etc.) and Defendants' investigation into the same—were made by Defendants in the course of performing their official duties. *See* ECF 31 ¶¶ 31, 32, 35, 36, 40, 45, 46, 48, 56, 58-60, 66, 68, 70-74.[5] As school officials, Defendants have a vested interest in safeguarding students and ensuring employees comply with school division policies and regulations. *See Harless*, 900 S.E.2d at 509-10. This privilege applies equally to statements made by school administrators to parents/guardians and to staff who share a common interest in student well-being, as well as to communications with legal counsel. *See id*; *see also Van Vleck v. Sallyport Glob. Holdings, Inc.*, 2019 WL 2273845, at *2-3 (E.D. Va. 2019).

All of the allegedly defamatory statements by the Individual Defendants occurred within the scope of their administrative and supervisory functions, triggering qualified privilege. Moreover, every such statement Plaintiff challenges was made in the context of communications among FCPS staff or with FCPS counsel, or statements directed to students and their families. To overcome qualified privilege, Plaintiff would be required to plead facts sufficient to show that Defendants acted with malice, yet the pleadings in this regard are woefully deficient. Plaintiff does not identify a single specific statement or action that she claims shows malice. Instead, she makes only conclusory allegations that Defendants acted out of "spite," "ill-will," or a "grudge," ECF 31

---

[5] Further, courts deciding defamation claims arising under Virginia law have ruled that statements made in response to a governmental investigation receive similar privilege protections. *See Shabazz v. PYA Monarch, LLC*, 271 F. Supp. 2d 797, 806 (E.D. Va. 2003) (immunizing alleged defamatory statements made to FBI during governmental investigation); *Goodman v. IKEA US Retail, LLC*, 2024 WL 4554773, at *5 (E.D. Va. 2024) (dismissing defamation claim based on statements made to Equal Employment Opportunity Commission investigators); *Bryant-Shannon v. Hampton Roads Cmty. Action Program, Inc.*, 856 S.E.2d 575, 581 (Va. 2021) (affording absolute privilege for purposes of defamation claim to statements made during Virginia Employment Commission proceedings); *see also Holmes v. Eddy*, 341 F.2d 477, 480-82 (4th Cir. 1965) (concluding that statements made to Securities and Exchange Commission as part of its investigation cannot substantiate a defamation claim). The Investigative Findings Statements— particularly those made to government investigators—are therefore similarly privileged.

¶ 112—precisely the types of "general conclusion[s]" that do not suffice to state a claim. *Harless*, 900 S.E.2d at 509-10 (plaintiff's conclusory allegations that public school officials held "malicious animus" against him were insufficient to plead malice); *see also N.Y. Pub. Radio*, 2023 WL 3303125, at *4 ("[R]ote and conclusory allegations that merely repeat the standards applicable to establishing actual malice, without any particularized facts, are insufficient to plausibly allege actual malice.").

The closest Plaintiff comes to alleging malice is her unsupported assertion that Brown published a statement he "knew" to be "false" when he referred in an internal memo to Plaintiff having "violated Regulation 4444.1-Prevention of sexual misconduct and abuse." ECF 31 ¶¶ 35, 108 (emphasis removed). Plaintiff asserts that Brown "said that [she] enabled students for inappropriate sexual misconduct," *id.* ¶ 108, but this is highly misleading and not supported by her own allegations. The memo in question references Regulation 4444.1, which, while expressly referring to the prevention of sexual misconduct, also prohibits a wide variety of behaviors that generally involve crossing appropriate personal boundaries with students, including "[v]isit[ing] the homes of students" and "[t]ransporting students in personal vehicles." Exh. K. And the memo that Plaintiff alleges Brown "read . . . out loud," ECF 31 ¶ 35, states clearly that Plaintiff was found to have violated this regulation solely because she transported a student in her vehicle without "permission from an administrator and consent of the parents," Exh. L at 2. Plaintiff herself concedes that she engaged in forms of behavior that also arguably violate this same regulation. *See, e.g.*, ECF 31 ¶ 36 (acknowledging that Plaintiff "helped [a student] get the title, registration, and insurance for his car"). Even taking her allegation at face value, then, the claim that Brown made a statement she claims he "*knew*" "[a]t the time" to be "false," *id.* ¶ 108 (emphasis added), is not enough in itself to satisfy the high standard for pleading common-law malice. *See Mayfield*

*v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (plaintiffs' assertion that defendants' "statements 'were known by [them] to be false at the time they were made'" were "entirely insufficient" to plead malice).

