**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
(Alexandria Division)

| | |
|---|---|
| **ZENAIDA PEREZ**, | |
| Plaintiff, | |
| v. | Case No. 1:25-cv-02126-AJT-IDD |
| **FAIRFAX COUNTY SCHOOL BOARD**, et al., | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
<u>**DEFENDANTS' MOTION TO DISMISS**</u>

Monique A. Miles, Esq.
VSB #: 78828
OLD TOWNE ASSOCIATES, P.C.
201 N. Union Street, Suite 110
Alexandria, VA 22314
Tel.: 703-519-6810
mmiles@oldtowneassociates.com

Steven H. Aden, Esq. (*Pro hac vice*)
VSB #: 48036
AMERICANS UNITED FOR LIFE
1150 Connecticut Ave., N.W. Ste. 500
Washington, DC 20036
Tel: 202.741.4917
Steven.Aden@aul.org

## TABLE OF CONTENTS

SUMMARY ...................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

ARGUMENT ................................................................................................................... 8

I.    Plaintiff's Virginia Whistleblower Protection Law (VWPL) Claim Against the
      School Board (Count I) is Not Barred by Sovereign Immunity ......................... 8

II.   Plaintiff's Claim Under the Virginia Fraud, Abuse and Whistleblower Protection
      Act (FAWBPA) (Count II) Is Not Subject to Dismissal.................................... 11

III.  Plaintiff's Defamation Claim (Count III) is Properly Pled and Not Subject to
      Dismissal ........................................................................................................... 13

      A.    The Defamatory Statements Pled by Plaintiff are Not Protected by Qualified
            Privilege .................................................................................................... 14

      B.    The Statements Alleged in Plaintiff's Complaint More than Satisfy the
            "Defamatory Sting" Requirement ........................................................... 19

IV.   The Plaintiff's Free Speech Claim under Article 1, Section 12 of the Virginia
      Constitution (Count IV) Is Not Subject to Dismissal ...................................... 21

V.    The Plaintiff's Section 1983 Claim for Deprivation of Her First Amendment Rights
      (Count V) Is Not Subject to Dismissal ............................................................. 22

      A.    Plaintiff's Complaint Meets the *Pickering-Garcetti* Standard for a Claim of
            Retaliation Against a Public Employee ................................................... 22

      B.    The Individual Defendants Are Not Entitled to Qualified Immunity ................... 26

      C.    The School Board is Not Shielded from Liability by *Monell* .............................. 28

CONCLUSION............................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Lawson,*
    58 Va. (17 Gratt.) 250 (1867) ................................................................. 19

*Adams v. Trs. of the Univ. of N.C.-Wilmington,*
    640 F.3d 550 (4th Cir. 2011) ................................................................. 23

*Alexander v. City of Greensboro,*
    762 F. Supp. 2d 764 (M.D.N.C. 2011) .................................................. 29

*Anderson v. Balt. Cnty., Md.,*
    No. 24-1314, 2025 WL 345968 (4th Cir. Dec. 2, 2025)........................... 29

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................... 2

*Aylor v. Gibbs,*
    129 S.E. 696 (Va. 1925)......................................................................... 17

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico,*
    457 U.S. 853 (1982) ............................................................................... 1

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 554 (2007) ........................................................................... 1, 27

*Blankenship v. Manchin,*
    471 F.3d 523 (4th Cir. 2006) ................................................................. 27

*Brooks v. Arthur,*
    685 F.3d 36 (4th Cir. 2012) ................................................................... 22

*Brooks-Buck v. Wahlstrom,*
    921 S.E.2d 223 (Va. 2025)..................................................................... 15

*Burns v. Gagnon,*
    727 S.E.2d 634 (Va. 2012)..................................................................... 17

*Carter v. Morris,*
    164 F.3d 215 (4th Cir. 1999) ................................................................. 29

*Cashion v. Smith,*
    749 S.E.2d 526 (Va. 2013)........................................................... 14, 16, 17

*Chenault v. RBI Corp.,*
    108 Va. Cir. 529, 2021 WL 8776245 (Va. Cir. Ct. 2021) ....................... 11

*Chesapeake Ferry Co. v. Hudgins*,
  156 S.E. 429 (Va. 1931).............................................................................. 17

*City of Canton, Ohio v. Harris*,
  489 U.S. 378 (1989).................................................................................. 30

*City of St. Louis v. Prapotnik*,
  485 U.S. 112 (1988).................................................................................. 30

*Connick v. Myers*,
  461 U.S. 138 (1983).............................................................................. 22, 23

*Crouse v. Town of Moncks Corner*,
  848 F.3d 576 (4th Cir. 2017) ............................................... 22, 23, 24, 25

*Davison v. Loudoun Cnty. Bd. of Supervisors*,
  267 F. Supp. 3d 702 (E.D. Va. 2017) ....................................................... 21

*Erie R.R. Co. v. Tompkins*,
  304 U.S. 64 (1938)..................................................................................... 9

*Farley v. Thalhimer*,
  49 S.E. 644 (Va. 1905).............................................................................. 17

*Fox v. Deese*,
  362 S.E.2d 699 (Va. 1987)........................................................................ 15

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006).................................................................................. 22

*Gazette, Inc. v. Harris*,
  325 S.E.2d 713 (Va. 1985).................................................................. 13, 14

*Givhan v. W. Line Consol. Sch. Dist.*,
  439 U.S. 410 (1979) ......................................................................... 1, 24, 25

*Great Coastal Express, Inc. v. Ellington*
  334 S.E.2d 846 (Va. 1985)........................................................... 14, 16, 19

*Hall v. United States*,
  44 F.4th 218, 233 (4th Cir. 2022) ............................................................ 10

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982).................................................................................. 26

*Harris v. Wash. & Lee Univ.*,
  906 S.E.2d 128 (Va. Ct. App. 2024)........................................................... 9

*Hope v. Pelzer,*
536 U.S. 730 (2002).................................................................................. 26

*Hous. Cmty. Coll. Sys. v. Wilson,*
595 U.S. 468 (2022)................................................................................... 1

*Hyland v. Raytheon Tech. Servs. Co.,*
670 S.E.2d 746 (Va. 2009)......................................................................... 20

*Ibanez v. Albemarle Cnty. Sch. Bd.,*
897 S.E.2d 300 (Va. Ct. App. 2024)...................................................... 15, 21

*James v. Jane,*
282 S.E.2d 864 (Va. 1980)......................................................................... 15

*Jordan v. Kollman*
612 S.E.2d 203 (Va. 2005).......................................................................... 13

*Jordan v. Sch. Bd. of City of Norfolk,*
640 F. Supp. 3d 431 (E.D. Va. 2022) .................................................. 8, 9, 10

*Kennedy v. Bremerton Sch. Dist.,*
597 U.S. 507 (2022) ........................................................................ 1, 18, 22

*Kentucky v. Graham,*
473 U.S. 159 (1985).................................................................................. 26

*Kirby v. City of Elizabeth City, N.C.,*
388 F.3d 440 (4th Cir. 2004) ............................................................... 22, 30

*Larimore v. Blaylock,*
528 S.E.2d 119 (Va. 2000).......................................................................... 16

*Lee v. City of Syracuse,*
446 Fed. App'x 319 (2d Cir. 2011)............................................................. 29

*Mellen v. Bunting,*
327 F.3d 355 (4th Cir. 2003) ...................................................................... 26

*Monell v. Dep't of Soc. Servs. of City of N.Y.,*
436 U.S. 658 (1978)............................................................................ 22, 28, 29

*Monroe v. Pape,*
365 U.S. 167 (1961).................................................................................. 22

*Newport News Sch. Bd. v. Z.M. by & through Harvey,*
915 S.E.2d 56 (Va. 2025)............................................................................ 15

*Oberbroeckling v. Lyle*,
    362 S.E.2d 682 (1987) ............................................................... 20

*Owen v. City of Indep., Mo.*,
    445 U.S. 622 (1980) .................................................................. 28

*People of State of Ill. v. Outboard Marine Corp., Inc.*,
    680 F.2d 473 (7th Cir. 1982) ...................................................... 11

*Perry v. Sindermann*,
    408 U.S. 593 (1972) .................................................................. 27

*Pettiford v. City of Greensboro*,
    556 F. Supp. 2d 512 (M.D.N.C. 2008) ........................................ 29

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*,
    391 U.S. 563 (1968) ........................................................ 22, 24, 27

*Randall v. Prince George's Cnty., Md.*,
    302 F.3d 188 (4th Cir. 2002) ...................................................... 29