**C.    The Statements on Which Plaintiff's Defamation Claims Are Based Lack the Requisite Defamatory Sting**

Plaintiff's defamation claim is also flawed in that the statements on which she premises her claim all lack the requisite defamatory sting or are otherwise not actionable. To be actionable under Virginia law, a defamatory statement must "carr[y] the requisite defamatory sting," meaning that it "tend[s] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him" or "injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 507, 509-11 (E.D. Va. 2016) (quoting *Schaecher v. Bouffault*, 772 S.E.2d 589, 599 (Va. 2015)). This too is a high bar.

In *Dragulescu*, the court dismissed an assistant professor's defamation claims against her supervisors for statements made in a disciplinary letter falsely accusing plaintiff of talking disparagingly about her department, having "meltdowns" and temper tantrums, calling a training session "f---ing bulls--t," and not contributing to the HBCU's mission because these statements, even if true, lacked defamatory sting. *Id.* at 509. The court explained that these statements did not pass the Supreme Court of Virginia's test that "'reputation must be affected to a magnitude sufficient to render one odious, infamous, or ridiculous, or subject to disgrace, shame, scorn, or contempt.'" *Id.* at 511 (quoting *Schaecher*, 772 S.E.2d at 599).

The allegedly defamatory statements Plaintiff points to are similarly lacking in

"defamatory sting." The Job Duties Statements, which relate to two teaching performance issues—disregarding a directive to correct a gradebook and failing to leave lesson plans, ECF 31 ¶¶ 45-56—are plainly not actionable because a "supervisor's rebuke of an employee's single failure to follow a directive is far removed from commenting that the employee wants for skills or qualities necessary for her position." *Baldwin v. Baker*, 2016 WL 11663756, at *5 (Prince Edward Cnty. Cir. Ct. 2016); *see also Treichel v. Nat'l Bus. Educ. Ass'n,* 2020 WL 6323757, at *7 (E.D. Va. 2020) (statement that plaintiff failed to train her replacement and withheld documents "may cast shame on Plaintiff" but was not defamatory). Put differently, a statement that an employee has "chosen not to follow directives" for a "limited" period of time "does not connote the requisite defamatory 'sting' to one's reputation." *Anderson v. Sch. Bd. of Gloucester Cnty., Va.*, 2020 WL 2832475, at *41 (E.D. Va. 2020).

Similarly, Plaintiff's allegations concerning the Investigative Findings Statements fall far short. ECF 31 ¶¶ 59-60. Healey and Brown's alleged statement to FCPS's attorneys that Plaintiff "instigated bullying amongst the students," ECF 31 ¶ 58, would have been made in the course of communications with FCPS's outside counsel, which is subject to attorney-client privilege, and would benefit from "absolute privilege" for purposes of a defamation claim. *Mansfield v. Bernabei*, 2011 WL 7478297, at *5-6 (Fairfax Cnty. Cir. Ct. 2011), *aff'd*, 727 S.E.2d 69 (Va. 2012); *Long v. Old Point Bank of Phoebus*, 1997 WL 33616272, at *1-5 (Norfolk Cir. Ct. 1997). Similarly, FCPS's counsel's purported accusation that Plaintiff "trespass[ed] onto FCPS property," ECF 31 ¶ 68, "does not . . . carry the 'sting' of a reprehensible crime," *Schaecher*, 772 S.E.2d at 595-96, particularly when understood in the context in which this statement was made. *See* Exh. M at 3 (showing that Plaintiff was instructed "not to return to FCPS facilities without seeking prior approval" during her paid administrative leave). And Plaintiff does not allege that the trespassing

statement was published to a third-party, as required to state a defamation claim. *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 915 (E.D. Va. 2004).