*Rankin v. McPherson*,
    483 U.S. 378 (1987) .................................................................. 27

*Ridpath v. Bd. of Governors of Marshall Univ.*,
    447 F.3d 292 (4th Cir. 2006) ................................................. 24, 28

*Schaecher v. Bouffault*,
    772 S.E.2d 589 (Va. 2015) ..................................................... 14, 21

*Shumate v. City of Lynchburg*,
    690 F. Supp. 3d 551 (W.D. Va. 2023) ........................................ 12

*Shumate v. City of Lynchburg*,
    No. 24-1428, 2025 WL 2409059 (4th Cir. Aug. 20, 2025) ............. 12

*Strode v. Clement*,
    19 S.E. 177 (Va. 1894) .............................................................. 17

*Stroman v. Colleton Cnty. Sch. Dist.*,
    981 F.2d 152 (4th Cir. 1992) .................................................... 3, 23

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969) .................................................................... 1

*Toghill v. Virginia*,
    768 S.E.2d 674 (Va. 2015) ........................................................... 9

*Tomlin v. McKenzie,*
    468 S.E.2d 882 (Va. 1996)...................................................................... 15

*Tronfeld v. Nationwide Mut. Ins. Co.,*
    636 S.E.2d 447 (Va. 2006)...................................................................... 20

*Tyree v. Harrison,*
    42 S.E. 295 (Va. 1902)........................................................................... 17

*Ulrich v. City & Cnty of S.F.,*
    308 F.3d 968 (9th Cir. 2002) ................................................................. 25

*Viers v. Baker,*
    841 S.E.2d 857 (Va. 2020)...................................................................... 16

*Vlaming v. West Point Sch. Bd.,*
    895 S.E.2d 705 (Va. 2023)...................................................................... 21

*W. Va. State Bd. of Educ. v. Barnette,*
    319 U.S. 624 (1943) .................................................................................. 1

*Watson v. Wake Cnty. Pub. Sch. Sys.,*
    797 F. Supp. 3d 591 (E.D.N.C. 2025)............................................... 24, 25

*Wilkins v. West,*
    571 S.E.2d 100 (Va. 2002)...................................................................... 21

*Willis v. City of Va. Beach,*
    90 F. Supp. 3d 597 (E.D. Va. 2015) ....................................................... 21

*Wilson v. Layne,*
    526 U.S. 603 (1999) ............................................................................... 26

*Zak v. Chelsea Therapeutics Int'l, Ltd.,*
    780 F.3d 597 (4th Cir. 2015) ................................................................... 4

**Statutes**

20 U.S.C. § 1232g ............................................................................................. 3

Va. Code Ann. § 15.2-1405 (1997)................................................................. 15

Va. Code Ann. § 16.1-241(W) (2025) .......................................................... 4, 5

Va. Code Ann. § 2.2-3010 (2016)................................................................... 12

Va. Code Ann. § 2.2-3011 (2014)................................................................... 12

Va. Code Ann. § 40.1-2 (2025)................................................................... 9, 10

Va. Code Ann. § 40.1-2.1 (2016) ................................................................ 10

Va. Code Ann. § 40.1-27.3 (2020) ........................................................... 8, 9

Va. Code Ann. § 63.2-1509(A)(5) (2024) ................................................. 19

**Regulations**

34 C.F.R. § 99.3 (2012) ............................................................................. 4

**Court Rules**

4th Cir. R. 36(b) ...................................................................................... 10

Va. Sup. Ct. R. 5:1(f) ............................................................................... 10

Va. Sup. Ct. R. 5A:1(f) ............................................................................ 10

**Other Authorities**

17A James Wm. Moore et al., *Moore's Federal Practice* § 120.31[1][b][iii] (Matthew
Bender 3d ed. 2025) ............................................................................ 9

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*
(2012) ............................................................................................... 11

Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983*
(2024–2025 ed.) ................................................................................ 28

COMES NOW Plaintiff, Zenaida Perez ("Plaintiff"), by and through her undersigned counsel, and respectfully submits her opposition to the Motion to Dismiss (Doc. 35) filed February 3, 2026, by all Defendants herein. For the reasons set forth hereinbelow, dismissal of Plaintiff's Second Amended Complaint (SAC) is not warranted under Federal Rules of Civil Procedure (FRCP) 12(b)(1) or FRCP 12(b)(6).

## SUMMARY

Hardly any proposition in First Amendment law is more well established than the fact that public school students and teachers do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969); *Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507, 527–29 (2022) (holding that not everything teachers say or do while on campus is government speech subject to government control because in many situations teachers speak as private citizens); *Givhan v. W. Line Consol. Sch. Dist.,* 439 U.S. 410, 412–14 (1979) (holding that a teacher's complaints about discrimination are protected speech whether made publicly, or privately in one-on-one communication made directly to supervisors); *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 872 (1982) (plurality) (holding summary judgment for the school board was inappropriate where evidence suggested the school board removed books from the library to suppress ideas with which it disagreed). This right involves both the right to speak freely, privately and publicly, on matters of public interest, *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943), and the right to be free from retaliatory actions taken against her for engaging in this speech, *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022). Plaintiff's SAC pleads more than "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The extensive

1

factual content she pleads clearly "allows the Court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, the immunities Defendants rely upon are inapplicable to a case where a plaintiff makes extensive allegations of "malicious" and unreasonable actions by Defendants. For the reasons set forth herein, Defendants' motion should be denied.

## STATEMENT OF FACTS

The Plaintiff's SAC more than meets the requisite pleading standards applicable to each of her five claims. At times the "facts" related in Defendants' opposition bear little relation to the chronicle of several years of defamation and retaliation set forth in Plaintiff's complaint. Defendants rely on a host of undocumented assertions designed to poison the well against Plaintiff with *ad hominem* attacks, claiming Plaintiff "has engaged in patterns of misconduct, at times violating school rules and disregarding direction from her superiors." (Mot. to Dismiss ¶ 1, Feb. 3, 2026, ECF No. 35). But Defendants refer the Court to documents far afield from the SAC that amount to nothing more than hearsay and unsubstantiated assertions. Plaintiff has presented a well-pled complaint on each count, and Defendants cannot be permitted to try this case to the Court at the FRCP 12(b) stage.

The SAC alleges that Mrs. Perez was a popular and well-respected teacher who had received sterling reviews until the time of the incidents complained of. (SAC ¶¶ 26–27) While Defendants would have the Court believe that Plaintiff's reports of Fairfax County Public Schools (FCPS) staff facilitating abortions were sporadic and in furtherance of her own self-interests, the complaint spells out a several-year ongoing campaign by Mrs. Perez to bring the facts to light, as a result of which she suffered an ongoing campaign of retaliation, including defamation, professional consequences and public humiliation. (SAC ¶ 11) ("Perez has reiterated her complaint

of unlawful abortion trafficking on an ongoing basis." (emphasis omitted)) This includes specific allegations of direct reports of details concerning the abortion trafficking allegations to various FCPS officials, including Defendants, at least seven times. (*See* SAC, ¶¶ 12, 14–17, 46, 53, 62.)[1]

Mrs. Perez made the first report verbally on May 5, 2022. (SAC ¶ 12.) She confirmed her report in allegations in a rebuttal memo sent to Centreville High School (CHS) officials, including Defendant Lehman, on May 13, 2022. (*Id*.) She further confirmed it in an email to Defendant Lehman dated June 9, 2022. (*Id*. ¶ 14.)

Mrs. Perez procured a statement from a CHS student, Doe #1, on November 19, 2022, which, translated from Spanish, relates in detail that Mrs. Diaz helped her with a "termination of my pregnancy", paying for the costs of the procedure and not telling her family about it. (*Id*. ¶ 18.) Doe #1's recounting of events was supported by a man Mrs. Perez alleges was her uncle and legal guardian, Mr. S., in an audiotaped interview from November 2022. Mr. S stated that when Doe #1 was pregnant, no one from CHS contacted him to discuss her having an abortion. He discovered she had had an abortion when he had to transport her to the emergency room after she experienced complications from her abortion. (*Id*. ¶ 20.)[2]

---

[1] Defendants' Memorandum in Support purports to break down the statements alleged to be defamation into three handy categories, (Defs.' Mem. in Supp. of Mot. to Dismiss 22–23, ECF No. 36), but the record of continuous statements and actions set out in the amended complaint does not lend itself to such a neat hermeneutic. For this reason, Plaintiff will not address these statements categorically, but rather holistically, as case law insists they should be. The fact that an employee spoke on more than one occasion does not fragment the public-concern analysis where each instance of speech addressed the same subject and arose from the same dispute. In such cases, courts evaluate the speech as a single, unified course of expression. *See generally Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 157 (4th Cir. 1992) (discussing how retaliatory acts are assessed in relation to a unified course of speech, not as responses to discrete or unrelated comments.).