Plaintiff's efforts to base her defamation claim on the Student Relationship Statements fare no better. "[C]ontext is of the utmost importance" when determining defamatory sting. *Schaecher*, 772 S.E.2d at 599. All but one of the alleged Student Relationship Statements were made between FCPS staff and administrators. Statements that "involve[] a supervisor speaking directly to an employee in the workplace over whom [he] has authority" are not the sort to "injure [Plaintiff]'s reputation in the common estimation of mankind." *Dragulescu*, 223 F. Supp. 3d at 511.

Moreover, a statement cannot be defamatory if it is "substantially true." *Ebersole v. Kline-Perry*, 292 F.R.D. 316, 321 (E.D. Va. 2013); *see also Jordan*, 612 S.E.2d at 207 ("[S]light inaccuracies of expression are immaterial provided the defamatory charge is true in substance.") (quoting *Saleeby v. Free Press, Inc.*, 197 Va. 761, 763 (1956)). Although Plaintiff attempts to artfully plead around this limitation, some of the challenged statements are substantially true even as pleaded. For example, Plaintiff alleges that Brown defamed her by reading a memo aloud stating that she "violated Regulation 4444.1-Prevention of sexual misconduct and abuse." ECF 31 ¶ 35. Yet Plaintiff *did* violate that regulation. The memo from which Brown read clearly recounts that Plaintiff impermissibly "transport[ed] the student home alone in [her] personal vehicle" in November 2024. *See* Exh. L at 1; ECF 31 ¶ 28 (acknowledging transporting students violates CHS policies). Plaintiff's own OER interview testimony bolsters the "substantial truth" of this statement, rendering it additionally nonactionable. *See* Exh. N at 2 ("So we called her father and her father said yes[,] give her a ride. . . . And I took her to her house."). As another example, Plaintiff complains that she was defamed by others saying she had inappropriate relationships with students. ECF 31 ¶¶ 36, 40. That is also substantially true. These paragraphs do not clarify what

Plaintiff means by an "illicit" or "inappropriate" relationship, but the SAC is rife with examples of Plaintiff's own conduct, including her efforts to acquire title, registration, and insurance for a student's vehicle and exchanging personal text messages with students. *See id.* ¶¶ 36, 55.

Likewise, there is no specific allegation that either of Superintendent Reid's statements were false—nor were they. Reid twice truthfully summarized for CHS staff and families what FCPS's counsel officially reported in two separate submissions to the DOEd and the Senate HELP Committee. *Compare* Exhs. A, B, C, D, E *with* Exhs. H, J. Again, "[t]rue statements do not support a cause of action for defamation." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005).[6]

For the reasons set forth above, Plaintiff's defamation claim is legally and/or factually deficient and should be dismissed.

## IV.    Plaintiff's State Free Speech Claim (Count IV) Is Subject to Dismissal

Plaintiff brings two constitutional free speech claims, one under state law (Count IV) and one under 42 U.S.C. § 1983 alleging deprivation of her federal rights under color of state law (Count V). Both claims exclusively seek damages for the alleged "deprivation" of Plaintiff's right to speak on matters of public concern. ECF 31 ¶¶ 119, 122. Article I, Section 12 of the Virginia Constitution is co-extensive with the First Amendment. *See McCaffrey v. Chapman*, 2017 WL 4553533, at *5 (E.D. Va. 2017). So, the same substantive defects in Plaintiff's First Amendment theory (Count V), discussed *infra*, doom her Section 12 claim.

---

[6] Plaintiff's allegation that "FCPS and/or King & Spalding" "fabricated" "false" claims that she "manipulated witnesses," ECF 31 ¶ 66, also fails because, to the extent Plaintiff attributes this statement to the School Board and/or school division employees acting in their official capacities, sovereign immunity applies. *See supra* at 16. Attributing this statement to FCPS's counsel (a third party, not a defendant) does not avert the problem, because whatever statements counsel made were on behalf of the School Board in response to an official inquiry, and "absolute privilege" forecloses actionable defamation on official statements made to governmental bodies. *Mansfield*, 2011 WL 7478297, at *5-6 ("absolute privilege" shielded both client and attorney from a defamation action based on a draft complaint).