[2] Defendants claim that Mr. S. stated that he was not her legal guardian, but this assertion is obviously hearsay, and a proper subject of discovery. Whether FCPS was legally obligated to inform Mr. S. of his niece's abortion may be controlled by the terms of the Federal Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, which defines "parent" for purposes of access to a student's educational records as including "a natural parent, a guardian, or an individual acting as a parent in the absence of a parent or a guardian." 34 C.F.R. § 99.3 (2012). Or it may be controlled by the provisions of the Virginia

After she obtained these statements, Mrs. Perez met with Lehman and again confronted him with the allegations against Mrs. Diaz on November 22, 2022. (SAC ¶ 15.)[3] In that meeting, Lehman denied recalling Perez's report about facilitating abortions, so Mrs. Perez re-forwarded to him the email and rebuttal she had sent on May 13, 2022, which stated the "pregnancy solution" allegation. (SAC ¶ 16.) While Defendant Lehman may have responded on November 22nd, whether the "investigation" took a day, as Defendants claim, or only a few minutes, the point remains: *Defendant Lehman took no action on a serious matter he had been apprised of for over six months*. Mrs. Perez again responded to Mr. Lehman by email, stating that a specific student (i.e., Doe #1) had her abortion facilitated by Ms. Diaz, and that the student had informed Mrs. Perez of that fact. (*Id*. ¶ 17.)

The SAC further details that in an audio recording of an interview with another student, on August 26, 2025, Doe #2 related that she had become pregnant, and her mother did not know. The social worker, Diaz, took her to the school nurse, and the nurse "offered me the abortion." "You would not be the first one, the last one, or the only one," they said to her. Only after Doe #2 refused the abortion option did they help her tell her mother. (*Id*. ¶ 22.)

The SAC spells out in detail how the conduct of Defendants violated Virginia law, Va. Code Ann. § 16.1-241(W), which requires parental consent for an abortion. (SAC ¶ 23.) The facts

---

abortion consent statute. *See* Va. Code Ann. § 16.1-241(W) (2025). Either way, Mr. S.'s status *viz*. Doe #1 is a matter of fact for the trier's determination.

[3] Defendants make much of the fact that Plaintiff did not present these witness statements to CHS officials for some time, and of their assertion that Mrs. Perez wrote the statement by Doe #1. (Defs.' Mem. in Supp. of Mot. to Dismiss 4-5, 14, 20.) However, these are questions of fact for the jury. Nor can Defendants rely upon their statements to public bodies such as the U.S. Senate Committee on Health, Education, Labor, and Pensions (HELP) (*see id.* at 14); even if they could properly be before the Court on a Rule 12(b) motion to dismiss (which they cannot), they are uncorroborated and unsubstantiated. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (holding the district court erred in considering documents submitted by defendant in conjunction with Fed. R. Civ. P. 12(b)(6) motion because they were neither explicitly referenced in nor integral part of plaintiff's complaint).

alleged by Perez, if proven true, constituted illegal conduct by the CHS social worker, Diaz, and perhaps others. *See* Va. Code Ann. § 16.1-241(W) (directing that apart from a court order, only an "authorized person" can consent to a minor's abortion).

The amended complaint goes on to lay out in detail the acts of retaliation taken by Defendants and FCPS officials and their counsel against Plaintiff for reporting this illegal conduct, from November 2022 through the present. (*See* SAC ¶¶ 24–78.) These include, *inter alia*: personal animosity and shunning by Defendant Lehman from and after November 2022, (*id*. ¶ 24); assigning her an inordinately heavy teaching load more burdensome than that imposed on other ESOL instructors, (*id*. ¶ 25); scheming to trap Plaintiff in violations of CHS rules, such as by putting students up to asking Plaintiff for rides in her vehicle, (*id*. ¶ 28); arbitrarily scheduling meetings and demanding responses within vacation and paid time off, (*id*.); falsely accusing her of obtaining pregnancy tests for students, (*id*.); charging Mrs. Perez with insubordination and disciplining her with a one-day suspension in April 2025, (*id*.); and putting her on her triennial "Summative Evaluation" cycle in this current academic year, a year earlier than the regulations permit, (*id*.). All told, Plaintiff has been subjected to up to *twelve disciplinary memos and reprimands* from and after December 19, 2024, after she engaged in the protected activity of reporting the illegal abortions on an ongoing basis. (*Id*. ¶ 76.)

The amended complaint goes on to relate that the retaliation intensified in 2024–2025, when Defendants Healey and Assistant Principal Brown began their tenures. (*Id*. ¶ 30.) As to Defendant Brown, the amended complaint alleges *no less than eleven* retaliatory acts; that he falsely accused Plaintiff of helping a student acquire a pregnancy test on several occasions, a charge that was filed in her personnel record, (*id*. ¶¶ 31–32); tried to manipulate and pressure students to do or say things about Perez to get her in trouble, creating a hostile work environment

for her, (*id.* ¶ 33); accused her of "violat[ing] Regulation 4444.1-Prevention of sexual misconduct and abuse," an assertion he read out loud in the presence of other employees, (*id.* ¶ 35); declared, "Now I have to add more to Ms. Perez's Reprimand," after hearing that she reported the perceived abortion trafficking to a journalist, (*id.* ¶ 37); locked a student (Doe #5) in his office and stated, "You are not leaving this room until you tell me the truth about your relationship with Ms. Perez," (*id.* ¶ 47); defamed Perez by falsely stating in a meeting that "Perez hid student Doe #3 in her classroom (Room # 217) on March 12, 2025," which accusation was also filed in her personnel file, (*id.* ¶ 48); instructed an 18-year-old male student (Doe # 6) to ask Perez for a ride in her personal vehicle to Costco, and report back to Brown so that he could write her up, (*id.* ¶ 49); gave her an unreasonable and inappropriate teaching schedule, (*id.* ¶ 50); and further reshuffled her teaching schedule in May 2025, (*id.* ¶ 54); pulled two brothers out of their classes to ask them why they had been texting Plaintiff regarding their attendance in her classes, revealing that he was monitoring her personal communications hosted on the FCPS server, (*id.* ¶ 55); on August 25, 2025, defamed Perez when he falsely stated in front of her students and the substitute teacher that "Perez didn't leave lesson plans for her classes." (*id.* ¶ 56.)

As to Defendant Healey, the amended complaint charges that he defamed Plaintiff by claiming that "she had falsified records" and "had had an inappropriate relationship with a student [Doe #4]," a charge that was republished by other teachers and colleagues and filed in Plaintiff's personnel file also, (*id.* ¶ 40); and wrote a Summary Memo stating that "she blatantly disregarded a directive to review and correct her gradebook," (*id.* ¶ 45). This statement was shared in writing with other administrators, and it was also sent to her local file, as well as personnel records in Human Resources (HR). (*Id.*).

6

As to both Healey and Brown, the amended complaint alleges that they falsely reported to their attorneys that "Perez instigated bullying amongst the students," (*id*. ¶ 58); and unjustifiably suspended Mrs. Perez for one day without pay on May 1, 2025, documenting their defamatory statements in her HR personnel record-file, and including numerous high-ranking FCPS officials in the suspension message, (*id*. ¶ 52.).

As to Defendant Reid, on October 16, 2025, Reid told the entire CHS staff "[Plaintiff] may have falsified the evidence and intentionally refused to cooperate with the original school-based investigation of her allegations in 2022," and called her allegations "wrongful and unjustified accusations." (*Id*. ¶ 59.) Reid repeated these defamatory statements in a letter to the entire FCPS system, which was broadcast to the general public on the FCPS website. King & Spalding's preliminary report to the Senate Committee on Health, Education, Labor and Pensions (HELP) and the U.S. Department of Education (DOE) repeated these defamatory assertions on behalf of their client, FCPS. (*Id*. ¶ 65.) These defamatory assertions were published widely to the public by FCPS. (*Id*. ¶ 70.)

Without justification, Bill Fulton, Director of the Office of Employee Relations placed Perez on administrative leave *via email* at 9:06 pm on October 20, 2025, just minutes after Perez made public statements regarding her allegations about the abortion trafficking at CHS, a matter of "public concern." (*Id*. ¶ 67.)