In addition, sovereign immunity bars Plaintiff's Section 12 claim. Virginia law permits a private cause of action under the Virginia Constitution against a governmental entity *only* where the provision is self-executing or where the General Assembly, by creating a cause of action, has expressly waived sovereign immunity. *See Mais*, 657 F. Supp. 3d at 823. While courts have found that Section 12 is self-executing for purposes of declaratory and injunctive relief, they have stopped short of authorizing suits for money damages. *See Ibanez v. Albemarle Cnty. Sch. Bd.*, 897 S.E.2d 300, 311-12 (Va. Ct. App. 2024); *DiGiacinto v. Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365, 370 (Va. 2011). Courts have also consistently found that Section 12 is "only self-executing for claims challenging [the constitutionality of] laws or ordinances." *Suiter v. Taylor*, 2024 WL 3466186, at *4 (W.D. Va. 2024) (quoting *Mais*, 657 F. Supp. 3d at 825); *see also Ford v. Northam*, 2023 WL 2767780, at *8 (W.D. Va. 2023) (plaintiff had "no viable claim under Section 12 . . . as his claims [were] not based on a law or ordinance, but on procedures and policies of a state agency"); *Va. Student Power Network v. City of Richmond*, 2021 WL 6550451, at *2 (Richmond Cir. Ct. 2021) (similar and collecting cases).

Plaintiff's Section 12 claim does not challenge a law or ordinance and seeks only damages. Given that nothing in Section 12 or in any implementing legislation supplies an express legislative waiver of sovereign immunity that would allow such a claim against a school board and school officials acting in their official capacity, Count IV should be dismissed. *See McCaffrey*, 2017 WL 4553533, at *5 ("[T]he Supreme Court of Virginia has *never* recognized an implied cause of action for *damages* under Article I, Section 12.") (emphasis added).

## V.    Plaintiff's Section 1983 Claim (Count V) Is Subject to Dismissal

In order for a government employee to claim deprivation their federal First Amendment rights under color of state law, she must allege facts sufficient to show that (1) she "was speaking as a citizen [on] a matter of public concern," rather than as an employee about "a matter of personal

24

interest"; (2) her interest in speaking on the matter of public concern "outweighed" Defendants' interest in providing an effective public service; and (3) her speech "caused the disciplinary action." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017). Even if Plaintiff's false accusations were somehow a matter of public concern (they are not), Defendants are entitled to qualified and official immunity.[7]

### A.    The Allegations Do Not Substantiate That Plaintiff Spoke on a Matter of Public Concern

Speech involves a matter of public concern where it addresses "'a matter of interest to the community' rather than 'complaints over internal office affairs,'" and reflects "an effort to participate in a larger public dialogue." *Id.* at 583, 585 (citation omitted). Although the present dispute largely emanates from Plaintiff's personal tensions with a coworker (Diaz) and a supervisor (Lehman), she attempts to cast her grievances and complaints as speech opposing "unlawful abortion trafficking." ECF 31 ¶ 11. In assessing whether the speech involves a matter of public concern, the Court must look to the content of the speech, not Plaintiff's labels.

As in another very recent case involving a teacher's claims against a public school system, the SAC "painstaking[ly] chronicles [a] myriad [of] workplace disagreements" but does not "plausibly allege that [Plaintiff] attempted to participate in a larger public dialogue." *Watson v. Wake Cnty. Pub. Sch. Sys.*, 2025 WL 2528711, at *9 (E.D.N.C. 2025). In *Watson*, the plaintiff alleged that the defendants failed to renew her contract because she had engaged in protected

---

[7] If the Court were to find that Plaintiff's statements were a matter of public concern, then statements made by the Defendants in responding to Plaintiff's allegations also would be encompassed within a matter of public concern, and Plaintiff's attempt to silence Defendants through her defamation action would be subject to Virginia's Anti-SLAPP statute, Va. Code § 8.01-223.2(A), (C). "Generally speaking, anti-SLAPP statutes aim to weed out and deter lawsuits brought for the improper purpose of harassing individuals who are exercising their protected right to freedom of speech." *CBS Corp.*, 2 F.4th at 296. Virginia's law includes immunity from tort claims based on statements "regarding matters of public concern that would be protected under the First Amendment." Va. Code § 8.01-223.2(A).