On January 9, 2026, Defendants reiterated their central defamatory assertions against Perez by disseminating to the "CHS school community" and the public via a "Supplemental Report" to the Senate HELP Committee, the U.S. DOE and the Virginia State Police. This report, though designated "Supplemental", represented Defendants' final and complete findings and conclusions. (*Id*. ¶ 70.) This final report reiterated the conclusions of the October 16, 2025 report, including the

defamatory statement that "Mrs. Perez appears to have knowingly procured a false statement from the former CHS student (Student B) [Doe #1 in the SAC] whom she claims obtained a school-funded abortion in 2021." (*Id*. ¶ 71.) The final report also states again that "Mrs. Perez appears to have manipulated the content of a statement she procured from another student (Student C) whom she claims was pressured by Mrs. Diaz to obtain a late-term abortion." (*Id*. ¶ 72.)

The SAC avers that the same day, January 9, 2026, FCPS issued a public statement to the entire CHS staff and families, which linked to the "interim findings" of the October 16, 2025 report, as well as the January 9, 2026 "Supplemental Report". (*Id*. ¶ 73). In her written and verbal statement, Defendant Reid repeated her defamatory statements that Mrs. Perez's "allegations are not only untrue but were based largely on statements that were misinterpreted, mistranslated, taken out of context, or *in some cases knowingly fabricated*." Reid again asserted that "[I]nnocent CHS personnel in this case were wrongly and publicly accused of criminal acts without any sound factual basis." (*Id*. ¶ 74.)

Finally, the SAC clearly alleges that Defendant's statements and conduct were reckless and/or malicious: "Perez's once beloved work environment has become incredibly hostile for her due to Defendants' reckless and/or malicious Defamatory Statements and their unlawful retaliation against her." (*Id*. ¶ 77.)

## ARGUMENT

### I. PLAINTIFF'S VIRGINIA WHISTLEBLOWER PROTECTION LAW (VWPL) CLAIM AGAINST THE SCHOOL BOARD (COUNT I) IS NOT BARRED BY SOVEREIGN IMMUNITY.

Defendants base their motion to dismiss Plaintiff's claim of unlawful retaliation under the VWPL, Va. Code Ann. § 40.1-27.3 (2020), on *Jordan v. School Board of City of Norfolk*, 640 F. Supp. 3d 431, 452–53 (E.D. Va. 2022), a federal district court which itself only cites unpublished Virginia Circuit Court decisions, *id*. (Defs.' Mem. in Supp. of Mot. to Dismiss 17–18.) This case,

alone, is not enough to dismiss the claim at issue, because under the *Erie* doctrine, federal courts do not authoritatively interpret state law in the first instance, but rather rely upon state court interpretations. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "If the state's highest court has not determined a particular issue, the federal court is not necessarily bound to apply the decisions of lower state courts. Instead, the federal court must make its own determination of state law after considering relevant lower state court decisions." 17A James Wm. Moore et al., *Moore's Federal Practice* § 120.31[1][b][iii] (Matthew Bender 3d ed. 2025). "Essentially, the federal court must decide how the state's highest court would decide the issue." *Id*. Conversely, concerning federal courts' interpretations of Va. Code Ann. § 40.1-27.3 and Va. Code Ann. § 40.1-2 (2025)'s definition of "employer", Virginia courts have stated, "[w]hile this Court considers Fourth Circuit decisions as persuasive authority, such decisions are not binding precedent for the decisions of this Court[,]" and have found contrariwise interpretations of its statutory language. *Harris v. Wash. & Lee Univ.*, 906 S.E.2d 128, 142 (Va. Ct. App. 2024) (quoting *Toghill v. Virginia*, 768 S.E.2d 674, 677 (Va. 2015)). The *Jordon* decision itself admitted that "the Supreme Court of Virginia has not squarely addressed the issue [of whether school boards enjoy sovereign immunity from claims made under Va. Code Ann. § 40.1-27.3] . . . ," 640 F. Supp. 3d at 452, and *Jordan* could only cite to unpublished state trial court decisions to support its interpretation, *see id*. at 452–53. Thus, *Jordan* should, at most, be considered a mere singular and extremely weak piece of authority. This court should not feel bound by its precedent in deciding the issue at bar.

Parroting the federal court in *Jordan*, Defendants cite a slew of unpublished Virginia circuit court decisions, but the court should disregard these. The citation of judicial opinions and judgments that are not officially reported, "whether designated as 'unpublished,' 'not for publication,' 'non precedential,' or the like," cannot be received as binding authority. Va. Sup. Ct.

R. 5:1(f); Va. Sup. Ct. R. 5A:1(f). Fourth Circuit Local Rule 36(b) likewise does not confer precedential value on unpublished opinions. *See also Hall v. United States*, 44 F.4th 218, 233 & n.11 (4th Cir. 2022) ("[W]e do not accord precedential value to our unpublished decisions"). Virginia courts have not definitively extended school board sovereign immunity for traditional tort claims to also encompass Va. Code Ann.§ 40.1-27.3's employment-related statutory claims. This is evidenced by the fact that Defendant can only cite unpublished caselaw.

Because Va. Code Ann. § 40.1-27.3 does not define what an "employer" is, the statute relies on the general definitions and exclusions of Va. Code Ann. § 40.1-2 of the same title. *See Jordan*, 640 F. Supp. 3d at 451. *Jordon* concluded, and Defendants echo, "that failing to provide a definition of employer in Section 40.1-27.3 that includes the Commonwealth and other public bodies was an intentional omission by the General Assembly[,]" which implies that the Commonwealth and other public bodies were intended to be exempt from claims made under the statute. *Id*. at 452; (Defs.' Mem. in Supp. of Mot. to Dismiss 18). But this conclusion makes no sense considering the text and history of Va. Code Ann. § 40.1-2. This provision defines "employer" as:

> [A]n individual, partnership, association, corporation, legal representative, receiver, trustee, or trustee in bankruptcy doing business in or operating within this Commonwealth who employs another to work for wages, salaries, or on commission and shall include any similar entity acting directly or indirectly in the interest of an employer in relation to an employee.

No language in this definition precludes the state government or its agencies from being included as an employer. Instead, Defendant relies on the default exemption of the state government and its agencies from any Title 40 statutes found in Va. Code Ann. § 40.1-2.1 (2016). (*See* Defs.' Mem. in Supp. of Mot. to Dismiss 18).

But this understanding of the state legislature's statutory intent for Va. Code Ann. § 40.1-27.3 is contrary to the history and intent of its enactment. Enacted in 2020, the VWPL safeguards

employees against retaliation. Previously, Virginia employees could only rely on common law wrongful discharge claims based on public policy exceptions to the at-will doctrine. The statute specifically prohibits employers from taking adverse action against employees for several reasons, including reporting violations of federal or state law to supervisors or appropriate authorities, testifying in a proceeding, or refusing to participate in criminal acts. *Chenault v. RBI Corp.*, 108 Va. Cir. 529, 2021 WL 8776245, at *1 (Va. Cir. Ct. 2021). The VWPL does not explicitly exclude state government employers, nor does its text restrict application solely to private employers. While direct case law on this specific provision in the context of state employment is absent, making the statute's scope regarding state government application unclear, it would be an incongruous interpretation of the plain meaning of the text to imply a sovereign immunity exemption for state actors. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012) ("Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense. . . . Interpreters should not be required to divine arcane nuances or to discover hidden meanings.").[4]

Because Virginia appellate courts have not authoritatively interpreted the definition of "employer" in the VWPL, and because to exclude FCPS from the definition of "employer" would be contrary to the remedial purpose of the statute, the Court should deny Defendants' motion to dismiss Count I.

## II.    PLAINTIFF'S CLAIM UNDER THE VIRGINIA FRAUD, ABUSE AND WHISTLEBLOWER PROTECTION ACT (FAWBPA) (COUNT II) IS NOT SUBJECT TO DISMISSAL.

---

[4] Further, Plaintiff's SAC seeks, *inter alia*, "such further and additional relief as appropriate," (SAC ¶ 29), which may include injunctive relief that may be secured pursuant to her VWPL claim relief to restore her to her position and to restrain the school district from taking further action against her. *People of State of Ill. v. Outboard Marine Corp., Inc.*, 680 F.2d 473, 481 (7th Cir. 1982) ("The United States continues to seek prospective relief from the effects of past discharges, in the form of injunctions and 'such other and further relief as (the Court) deems just and proper.'").