25

speech, principally complaining about alleged race discrimination within the school system. *Id.* But those complaints, as here, were directed at her colleagues. In other words, she spoke "as an employee on a matter of private interest," not "as a citizen on a matter of public concern," and this led the court to dismiss her First Amendment retaliation claim with prejudice. *Id.*

Similarly, here, it is evident from Plaintiff's own allegations that the speech she claims led to the complained-of retaliation was speech directed *internally* to CHS administrators about an *internal* coworker—specifically "[i]n response" to allegedly being "set up" by that same coworker with what Plaintiff claims were "false allegations that she had provided a pregnancy test to a student." ECF 31 ¶¶ 12-13; *see also Porter v. Bd. of Trustees of N.C. State Univ.*, 72 F.4th 573, 583-84 (4th Cir. 2023) (a professor's "wholly internal communications" critiquing the school's handling of diversity initiatives was not a matter of public concern).

### B.      The Individual Defendants Are Entitled to Qualified Immunity

Even if Plaintiff's speech were protected, the Individual Defendants are entitled to qualified immunity because their conduct did not violate "clearly established" law. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Suiter*, 2024 WL 3466186, at *4 (citation omitted). Where a motion to dismiss asserts qualified immunity, the court considers whether (1) "the facts, viewed in the light most favorable to the plaintiff, show that the [defendant's] conduct violated a federal right," and (2) that "right was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional." *Id.* (citation omitted). A court "may address these questions in the order that would best facilitate the fair and efficient disposition of the case." *Atkinson v. Godfrey*, 100 F.4th 498, 504 (4th Cir. 2024). As long as the answer to "either prong is 'no,' the doctrine of qualified immunity shields the defendant from liability." *Suiter*, 2024 WL 3466186, at *4 (citation omitted).

A broadly framed right to free speech by a public school teacher is not sufficient to show the right was clearly established. Courts instead focus on the asserted right's "application to the specific conduct being challenged." *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (quotation omitted). This means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *DiMeglio v. Haines*, 45 F.3d 790, 804 (4th Cir. 1995). That is, "existing precedent must have placed the statutory or constitutional question beyond debate." *Crouse*, 848 F.3d at 583. Thus, "only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply, and not yet well-defined." *DiMeglio*, 45 F.3d at 806 (collecting cases).

Plaintiff cites no controlling authority establishing a teacher's right to make unsubstantiated accusations against coworkers in the context of a personal squabble, yet from the reasonable vantage point of CHS administrators that is precisely what this matter involved. *See Suiter*, 2024 WL 3466186, at *6 (dismissing where no "controlling authority" had "clearly established" the right to film law enforcement conducting a traffic stop of someone else). Furthermore, a reasonable official in Defendants' position would *not* have understood their actions to be unconstitutional. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007). Here, Plaintiff alleges that Defendant Lehman investigated the allegations, communicated to Plaintiff that he had received contrary information from the individuals accused by Plaintiff during his investigation, and requested that she share any further information to corroborate her claims. ECF 31 ¶ 17. Yet Plaintiff still did not come forward with any of her purported evidence of alleged school-facilitated student abortions. *Id.* ¶¶ 17-18. Because the Individual Defendants (to the extent

they even knew of Plaintiff's abortion-related allegations) "reasonably [could] have viewed" Plaintiff's allegations as being baseless and designed to "foment complaints" against a coworker she disliked, *Crouse*, 848 F.3d at 584, qualified immunity applies.

### C.    The School Board Is Immune from Liability Under *Monell*

Finally, Plaintiff's claim against the School Board (and the Individual Defendants in their official capacities), must be dismissed because Plaintiff fails to allege that an official policy or custom caused the alleged violation. The School Board is a local government entity that may only be held liable under § 1983 in the narrow circumstances laid out in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 (1978), and its progeny. *See Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 n.3 (4th Cir. 2000) ("In *Monell*, the Court recognized that school boards and municipalities are indistinguishable for purposes of § 1983."). Under *Monell*, a "local government may be held liable for a decision made by an individual whose edicts or acts may fairly be said to represent official policy," but not for "going along with the discretionary decisions made by [a] subordinat[e]." *Lytle v. Doyle*, 326 F.3d 463, 472 (4th Cir. 2003). In the First Amendment retaliation context, "[t]o hold a municipality (a local government entity) liable for a constitutional violation under § 1983, the plaintiff must show that the execution of a policy or custom of the municipality caused the violation." *Love-Lane*, 355 F.3d at 782.