For state government employees, Virginia has enacted a specific whistleblower protection statute, Va. Code Ann. § 2.2-3011 (2014), which is part of the Fraud and Abuse Whistle Blower Protection Act (FAWBPA). This law specifically addresses discriminatory and retaliatory actions taken against state employees who act as whistleblowers. As the Western District of Virginia has said, "[§ 2.2-3011 is] a statute that clearly purports to offer relief for employees of government agencies. Indeed, the Act waives sovereign immunity in state court." *Shumate v. City of Lynchburg*, 690 F. Supp. 3d 551, 559 n.6 (W.D. Va. 2023) (cleaned up), *vacated in part and remanded on other grounds*, No. 24-1428, 2025 WL 2409059 (4th Cir. Aug. 20, 2025). The Fourth Circuit has clarified that the statute's waiver of sovereign immunity also applies to suits brought in federal courts. *See Shumate*, 2025 WL 2409059, at *4.

Va. Code Ann. § 2.2-3011(A) states, "[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against a whistle blower whether acting on his own or through a person acting on his behalf or under his direction." For purposes of the statute, an employer includes any "person supervising one or more employees," which covers the supervisory personnel and leadership of the employing state agency (as they are considered agents of the governmental agency). Va. Code Ann. § 2.2-3010 (2016). "Governmental agency" is obviously defined broadly enough to encompass Defendant Fairfax County School Board (FCSB), as it includes "any agency, institution, board, bureau, commission, council, or instrumentality of state government in the executive branch listed in the appropriation act and any independent agency." *Id.* To establish whistleblower protection for disclosing suspected wrongdoing or abuse, a plaintiff must show the disclosure was made in good faith and based on a reasonable belief that the information was accurate. Va. Code Ann. § 2.2-3011(C).

Contrary to Defendants' argument (Defs.' Mem. in Supp. of Mot. to Dismiss 11), Plaintiff's FAWBPA claim is not based solely upon their retaliation against her for speaking publicly about the alleged abortion trafficking. This facile reduction ignores a host of facts on which her FAWBPA count was explicitly predicated, (*see* SAC ¶¶ 96–101), which encompassed all of the retaliatory and defamatory actions pled in the SAC. And the allegations detail a long string of statements and actions taken against her from the time of her initial report of abortion activity in May 2022 through, including and after removing her from the classroom. These are more than adequate to establish a reasonable basis for a causal nexus between her reporting and Defendants' retaliatory actions and statements.

Because FCPS is an "employer" subject to liability under the FAWBPA, and because Plaintiff's amended complaint demonstrates that she acted in good faith in bringing her assertions about abortion trafficking at CHS to authorities and then, after no action was taken, to the public, Defendants' motion to dismiss Count II should be denied.

## III.    PLAINTIFF'S DEFAMATION CLAIM (COUNT III) IS PROPERLY PLED AND NOT SUBJECT TO DISMISSAL.

Under Virginia law, the Plaintiff's common law rights include the "uninterrupted entitlement to enjoyment of [Plaintiff's] reputation." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005) (citing *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 720 (Va. 1985)). "In Virginia, the elements of libel are (1) publication of (2) an actionable statement with (3) the requisite intent." *Id*. According to the Virginia Supreme Court:

> [T]he plaintiff may recover upon proof by a preponderance of the evidence that the publication was false, and that the defendant either knew it to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.

*Gazette, Inc.*, 325 S.E.2d at 725; *Schaecher v. Bouffault*, 772 S.E.2d 589, 599 (Va. 2015). Thus, the Virginia Supreme Court provided the standard for defamation *per se* in *Great Coastal Express, Inc. v. Ellington*:

> At common law, the following defamatory words are actionable *per se*:
>
> > (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.
> >
> > \* \* \* \*
> >
> > (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment.
> >
> > (4) Those which prejudice such person in his or her profession or trade.

*Great Coastal Express, Inc. v. Ellington*, 334 S.E.2d 846, 849 (1985) (citation omitted), *overruled on other grounds by Cashion v. Smith*, 749 S.E.2d 526 (Va. 2013). Plaintiff's amended complaint sets out in detail numerous statements that impugn her in the performance of her profession as a teacher, malign her integrity, and allege that she has acted unlawfully, more than meeting the standard for defamation *per se*, and the malicious and gratuitously hurtful nature of the statements take them well out of the realm of qualified privilege.

### A.    The Defamatory Statements Pled by Plaintiff are Not Protected by Qualified Privilege.

The SAC pleads, and Defendants do not contravene, that Defendants Montell Brown, Chad Lehman, Erik Healy, and Michelle Reid, at all times relevant were employees of FCPS and are sued in their individual capacities only for this claim. Plaintiff asserts no claim for defamation *per se* against Defendants in their official capacities, and does not seek relief from the Commonwealth, any agency, or any governmental entity for defamation. At all times relevant, Defendants acted

outside the scope of any lawful governmental duty and are sued for the claimed personal intentional tortious conduct, not for an official act of the Commonwealth or its agencies.

While Defendants are correct that in Virginia, school boards operate as governmental agencies that are afforded absolute sovereign immunity from tort liability, *Ibanez v. Albemarle Cnty. Sch. Bd.*, 897 S.E.2d 300, 311 (Va. Ct. App. 2024), this immunity does not extend to school officials sued in their individual capacities. "When sued in their individual capacities, school board members are not immune from gross negligence claims . . . [or] intentional tort claims." *Brooks-Buck v. Wahlstrom*, 921 S.E.2d 223, 230 (Va. 2025) (citing *Newport News Sch. Bd. v. Z.M. by & through Harvey*, 915 S.E.2d 56, 59 (Va. 2025); *Fox v. Deese*, 362 S.E.2d 699, 706 (Va. 1987)). The sovereign immunity of members of local governmental entities is addressed in Va. Code Ann. § 15.2-1405 (1997); immunity from suit does not apply if the school official committed intentional torts, regardless of whether those intentional acts were within or outside the scope of their official duties. *Fox*, 362 S.E.2d at 706. Defamation *per se*, which is asserted here, is among the types of intentional tort claims for which immunity cannot be afforded. *Brooks-Buck*, 921 S.E.2d at 230.

"A state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected. And neither is the employee who acts beyond the scope of his employment, who exceeds his authority and discretion, and who acts individually." *James v. Jane,* 282 S.E.2d 864, 869 (Va. 1980). Thus, a state employee can either be liable for actions taken outside the scope of their employment, or for actions within the scope of their employment that are so grossly negligent or willful and malicious that they are no longer entitled to claim the immunity that the State enjoys. *Tomlin v. McKenzie*, 468 S.E.2d 882, 884 (Va. 1996) (holding that sovereign immunity "will not be extended to acts which constitute a wanton and intentional deviation from the duties the agent

has been assigned to undertake," and reversing the trial court's application of sovereign immunity where the state employee conspired to interfere with supervised visitation rights).

Consequently, to the extent that a qualified privilege exists regarding matters of public concern, such as the termination of a public employee, a plaintiff may defeat that privilege by a showing of common law malice:

> In *Great Coastal Express, Inc. v. Ellington*, we approved a jury instruction on the elements of common law malice that will serve to defeat a qualified privilege that "incorporate[d] language used in a number of our earlier cases which discuss elements of common law malice and abuse of privilege." A non-exhaustive list of such elements included a showing that: (1) the statements were made with knowledge that they were false or with reckless disregard for their truth, (2) the statements [we]re communicated to third parties who have no duty or interest in the subject matter; (3) the statements were motivated by personal spite or ill will, . . . or (5) the statements were not made in good faith. . . . Today we reiterate the rule of *Great Coastal Express*. Personal spite or ill will, independent of the occasion on which it was made, is certainly one of the elements that will establish common law malice. However, it is not the only element, and any one of the elements, if pled and proved, will suffice.

*Cashion*, 749 S.E.2d at 533 (citations omitted) (citing *Great Coastal Express,* 334 S.E.2d at 854).

*See also Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000) (Qualified immunity may attach to "[c]ommunications between persons on a subject in which the persons have an interest or duty," but that privilege may be defeated on a showing of malicious intent.); *Viers v. Baker*, 841 S.E.2d 857, 863 (Va. 2020) (Defendants who are public officials do not enjoy judicial immunity for false statements that are made concerning the reason for terminating an employee.).