Plaintiff identifies no official policy or custom that led to the alleged retaliation. Instead, she challenges discretionary decisions—a temporary suspension and administrative leave—made by individual employees. ECF 31 ¶¶ 52, 67. *Cf. Watson*, 2025 WL 2528711, at *8 (the plaintiff's perception that her supervisor "looked angry" did not constitute retaliation for purposes of Title VI; nor could she base her retaliation claim on "[co-workers] declining to have lunch with her, an alleged vehicle break-in, alleged WCBE surveillance, an alleged hack of [her] home computer, or meetings called to discuss complaints other teachers and staff filed against [the plaintiff]"). And a

local government cannot be liable merely for "going along with the discretionary decisions made by [a] subordinat[e]." *Lytle*, 326 F.3d at 472. Official immunity is thus appropriate for such isolated incidents. *See Crouse*, 848 F.3d at 584 n.3 (official immunity applies where plaintiffs challenged "a single employment decision involving no municipal policy").

Moreover, while a single decision can occasionally create liability, that decision must be made by the official with "final policymaking authority." *Stickley v. Sutherly*, 667 F. Supp. 2d 664, 673 (W.D. Va. 2009) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.12 (1986)). Under Virginia law, only the School Board possesses final policymaking authority for personnel decisions. Va. Const. art. VIII, § 7; Va. Code § 22.1-253.13.7, Std. 7. Plaintiff does not allege any facts demonstrating that the School Board itself directed her suspension or administrative leave. Rather, she attributes those personnel-related actions to individual school division administrators, like Brown and Healey (and Bill Fulton, the Director of OER). ECF 31 ¶¶ 52, 67. Even if the School Board delegated to FCPS employees "discretion to hire and fire . . . and [they] exercised that discretion in an unconstitutional manner, the decision to act unlawfully would *not* be [the] decision of the Board." *Stickley*, 667 F. Supp. 2d at 674 (citation omitted; emphasis added). Because Plaintiff fails to challenge a specific policy or custom or identify an adverse action by the School Board, official immunity applies.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the SAC with prejudice.

Dated: February 3, 2026                                    Respectfully submitted,

                                                           */s/ Edward Lee Isler*
                                                           Edward Lee Isler, Va. Bar No. 27985
                                                           Micah E. Ticatch, Va. Bar No. 83351
                                                           ISLER DARE, P.C.

1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Tel: (703) 748-2690
Fax: (703) 748-2695
Email: eisler@islerdare.com
Email: mticatch@islerdare.com

M. Sean Royall, *pro hac vice*
Lucas M. Fields, *pro hac vice*
Zoe M. Beiner, *pro hac vice*
KING & SPALDING LLP
1700 Pennsylvania Ave., NW, Suite 900
Washington, D.C. 20006
Tel: (202) 626-2627
Fax: (202) 626-3737
Email: sroyall@kslaw.com
Email: lfields@kslaw.com
Email: zbeiner@kslaw.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of February 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically sends notification to the following:

Monique A. Miles
Virginia Bar No. 78828
OLD TOWNE ASSOCIATES, P.C.
201 N. Union Street, Suite 110
Alexandria, Virginia 22314
Tel: (703) 519-6810
Email: mmiles@oldtowneassociates.com

Steven H. Aden, *pro hac vice*
Virginia Bar No. 48036
AMERICANS UNITED FOR LIFE
1150 Connecticut Ave., NW, Suite 500
Washington, D.C. 20036
Email: Steven.Aden@aul.org

*Counsel for Plaintiff*

*/s/ Edward Lee Isler*
Edward Lee Isler, Va. Bar No. 27985
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Tel: (703) 748-2690
Fax: (703) 748-2695
Email: eisler@islerdare.com

*Counsel for Defendants*

31