The statements Plaintiff claims as defamatory were made far outside this privilege. Defendants were not speaking in a qualified setting or about a qualified topic when defaming Plaintiff, as several examples demonstrate: Defendant claiming that the Plaintiff falsified records and had an inappropriate relationship with a student, (SAC ¶¶ 40, 59); Defendants stating that the Plaintiff facilitated a student's purchase of a pregnancy test, (*id.* ¶¶ 12, 28, 31, 32); Defendant falsely telling Plaintiff's students and the substitute teacher that the Plaintiff failed to leave lesson

plans, (*id.* ¶ 56); Defendant stating that the Plaintiff hid a student in her classroom on March 12, 2025, (*id.* ¶ 48); and Defendant writing a Summary Memo stating that "she blatantly disregarded a directive to review and correct her gradebook," (*id.* ¶ 45). These are just some of the numerous egregious defamatory statements listed in the amended complaint which are not subject to qualified privilege. (*See id.* ¶¶ 24–74).

Moreover, as the *Cashion* Court said:

[T]his Court has repeatedly recognized that the question of whether a statement was made in good faith is *a question of fact for the jury to decide* when determining whether a qualified privilege has been lost or abused, and is not a question of law for the court to answer in deciding whether a privilege has attached.

749 S.E.2d at 532 (emphasis added) (citing *Aylor v. Gibbs*, 129 S.E. 696, 699 (Va. 1925); *Farley v. Thalhimer*, 49 S.E. 644, 654 (Va. 1905); *Tyree v. Harrison*, 42 S.E. 295, 295 (Va. 1902); *Strode v. Clement*, 19 S.E. 177, 178 (Va. 1894).; *Chesapeake Ferry Co. v. Hudgins*, 156 S.E. 429, 439 (Va. 1931) (noting that where a plaintiff seeks to avoid qualified privilege, malice in fact must be shown); *see also Burns v. Gagnon*, 727 S.E.2d 634, 643 (Va. 2012) (noting that whether a defendant assumed duty by conduct is a question for the fact-finder). On the basis of this rule alone, this court should not grant the motion to dismiss this claim, as Defendants have asserted the defense of qualified privileged communication, and Plaintiff counter asserts its abrogation through lack of good faith. This is a question of fact for the jury to decide, not a question of law that can be decided on this motion.

Here, Plaintiff has presented well-pleaded facts that are sufficient to state a facially plausible claim for relief and demonstrate malice. These are not merely conclusory but are supported by specific examples of the Defendant's conduct. Some examples of Defendant's malicious behavior include: the express, continuous, and obvious avoidance of Plaintiff (evidencing personal spite or ill will), (SAC ¶ 24); the attempted use of a male student as an

undercover agent to entrap Plaintiff and report the incident to the Defendant with the aim of writing Plaintiff up (evidencing lack of good faith), (*id*. ¶¶ 44, 49); sending unjustifiable documentation to Human Resources requesting Plaintiff's one-day suspension without pay (evidencing knowledge that they were false or with reckless disregard for their truth), (*id*. ¶ 48); Defendant attempting to manipulate and pressure students to say or do things about Plaintiff to cause her trouble (evidencing lack of good faith), (*id*. ¶ 33); intentionally manipulating Plaintiff's work schedule to render her hard work in vain and cause her stress (evidencing spite or ill will), (*id*. ¶¶ 50, 54); Defendant stating that Plaintiff violated Regulation 4444.1-Prevention of sexual misconduct and abuse (evidencing knowledge that they were false or with reckless disregard for their truth), (*id*. ¶ 35); and Defendant unjustifiably suspending Plaintiff for one day without pay and including very disgraceful documents in her official HR personnel file (evidencing knowledge that they were false or with reckless disregard for their truth), (*id*. ¶ 52).[5]

Defendants' memorandum in support of their motion to dismiss plays fast and loose with the facts as stated in Plaintiff's complaint, alleging that plaintiff actually or possibly failed to comply with school rules without substantiating that failure. Nor do they document which school division, policies and rules mandated that defendants publicly defame plaintiff by alleging that she had "fabricated" her assertions. And while they claim that FCPS staff shares a common interest in the well-being of students, they failed to acknowledge that Plaintiff was a member of the teaching staff, and as a concerned citizen also shared that interest, and that in fact her statements regarding the perceived abortion trafficking by Mrs. Diaz, the school nurse and others were in furtherance

---

[5] Notably, Plaintiff, like the plaintiff in *Kennedy,* 597 U.S. at 520, had received "uniformly positive evaluations" prior to her reports of abortion trafficking, a fact she pleads in the amended complaint, (SAC ¶ 26).

of her duty as a member of FCPS staff and a concerned member of the public to protect the minor girls in her school. (*See* SAC ¶¶ 37, 101).[6]

As described above, whether these facts, or others pleaded, are sufficient for clear and convincing evidence to establish malice and abrogate the qualified privilege is a question of fact for the jury to decide, not a question of law that can be decided on this motion. Defendants' motion should be denied.

### B.    The Statements Alleged in Plaintiff's Complaint More than Satisfy the "Defamatory Sting" Requirement.

Defendants' assertion that the statements alleged in Plaintiff's amended complaint "lack the requisite defamatory sting" (Defs.' Mem. in Supp. of Mot. to Dismiss 28–31) borders on the incredulous. The gravamen of Defendants' charges against Plaintiff, both within the community of her professional peers and her students as well as to the general public outside CHS, was that Mrs. Perez fabricated witness statements, leveled falsehoods, manipulated students and violated school rules, all allegations going straight to her integrity and professionalism. Libelous aspersions impugning honesty have long been accepted in the Commonwealth as potentially defamatory in nature. *See Adams v. Lawson*, 58 Va. (17 Gratt.) 250, 255–57 (1867) (holding that a written charge advising another to "quit lying" is actionable because it implies that he has been lying, and tends to injure the reputation of the party and to hold him as an object of contempt); *Great Coastal Express,* 334 S.E.2d at 851 (charge of commercial bribery held to constitute defamation *per se*). Although the "common meaning" of the words used must be taken into consideration by a court evaluating defamatory "sting", so to must the context and colloquium of the statement be

---

[6] Plaintiff notes that as a public school teacher, she is a "mandatory reporter" responsible for notifying her superiors of credible information that a child is being abused or neglected. Va. Code Ann. § 63.2-1509(A)(5) (2024) (including "teachers"). Hence, information that minor students are being subjected to coercion into abortion, without regard to whether their parents or guardians, arguably could be the subject of a mandatory report.

considered. *Hyland v. Raytheon Tech. Servs. Co*., 670 S.E.2d 746, 751 (Va. 2009) (a plaintiff may bring an action for defamation for "any implications, inferences, or insinuations that reasonably could be drawn from each statement" of fact). Thus, in *Tronfeld v. Nationwide Mutual Insurance Co*., the Virginia Supreme Court held where an attorney had been accused of "just tak[ing] peoples' money," it was implied that the plaintiff lacked "integrity and is dishonest" in his profession, which "[u]nless [the] statements are opinion, they are sufficient to sustain a cause of action for defamation *per se* because the statements prejudice [plaintiff] in his profession as an attorney at law." 636 S.E.2d 447, 449–50 (2006). Likewise, in *Oberbroeckling v. Lyle*, the Virginia Supreme Court approved of a jury's determination that a memorandum stating that an employee had been placed on probation for "mismanagement of funds" was defamatory, because the words reflected that the plaintiff "was unfit," "lacked integrity" or "was dishonest" in the performance of his duties. 362 S.E.2d 682, 686 (1987).

Nor does it make any difference whatsoever that Defendant Reid cast her aspersions against Plaintiff's character in ostensibly qualified terms such as "appears to be", or that she purported to rely upon FCPS's attorneys' "investigation" into the matters Mrs. Perez alleged. As *Schaecher* explained, an accusation of lying and manipulating facts is distinguishable from matters of opinion:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Thus, we consider whether the facts underlying [the plaintiff's] statement might be incorrect or incomplete, or whether her assessment of them is erroneous so as to imply a false assertion of fact. In doing so, we must continue to consider the context and the audience.

772 S.E.2d at 600 (citation omitted). In this instance, Reid's information was based upon the facts adduced in her attorneys' "investigation", and they consequently implied "an assertion of objective fact".

Defendants' defamatory statements against Mrs. Perez's character and competency, set out in extensive detail in her amended complaint, more than suffice to establish a "defamatory sting". Defendants' motion to dismiss Plaintiff's defamation *per se* claim should accordingly be dismissed.

## IV.    THE PLAINTIFF'S FREE SPEECH CLAIM UNDER ARTICLE 1, SECTION 12 OF THE VIRGINIA CONSTITUTION (COUNT IV) IS NOT SUBJECT TO DISMISSAL.

When a plaintiff brings a claim against a defendant under the First Amendment and under the Virginia Constitution's Article I § 12, a court will analyze these claims together, analyzing the case based upon First Amendment precedent since the "Supreme Court of Virginia has held that [this section] of the Constitution of Virginia is coextensive with the free speech provisions of the federal First Amendment." *Davison v. Loudoun Cnty. Bd. of Supervisors*, 267 F. Supp. 3d 702, 715 (E.D. Va. 2017) (citing *Willis v. City of Va. Beach*, 90 F. Supp. 3d 597, 607 (E.D. Va. 2015)); *see also Ibanez v. Albemarle Cnty. Sch. Bd.*, 897 S.E.2d 300, 311–12 (Va. Ct. App. 2024) ("Virginia courts have historically addressed claims against government defendants based on Article I, §§ 11 and 12 on the merits.") (citing *Wilkins v. West*, 571 S.E.2d 100, 111 (Va. 2002); *Vlaming v. West Point Sch. Bd.*, 895 S.E.2d 705 (Va. 2023)). Contrary to Defendants' contention, (Defs.' Mem. in Supp. of Mot. to Dismiss at 32), Plaintiff does seek prospective relief if appropriate. (SAC p. 29 (seeking "such further and additional relief as appropriate")). Because Virginia constitutional claims are congruent with federal constitutional claims and Plaintiff seeks both prospective relief and damages, dismissal of Count IV of the amended complaint is inappropriate.

V.    **THE PLAINTIFF'S SECTION 1983 CLAIM FOR DEPRIVATION OF HER FIRST AMENDMENT RIGHTS (COUNT V) IS NOT SUBJECT TO DISMISSAL.**

Based on an objective interpretation of the facts, a jury could plausibly find that the Defendants acted under color of their authority as FCPS officials to violate Plaintiff's First Amendment rights, a deprivation to which 42 U.S.C. § 1983 provides a remedy. *Monroe v. Pape*, 365 U.S. 167, 172 (1961), *overruled on other grounds by Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 663 (1978) ((overruling *Monroe*'s holding "that local governments are wholly immune from suit under § 1983"). When a government employee claims unlawful retaliation in violation of alleged protected speech activity under the First Amendment, the *Pickering-Garcetti* framework applies. *Kennedy*, 597 U.S. at 527 (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563 (1968); *Garcetti v. Ceballos*, 547 U.S. 410 (2006)). This is a multi-step inquiry. The plaintiff must allege that (1) she "was speaking as a citizen upon a matter of public concern," rather than "as an employee about a matter of personal interest," (2) her interest in speaking on the matter of public concern "outweighed" defendants' interest in providing effective and efficient public service and (3) her "speech caused the disciplinary action." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017) (citations omitted). The first two elements are questions of law, but the third, that of causation, is a question of fact. *Id.* (citing *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012)).

A.    **Plaintiff's Complaint Meets the *Pickering-Garcetti* Standard for a Claim of Retaliation Against a Public Employee.**

The Plaintiff unquestionably spoke on a matter of public concern when she expressed her belief that abortion trafficking was occurring, first to her supervisors and then to the public. Speech involves a matter of public concern when it involves an issue of "*social, political, or other interest to a community*." *Kirby v. City of Elizabeth City, N.C.*, 388 F.3d 440, 446 (4th Cir. 2004) (emphasis added); *see Connick v. Myers*, 461 U.S. 138, 145–46 (1983). Whether the employee spoke as a

22

citizen on a matter of public concern requires "an effort to participate in a larger public dialogue." *Crouse*, 848 F.3d at 585. In the educational context it has been said, that abortion is among issues of public concern: "Such topics plainly touch[] on issues of public, rather than private, concern." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 565 (4th Cir. 2011). Here, Plaintiff's charges of abortion trafficking have been the subject of a Senate HELP Committee investigation, a U.S. DOE investigation, and a criminal investigation by the Virginia State Police, belying any argument that they were not related to an issue of "social, political, or other interest to [the] community."

Certainly, "personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern." *Stroman*, 981 F.2d at 156; *see also Connick*, 461 U.S. 138. But Plaintiff does not allege a mere workplace disagreement or personal grievance. Rather, she alleges that she reported concerns about conduct implicating matters of public concern, and that defendants responded with unlawful retaliation. At this stage, the Court must determine whether a reasonable jury could plausibly reach the same characterization of the speech and the surrounding facts that Plaintiff has reached.

As in *Pickering*, the content, form, and context of Plaintiff's statements plausibly point to her speech as addressing a matter of public concern. Mrs. Perez alleges that her hardships, isolation, and all contentions with her employer began after raising a very serious allegation: that the school, through its employee, Mrs. Diaz, and perhaps others, was assisting minor girls in receiving abortions without consent from their parent or guardian, based on personal reports from two students. As in *Pickering*, Plaintiff sought to alert appropriate channels that concerning events were occurring "under the radar"—conduct that parents and the general public would reasonably

expect to be aware of. *Cf. Pickering*, 391 U.S. at 566 (concerning a teacher's letter to a newspaper that criticized the school's handling of a bond issue and alleged that the superintendent retaliated against teachers who spoke out about it); *Givhan*, 439 U.S. at 412 ("In an effort to show that its decision was justified, respondent School District introduced evidence of, among other things, a series of private encounters between petitioner and the school principal in which petitioner allegedly made 'petty and unreasonable demands' in a manner variously described by the principal as 'insulting,' 'hostile,' 'loud,' and 'arrogant.'"). The content of Plaintiff's speech concerned reproductive health and welfare of minor children while the school was acting *in loco parentis*. Plaintiff communicated her concerns through in-person meetings and emails with school administrators, investigators, and counsel. Some communications later reached the media. Although much of the speech occurred internally, Plaintiff followed the ordinary channels used to report serious misconduct in a school setting. Like the teacher in *Pickering*, Plaintiff went outside the institution only after internal reporting failed, and her concerns were dismissed as fabricated. Therefore, taken together, the content, form, and context of the speech plausibly establish that Plaintiff spoke about student welfare and potential legal violations, not personal preferences or internal workplace grievances. The speech therefore addressed a matter of public interest, which outweighed any interest on the part of her employer in keeping the matter private. *See Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292, 321 (4th Cir. 2006) (determining speech by a university official responsible for compliance with the National Collegiate Athletic Association (NCAA) rules was a matter of public concern since the speech addressed non-compliance with NCAA standards).

Defendant cites *Crouse*, 848 F.3d 576, and *Watson v. Wake County Public School System*, 797 F. Supp. 3d 591 (E.D.N.C. 2025), two actions in which district courts dismissed First

Amendment retaliation claims brought by public employees, but they are clearly inapposite. (Defs.' Mem. in Supp. of Mot. to Dismiss 33–37). In *Crouse*, the Plaintiff attempted to persuade a suspect whom Crouse's employer alleged he had improperly abused to cover up Crouse's alleged misconduct, then attempted to conceal that visit from his employer. 848 F.3d at 581. Crouse was motivated by protecting his own job, and not attempting to speak about police standards or tactics regarding suspect interactions, which would have implicated a matter of public concern. And in *Watson*, a library media coordinator at a public school failed to sufficiently allege any causal connection between her purported protected speech and the changes in her job responsibilities or her eventual dismissal. 797 F. Supp. 3d at 601, 609. The court dismissed Watson's First Amendment claim because she merely "vaguely refer[red] to . . . protected speech" across a 125-page complaint. *Id*. at 611. In contrast, Plaintiff alleges a specific, identifiable course of speech addressing alleged misconduct affecting the welfare of students, followed by concrete adverse actions plausibly tied to that speech, which places this case well outside the deficiencies identified in *Crouse* and *Watson*.

Nor was Plaintiff's speech purely internal. Shortly before filing this lawsuit, Plaintiff went public with the information by speaking with the news media in August 2025 and the general public on October 20, 2025, after which she was immediately placed on leave (and well after working hours had ended, to boot). Accordingly, Plaintiff's speech does not lose First Amendment protection merely because it was initially communicated internally. In any event, because the speech was not purely internal, Defendants' emphasis on the internal locus of the speech is legally baseless.[7]

---

[7] It should be noted that it is not required that a public employee address matters of public concern externally to receive First Amendment protection. Where speech is intended to expose wrongdoing rather than advance a purely private interest, purely internal communication does not forfeit constitutional protection.

Plaintiff properly alleges a First Amendment claim of unlawful retaliation under the *Connick-Pickering* framework because she spoke on a matter of public concern when she alleged that the school nurse was assisting minor girls under her school's care to receive abortions. The Defendants' characterization narrows the significance of what allegedly occurred here and ignores the reality, that conversations relating to abortion which are more than merely academic or political—which was the case here—are clearly of a matter of public concern.

### B.    The Individual Defendants Are Not Entitled to Qualified Immunity.

Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985). Precedent is the strongest indicator that something is clearly established, however, "[o]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). What matters is whether the state of the law gave the official fair warning such that the unlawfulness of the conduct would have been apparent to a reasonable official. *Id.*

Government officials are entitled to the defense of qualified immunity unless a § 1983 claim satisfies the following two-prong test (the "qualified immunity test"): (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a "clearly established" right "of which a reasonable person would have known." *See Mellen v. Bunting*, 327 F.3d 355, 365 (4th Cir. 2003) (citing *Pelzer*, 536 U.S. at

---

*See Ulrich v. City & Cnty of S.F.*, 308 F.3d 968, 978 (9th Cir. 2002) (holding that an employee need not disseminate information to the public to enjoy First Amendment protection); *Givhan*, 439 U.S. at 415–16, (holding that a teacher's complaints about discrimination were protected speech whether made publicly, or privately in one-on-one communication made directly to supervisors).

736; *Harlow*, 457 U.S. at 818) (internal quotation marks omitted). "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 384 (1987) (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). Retaliation against a schoolteacher for speaking on a matter of public concern is a violation of the First Amendment when the balance of interests favors the plaintiff. *Pickering*, 391 U.S. 563; *Blankenship v. Manchin*, 471 F.3d 523, 533 (4th Cir. 2006). Set against the backdrop of a Rule 12(b)(6) *Iqbal/Twombly* analysis, since the facts here are to be read in a light most favorable to the Plaintiff, here, the Plaintiff meets the high hurdle of showing that she was marginalized, shamed, isolated, and then fired for having exercised her First Amendment right in her role as a concerned citizen. *Twombly*, 550 U.S. at 564 (federal courts "look for plausibility *in [the] complaint*." (emphasis added)).

Defendants argue that a teacher has no right to sue over unsubstantiated claims over a personal squabble, but that is not how Plaintiff's complaint characterizes the matter. In 2022, Plaintiff raised concerns that Diaz was harming students. Thereafter, she was no longer treated as a well-performing educator but instead was subjected to heightened scrutiny by her superiors, suffered retaliatory and defamatory statements and actions, and ultimately was placed on administrative leave. This close temporal relationship between her actions and what occurred to her following those actions plausibly supports an inference that the change in treatment toward her was retaliatory, not coincidental. And if this is the case, then it follows that the individual Defendants knew or should have known that their conduct was unlawful. Teachers in the Fairfax County School District are trained to report any "reasonable suspicion of sexual misconduct or abuse by another employee." (Fields Decl. in Supp. of Mot. to Dismiss Ex. K at 5, ECF No. 37-11.) Employees are on notice that "[r]etaliation against anyone reporting or thought to have made

a report is prohibited." (*Id*.) Accordingly, qualified immunity does not shield the named individual defendants.

*Ridpath* is instructive. 447 F.3d 292. In *Ridpath*, the Fourth Circuit affirmed a decision rejecting the defense of qualified immunity at the Rule 12(b)(6) stage. *Id*. at 299–300. Ridpath was responsible for compliance with NCAA rules, and he was critical of the school during the pendency of an NCAA investigation. University officials made threats against Ridpath's job in closed door meetings. *Id*. at 302. They labeled his reassignment to a different position as "corrective action", which the court found "permanently damaged" his reputation because it "call[ed] into question his honesty, integrity and professional competence" as a school official. *Id*.; *see also id.* at 308–09 (compiling cases distinguishing non-actionable allegations of "incompetence" from statements that imply "serious character defects"). Because Defendants' retaliatory actions and statements impugned Plaintiff's professionalism and character, and were made in response to Plaintiffs' reports of perceived unlawful and unethical activity, *Ridpath* demonstrates that no qualified immunity pertains.

### C.    The School Board is Not Shielded from Liability by *Monell*.

Municipal defendants like Defendant FCSB are not entitled to qualified immunity. *Owen v. City of Indep., Mo.*, 445 U.S. 622, 638 (1980). Rather, a local governmental body is liable under § 1983 when a policy, custom, or decision officially adopted by its officers causes a constitutional injury. *Monell*, 436 U.S. at 663; Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983* D(2024–2025 ed.). For an adequately pled Section 1983 claim against a municipality, a plaintiff must show (1) there exists "an official policy or custom" of discrimination, "(2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." *Alexander v. City of*

*Greensboro*, 762 F. Supp. 2d 764, 781 (M.D.N.C. 2011) (citing *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008)).

In this case, Plaintiff has alleged that "[t]he actions of Defendants reflected an unconstitutional policy or custom of Defendant Fairfax County School Board to retaliate against, harass, intimidate and silence FCPS employees who report internally or who speak out publicly against unlawful conduct engaged in by other FCPS employees." (SAC ¶ 123). A complaint that alleges a policy or custom of systemic retaliation against whistleblowing employees on the part of a defendant municipality is sufficiently pled. *Lee v. City of Syracuse*, 446 Fed. App'x 319, 322 (2d Cir. 2011). An official custom "may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (cleaned up) (quoting *Monell*, 436 U.S. at 691), *abrogated on other grounds as recognized by Anderson v. Balt. Cnty., Md.*, No. 24-1314, 2025 WL 345968, at *2 n.4 (4th Cir. Dec. 2, 2025). A municipality may be liable for an unlawful custom if it had "actual or constructive knowledge of the [unlawful] custom and usage by its responsible policymakers" and "there was a failure by those policymakers as a matter of specific intent or deliberate indifference to correct or terminate the improper custom and usage." *Alexander*, 762 F. Supp. 2d. at 783 (cleaned up) (citing *Randall v. Prince George's Cnty., Md.,* 302 F.3d 188, 210 (4th Cir. 2002)).

This claim may also be pled when a municipality's lack of supervision, delegation, or training amounts to deliberate indifference. As the Supreme Court described in *City of Canton, Ohio v. Harris*:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that

event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

489 U.S. 378, 390 (1989). FCSB may not have had an official policy encouraging its school administrators to unlawfully retaliate against its teachers. However, absence of a formal policy or custom does not end the inquiry. The school board delegated its authority to hire and fire its principals and administration officials at the schools. In doing so, it was required to adequately train these officials to lawfully wield this authority, including respecting the constitutional limits on retaliatory discipline.

Moreover, the actions of Defendant FCSB, taken through the Defendant FCPS officers and, especially, Defendant Superintendent Michelle Reid, its chief officer, ratified and acquiesced in the unconstitutional actions against Plaintiff, and hence subjected FCSB to *Monell* liability. *Kirby*, 388 F.3d at 451 (citing *City of St. Louis v. Prapotnik,* 485 U.S. 112, 127 (1988) (plurality opinion)) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

Because the Plaintiff has sufficiently pled this plausible allegation, at this stage, the school board is subject to potential liability under *Monell,* and Defendants' motion to dismiss this count should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff, Zenaida Perez, respectfully requests that Defendants' Motion to Dismiss be denied, or in the alternative, that she be permitted to file an amended complaint.

Dated: February 17, 2026                    Respectfully submitted,

By Counsel:



Monique A. Miles, Esq.
VSB #: 78828
Old Towne Associates, P.C.
201 N. Union Street, Ste. 110
Alexandria, Virginia 22314
Ph: 703-519-6810
mmiles@oldtowneassociates.com

Steven H. Aden, Esq. (*Pro Hac Vice*)
VSB #: 48036
AMERICANS UNITED FOR LIFE
1150 Connecticut Ave., N.W. Ste. 500
Washington, DC 20036
Ph: 202.741.4917
Steven.Aden@aul.org

*Counsel for Zenaida Perez*

31

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 17, 2026, a true and correct copy of the foregoing

has been provided by electronic notification through the CM/ECF System, which automatically

sends notice to the parties to this litigation.

Edward Lee Isler
VSB #:27985
Micah E. Ticatch
VSB #: 83351
IslerDare, PC
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Tel: (703) 748-2690
eisler@islerdare.com
mticatch@islerdare.com

M. Sean Royall, *pro hac vice forthcoming*
Lucas M. Fields, *pro hac vice forthcoming*
Zoe M. Beiner, *pro hac vice forthcoming*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
(202) 626-2994
sroyall@kslaw.com
lfields@kslaw.com
zbeiner@kslaw.com

*Counsel for Defendants*


*/s/ Monique A. Miles*