# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **ZENAIDA PEREZ,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | **Case No. 1:25-cv-2126-AJT-IDD** |
| ) | |
| **FAIRFAX COUNTY SCHOOL BOARD,** *et al.,* ) | |
| ) | |
| *Defendants.* ) | |

## DEFENDANTS' REPLY IN SUPPORT OF <u>THEIR MOTION TO DISMISS</u>

Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Tel: (703) 748-2690
Fax: (703) 748-2695
Email: eisler@islerdare.com
Email: mticatch@islerdare.com

M. Sean Royall, *pro hac vice*
Lucas M. Fields, *pro hac vice*
Zoe M. Beiner, *pro hac vice*
KING & SPALDING LLP
1700 Pennsylvania Ave., NW, Suite 900
Washington, D.C. 20006
Tel: (202) 626-2627
Fax: (202) 626-3737
Email: sroyall@kslaw.com
Email: lfields@kslaw.com
Email: zbeiner@kslaw.com

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ..............................................................................................................2

I.    Plaintiff's VWPL Claim (Count I) Should Be Dismissed on Sovereign Immunity Grounds...............................................................................................2

II.    Plaintiff's FAWBPA Claim (Count II) Should Be Dismissed on Causation Grounds................................................................................................................4

III.    Plaintiff's Defamation Claim (Count III) Should Be Dismissed on Two Grounds: Qualified Privilege and Defamatory Sting.......................................................5

    A.    The Allegedly Defamatory Statements Are All Protected by Qualified Privilege ....................................................................................................... 6

    B.    The Statements Plaintiff Challenges Lack Defamatory Sting or Are Otherwise Not Actionable ............................................................................ 9

IV.    Plaintiff's State and Federal Free Speech Claims (Counts IV and V) Should Be Dismissed on Multiple Grounds .........................................................................11

    A.    Plaintiff's Speech Does Not Address a Matter of Public Concern .................11

    B.    The Individual Defendants Are Entitled to Qualified Immunity ................... 14

    C.    The School Board Is Immune from Liability Under *Monell* .......................... 16

    D.    Plaintiff's State Law Free Speech Claim Is Also Subject to Dismissal as Seeking Only a Form of Relief the Law Disallows.................................... 18

CONCLUSION ...........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                              **Page(s)**

*Baxter ex rel. Baxter v. Vigo Cnty. Sch. Corp.*,
    26 F.3d 728 (7th Cir. 1994) ..................................................................................18

*Blue v. District of Columbia*,
    811 F.3d 14 (D.C. Cir. 2015) ...............................................................................17

*Brooks v. Arthur*,
    685 F.3d 367 (4th Cir. 2012) .........................................................................12, 14

*Campbell v. Galloway*,
    483 F.3d 258 (4th Cir. 2007) ...............................................................................16

*Cashion v. Smith*,
    749 S.E.2d 526 (Va. 2013)....................................................................................6, 9

*City of Canton v. Harris*,
    489 U.S. 378 (1989).............................................................................................16

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001).............................................................................................4, 5

*Connick v. Myers*,
    461 U.S. 138 (1983)........................................................................................11, 14

*Crouse v. Town of Moncks Corner*,
    848 F.3d 576 (4th Cir. 2017) ...............................................................................13

*DiMeglio v. Haines*,
    45 F.3d 790 (4th Cir. 1995) .................................................................................15

*Dowe v. Total Action Against Poverty*,
    145 F.3d 653 (4th Cir. 1998) .................................................................................5

*Dragulescu v. Va. Union Univ.*,
    223 F. Supp. 3d 499 (E.D. Va. 2016) ..................................................................10

*Ebersole v. Kline-Perry*,
    292 F.R.D. 316 (E.D. Va. 2013) ..........................................................................10

*Evans v. City of Lynchburg*,
    766 F. Supp. 3d 614 (W.D. Va. 2025) .................................................................11

*Commonwealth ex rel. Fair Hous. Bd. v. Windsor Plaza Condo. Ass'n, Inc.*,
    768 S.E.2d 79 (Va. 2014)......................................................................................2

*Ford v. Northam*,
　　2023 WL 2767780 (W.D. Va. 2023) ........................................................................18

*G.M. v. Virginia Beach Sch. Bd.*,
　　No. 2:24-CV-59, 2025 WL 1819269 (E.D. Va. 2025) .........................................17

*Gallimore v. Henrico Cnty. Sch. Bd.*,
　　38 F. Supp. 3d 721 (E.D. Va. 2014) ......................................................................17

*Gordon v. James Madison Univ.*,
　　2014 WL 3579663 (W.D. Va. 2014) .......................................................................18

*Harless v. Nicely*,
　　900 S.E.2d 503 (Va. Ct. App. 2024)...................................................................6, 7

*Hetrick v. Iink Corp.*,
　　2024 WL 1417952 (E.D. Va. 2024) ........................................................................10

*Hinton v. Va. Union Univ.*,
　　185 F. Supp. 3d 807 (E.D. Va. 2016) ......................................................................4

*Hyland v. Raytheon Tech. Servs. Co.*,
　　670 S.E.2d 746 (Va. 2009)........................................................................................9

*Jarrett v. Goldman*,
　　2005 WL 1323115 (Portsmouth Cir. Ct. 2005) .......................................................8

*Kirby v. City of Elizabeth City*,
　　388 F.3d 440 (4th Cir. 2004) ...........................................................................13, 17

*Larimore v. Blaylock*,
　　528 S.E.2d 119 (Va. 2000)....................................................................................6, 8

*Ligon v. Cnty. of Goochland*,
　　689 S.E.2d 666 (Va. 2010)....................................................................................2, 3

*Mais v. Albemarle Cnty. Sch. Bd.*,
　　657 F. Supp. 3d 813 (W.D. Va. 2023) ...................................................................18

*Mann v. Heckler & Koch Def., Inc.*,
　　639 F. Supp. 2d 619 (E.D. Va. 2009), *aff'd*, 630 F.3d 338 (4th Cir. 2010).............8

*Massaro v. Fairfax Cnty.*,
　　95 F.4th 895 (4th Cir. 2024) ..................................................................................12

*McCaffrey v. Chapman*,
　　2017 WL 4553533 (E.D. Va. 2017).......................................................................18

iii

*Monell v. Dep't of Soc. Servs.*,
　436 U.S. 658 (1978)................................................................................16, 17

*Moschetti v. Nixon Peabody, LLP*,
　2024 WL 2750010 (E.D. Va. 2024), *appeal dismissed*, 2024 WL 5297814 (4th
　Cir. 2024) ........................................................................................................9

*Moschetti v. Off. of the Inspector Gen.*,
　2022 WL 3329926 (E.D. Va. 2022)...............................................................2, 3

*Nedrick v. Southside Reg'l Med. Ctr.*,
　2020 WL 534052 (E.D. Va. 2020)......................................................................9

*Owen v. Liberty Univ.*,
　2020 WL 1856798 (W.D. Va. 2020), *aff'd*, 2022 WL 127894 (4th Cir. 2022)....................9

*Ridpath v. Bd. of Governors of Marshall Univ.*,
　447 F.3d 292 (4th Cir. 2006) ...........................................................................15

*Santiago v. Warminster Twp.*,
　629 F.3d 121 (3d Cir. 2010)........................................................................17, 18

*Schaecher v. Bouffault*,
　772 S.E.2d 589 (Va. 2015)...............................................................................10

*Spatafore v. City of Clarksburg*,
　2024 WL 4280959 (N.D.W. Va. 2024), *aff'd*, 2026 WL 49568 (4th Cir. 2026)...................14

*Spell v. McDaniel*,
　824 F.2d 1380 (4th Cir. 1987) .........................................................................17

*Suiter v. Taylor*,
　2024 WL 3466186 (W.D. Va. 2024) ................................................................18

*Tomlin v. Int'l Bus. Machs. Corp.*,
　2012 WL 7850902 (Fairfax Cnty. Cir. Ct. 2012) ..............................................8

*Va. Student Power Network v. City of Richmond*,
　2021 WL 6550451 (Richmond Cir. Ct. 2021) ..................................................18

*Watson v. Wake Cnty. Pub. Sch. Sys.*,
　797 F. Supp. 3d 591 (E.D.N.C. 2025)................................................................5

*Wood v. Bristol Va. Util. Auth.*,
　661 F. Supp. 3d 538 (W.D. Va. 2023) ...............................................................4

**Statutes/Rules**

**Federal**

42 U.S.C. § 1983 ........................................................................................................11, 16

Fed. R. Civ. P. 12(b)(6) .................................................................................................15

**State**

Va. Const. art. I ............................................................................................................18

Va. Code § 2.2-3010 ........................................................................................................5

Va. Code § 40.1-2.1 .........................................................................................................3

## PRELIMINARY STATEMENT[1]

Plaintiff presents herself to this Court as a whistleblower, a victim of retaliation, and a target of malicious defamatory statements. But the unfortunate sad reality is that Plaintiff is none of these things. She is a misguided schoolteacher who allowed her personal workplace animosities and grievances to spin out of control, and who fell under the influence of others who sought to capitalize, for their own gain, on her sensational claims of "coerced" student abortions paid for with taxpayer dollars. There is no truth and never was any truth to Plaintiff's over-the-top accusations of school-facilitated, school-funded student abortions. Nor is there any truth to her claims in this lawsuit against her employer, the Fairfax County School Board, and multiple Fairfax County Public Schools administrators. Yet even taking her claims at face value, and assuming the truth of every well-pled allegation, her claims must be dismissed for the reasons stated in Defendants' Motion. Nothing contained within Plaintiff's Opposition suggests otherwise.

Plaintiff has had ample opportunity to amend her claims, but her Second Amended Complaint ("SAC") still falls short. Plaintiff does not identify a single case construing the VWPL to apply to school boards, nor any statutory basis to overcome sovereign immunity, which requires dismissal of that claim. Plaintiff does not satisfy the FAWBPA's causation requirement; the extended temporal separation between her claimed protected statements and Defendants' claimed retaliatory actions mandates that this claim be dismissed as well. Plaintiff likewise fails to plead actionable defamation, because the statements she challenges lack a defamatory sting and are covered by a qualified privilege that she does not, and cannot, overcome with factual pleadings of common-law malice. Finally, Plaintiff's state and federal free speech claims are fatally deficient.

---

[1] Capitalized or abbreviated terms not defined herein have the meaning ascribed to them in Defendants' Motion to Dismiss. ECF 36. Citations to electronic docket materials in this Reply rely on CM/ECF generated pagination (i.e., "Page _ of _").

Her own allegations reveal that Plaintiff's abortion-related complaints involved an effort to settle scores with a coworker and gain leverage against her employer, not matters of public concern. And here as well, Plaintiff is unable to overcome the immunities that appropriately protect school boards and school officials. This dispute, and the broader controversy that spawned it, has gone on long enough. Plaintiff has had every opportunity to plead actionable claims but has failed to do so. Her claims should now be dismissed, with prejudice.

## ARGUMENT

### I.    Plaintiff's VWPL Claim (Count I) Should Be Dismissed on Sovereign Immunity Grounds

As explained in Defendants' Motion (at 17), "'[t]he Commonwealth is immune from tort liability for the acts or omissions of its agents and employees unless an express statutory or constitutional provision waives that immunity.'" *Moschetti v. Off. of the Inspector Gen.*, 2022 WL 3329926, at *10 (E.D. Va. 2022) (quoting *Ligon v. Cnty. of Goochland*, 689 S.E.2d 666, 668 (Va. 2010)). "Only the General Assembly can abrogate sovereign immunity" and, when it chooses to do so, "the waiver . . . must be explicitly and expressly announced in the statute." *Commonwealth ex rel. Fair Hous. Bd. v. Windsor Plaza Condo. Ass'n, Inc.*, 768 S.E.2d 79, 89 (Va. 2014) (internal quotation marks omitted). Thus, absent express statutory language, "a waiver . . . cannot be implied." *Ligon*, 689 S.E.2d at 670 (quotation marks omitted).

Plaintiff's Opposition remarkably claims that "direct case law on this specific provision in the context of state employment is absent." Opp. at 19. This is manifestly untrue. Numerous courts applying these same principles have dismissed VWPL claims on sovereign immunity grounds precisely because the statute "never mentions the Commonwealth, its agencies, or its officers" in its definition of "employers." *Moschetti*, 2022 WL 3329926, at *10. *See also* Mot. at 17-19. Tellingly, while declaring the absence of applicable case law, Plaintiff altogether ignores

*Moschetti*, Defendants' leading authority.

Plaintiff asks the Court to find a waiver of sovereign immunity because "[n]o language in [the statutory] definition *precludes* the state government or its agencies from being included as an employer." Opp. at 18 (emphasis added). Yet this flips the sovereign immunity inquiry on its head. The question is not whether a statute "precludes" Commonwealth liability, but rather whether a statute "expressly waives" sovereign immunity. Again, *Moschetti*, quoting the Virginia Supreme Court in *Ligon*, 689 S.E.2d at 668, makes very clear that "[t]he Commonwealth is immune from tort liability for the acts or omissions of its agents and employees *unless* an express statutory or constitutional provision *waives* that immunity," 2022 WL 3329926, at *10 (emphasis added). Because Plaintiff can point to no such express waiver, the School Board's sovereign immunity remains intact.

Reinforcing the clearcut grounds for dismissal, Plaintiff acknowledges that Section 40.1-2.1 creates a "default exemption" that exempts "the state government and its agencies from *any* Title 40 statutes." Opp. at 18 (emphasis added). The text of Section 40.1-2.1 refutes any notion that the General Assembly meant to waive sovereign immunity for public bodies:

> The provisions of [Title 40] and any rules and regulations promulgated pursuant thereto <u>shall not apply</u> to the Commonwealth or any of its agencies, institutions, or political subdivisions, or any public body, *unless and to the extent that, coverage is extended by specific regulation* of the Commissioner or the Board.

Va. Code § 40.1-2.1 (emphasis added).

While Plaintiff vainly attempts to argue that this default exemption is somehow "contrary to the history and intent" of the VWPL, Opp. at 18, she says nothing persuasive to support this point. As Plaintiff acknowledges, statutory "[w]ords are to be understood in their ordinary, everyday meanings." *Id.* at 19 (citation omitted). Here, the plain language of the applicable statutes establishes that the School Board, as a political subdivision of the Commonwealth, retains its

3

sovereign immunity and Count I therefore must be dismissed.

## II.    Plaintiff's FAWBPA Claim (Count II) Should Be Dismissed on Causation Grounds

As explained in Defendants' Motion (at 20-21), FAWBPA claims require "very close" "temporal proximity" between the protected disclosures and the alleged retaliatory actions. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). According to *Hinton v. Va. Union Univ.*, a plaintiff must either allege that "the retaliation . . . closely follow[s] the protected activity" or "put forth a sufficient explanation for the time elapsed between the protected activity and the alleged retaliation." 185 F. Supp. 3d 807, 837 (E.D. Va. 2016). And while there is "no bright line rule for temporal proximity," courts have consistently ruled that, absent extenuating circumstances, two months "between the protected activity and the adverse employment action" is "too long." *Wood v. Bristol Va. Util. Auth.*, 661 F. Supp. 3d 538, 553 (W.D. Va. 2023) (collecting cases). Although there are other defects in Plaintiff's FAWBPA claim, her failure to satisfy this temporal-proximity causation requirement is the clearest ground for dismissal.

Plaintiff's Opposition acknowledges the need for a close "causal nexus between her reporting and Defendants' [alleged] retaliatory actions," Opp. at 21, yet the SAC contains no *facts* identifying and drawing links between (i) a disclosure protected by the statute, and (ii) a close-in-time retaliatory action. Plaintiff's Opposition merely asserts, in the vaguest of terms, that the complaint's allegations "detail a long string of statements and actions [allegedly] taken against her." *Id.* This broad and conclusory assertion is far from sufficient to avert dismissal.

The fundamental reality here is that the allegedly protected disclosures to which Plaintiff principally points, which occurred in 2022, ECF 31 ¶ 15, were far removed in time from the only concrete form of alleged retaliation she can identify—being placed on administrative leave, which

occurred "on October 20, 2025," *id.* ¶ 67.[2] That gap of roughly three years far exceeds the "very close" temporal nexus that this statute requires and negates causation. *See Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) (noting "that over three years lapsed between the protected activity and the adverse employment action" which "negates any inference that a causal connection exists between the two"). *See also Clark Cnty. Sch. Dist.*, 532 U.S. at 273. And while Plaintiff's complaint attempted to address such concerns by pleading that she was placed "on administrative leave *immediately after* she participated in a publicly broadcast Webinar hosted by Americans United for Life," ECF 31 ¶ 100 (emphasis in original), her statements during that webinar were not made to an "[a]ppropriate authority," Va. Code § 2.2-3010, and thus are not protected. Even if one were to focus on Plaintiff's alleged disclosures to outside counsel and an investigator in March and May 2025, ECF 31 ¶¶ 46, 53, this still leaves far more than a two-month gap between the allegedly protected disclosure and the claimed retaliatory administrative leave decision in late October of the same year. It is thus hardly surprising that, on this critical point, Plaintiff's Opposition offers little more than vague and conclusory statements.

Because Plaintiff has not alleged facts establishing "temporal proximity" between any alleged protected statement and any allegedly linked retaliatory employment action, her FAWBPA claim must be dismissed.

### III.    Plaintiff's Defamation Claim (Count III) Should Be Dismissed on Two Grounds: Qualified Privilege and Defamatory Sting

Although the SAC seemingly alleges defamation "[a]gainst all Defendants," *see* SAC Count III, Plaintiff concedes that she "does not seek relief from the Commonwealth, any agency,

---

[2] While Plaintiff contends that Principal Lehman stopped greeting her in the hallways after November 2022, ECF 31 ¶ 24, that allegation is not sufficient to allege actionable retaliation. *See Watson v. Wake Cnty. Pub. Sch. Sys.*, 797 F. Supp. 3d 591, 609 (E.D.N.C. 2025) (dismissing plaintiff's retaliation claim to the extent premised on allegations that her supervisor "looked angry" and that her coworkers declined to have lunch with her).

or any governmental entity for defamation," and she purports to not be asserting defamation against the Individual Defendants "in their official capacities." Opp. at 22. This leaves only Plaintiff's claims against the four Individual Defendants "sued in their individual capacities," *id.*, yet her allegations in this regard are all subject to dismissal on two grounds: (1) each of the challenged statements is covered by qualified privilege; and (2) none of the challenged statements has the requisite defamatory sting.

### A.   The Allegedly Defamatory Statements Are All Protected by Qualified Privilege

As set forth in Defendants' Motion (at 24-25), under Virginia law qualified privilege attaches to "[c]ommunications between persons on a subject in which the persons have an interest or duty," and is grounds for dismissal of defamation claims. *Cashion v. Smith*, 749 S.E.2d 526, 532 (Va. 2013) (citation omitted). The privilege extends to communications between "co-employees and employers in the course of employee disciplinary or discharge matters." *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000)*.* To overcome qualified privilege, a plaintiff must allege "that the defamatory words were spoken with common-law malice," which is "defined as some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff." *Harless v. Nicely*, 900 S.E.2d 503, 509 (Va. Ct. App. 2024) (citations and internal quotation marks omitted).

Plaintiff acknowledges that "[q]ualified immunity may attach to '[c]ommunications between persons on a subject in which the persons have an interest or duty.'" Opp. at 24 (quoting *Larimore*, 528 S.E.2d at 121). While Plaintiff maintains that the statements at issue here "were made far outside this privilege," *id.*, none of her arguments has merit.

*First*, citing no supporting authority, Plaintiff asserts that the challenged statements did not occur "in a qualified setting" or concern "a qualified topic." *Id.* However, as the case law discussed

6

in Defendants' Motion (at 25-28) makes clear, statements made by and between school administrators pertaining to investigations of a staff member's actual or suspected violations of school rules are unquestionably protected by qualified privilege, as shown by *Harless*, a recent Virginia decision of obvious relevance here—and one that Plaintiff's Opposition notably fails to address.

Harless, a high school teacher and football coach, alleged that school officials investigated his purported wrongdoing as a school employee, memorialized their conclusions in a written report, and published that report to employees and officials of Roanoke County Public Schools despite knowing it to be false and despite the report containing numerous alleged false statements. *See* 900 S.E.2d at 506-08. Similar to Perez, Harless asserted that numerous statements reflected malice directed his way, including past defamatory comments uttered by an athletic director, frequent false accusations of unsportsmanlike behavior, the erection of a mock "recruiting tent" at the main entrance to a football stadium that lampooned Harless, and accusations that Harless recruited players, an action unfit of a Virginia public high school football coach. *See id.* Despite these allegations, the *Harless* court applied qualified privilege to the challenged statements and found that "none of the properly pleaded facts in Harless's complaint (or in the attachments to the complaint) specifically show that any one of these three defendants acted out of [malice]." *Id.* at 509. This Court should reach the same conclusion. The allegations to which Plaintiff points as constituting "egregious defamatory statements" indicative of common law malice are all of the same ilk as those relied upon unsuccessfully by the plaintiff in *Harless*. *See* Opp. at 24-25. As the court stated in *Harless*, every statement Plaintiff challenges here was made by "school officials . . . express[ing] their concerns about another employee who could have potentially been violating [school] policies," which "entitle[s]" those statements to "qualified privilege." 900 S.E.2d at 509.

*Second*, putting aside whether the alleged statements by Defendants occurred "in a qualified setting" or concerned "a qualified topic," Plaintiff argues that she has pled facts sufficiently "demonstrat[ing] malice." Opp. at 24-25. But this too is incorrect. "Malice exists if the speaker knows that the statement is false or makes the statement with a reckless disregard of whether or not it is false" or "when the communication is made with a sinister or corrupt motive, such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff." *Mann v. Heckler & Koch Def., Inc.*, 639 F. Supp. 2d 619, 636 (E.D. Va. 2009), *aff'd*, 630 F.3d 338 (4th Cir. 2010). Pleading malice requires fact-specific allegations substantiating that the speaker *knew* statements to be false or made such statements with *ill will* towards the plaintiff. And in employment matters like this one, "the absence of malice is presumed." *Larimore*, 528 S.E.2d at 122.

Plaintiff's allegations do not come close to meeting these high standards. The litany of allegations to which Plaintiff points in her Opposition as "examples of Defendant[s'] malicious behavior," Opp. at 25, all suffer from the same defect. They are all the same types "conclusory assertions of malice" that are commonly held to be insufficient to survive dismissal. *See Tomlin v. Int'l Bus. Machs. Corp.*, 2012 WL 7850902, at *7 (Fairfax Cnty. Cir. Ct. 2012) (dismissing defamation claim where "Plaintiffs do no more than plead general conclusory allegations such as the Defendants' statements were made because of malice, hatred, ill will or a desire to injure"). *See also Jarrett v. Goldman*, 2005 WL 1323115, at *10 (Portsmouth Cir. Ct. 2005) (dismissing defamation claim where, beyond conclusory assertions, plaintiff failed to allege that the challenged statements were "actuated by some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff"). Indeed, Plaintiff's complaint literally contains only *one* allegation even alluding to the concepts of "malice," "spite," or "ill will," all contained within a single conclusory sentence. *See* ECF 31 ¶ 112. These bare-bones allegations are patently

inadequate to plead common law malice, especially in the employment context.

And despite Plaintiff's repeated insistence that the challenged statements were false, Plaintiff nowhere alleges that Defendants *knew* such statements to be false. *See Hyland v. Raytheon Tech. Servs. Co.*, 670 S.E.2d 746, 750 (Va. 2009) (one pleading defamation not only must "show that a defendant has published a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation," but "also . . . that the defendant *knew* that the statement was false" (emphasis added)).

*Finally*, Plaintiff argues that the applicability of qualified privilege "is a question of fact for the jury to decide." Opp. at 25 (emphasis removed) (quoting *Cashion*, 749 S.E.2d at 532). While this may be true in cases where there is a well-pled allegation of malice, as explained above, Plaintiff here has failed to satisfy minimum pleading standards, and numerous courts in this District applying Virginia law dismiss defamation claims based on comparable pleading deficiencies. *See, e.g.*, *Moschetti v. Nixon Peabody, LLP*, 2024 WL 2750010, at *5 (E.D. Va. 2024) (citing *Cashion* and dismissing defamation claim on qualified privilege grounds because plaintiff failed to plausibly allege malice) *appeal dismissed*, 2024 WL 5297814 (4th Cir. 2024); *Nedrick v. Southside Reg'l Med. Ctr.*, 2020 WL 534052, at *9 (E.D. Va. 2020) (dismissing defamation claims on motion to dismiss while observing that "the Supreme Court of Virginia has held 'that employment matters are occasions of privilege in which the absence of malice is presumed'"); *Owen v. Liberty Univ.*, 2020 WL 1856798, at *13-*16 (W.D. Va. 2020) (same), *aff'd*, 2022 WL 127894 (4th Cir. 2022).

### B. The Statements Plaintiff Challenges Lack Defamatory Sting or Are Otherwise Not Actionable

To be actionable under Virginia law, a defamatory statement must "carry the requisite defamatory sting," meaning that it tends "so to harm the reputation of another as to lower him in

the estimation of the community or to deter third persons from associating or dealing with him," "to injure [his] reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him," or "to hold him up to scorn, ridicule, or contempt," or "is calculated to render him infamous, odious, or ridiculous." *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 507, 509-11 (E.D. Va. 2016) (internal quotation marks omitted) (quoting *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015)). As explained in Defendants' Motion, this is a high bar that cannot be satisfied merely by pointing to critical statements voiced by supervisors in the course of appropriate workplace scrutiny, particularly statements that are "substantially true." *Ebersole v. Kline-Perry*, 292 F.R.D. 316, 321 (E.D. Va. 2013).

Defendants' Motion (at 28-31) engaged in the type of statement-by-statement analysis that the law requires, explaining why each alleged defamatory statement Plaintiff focuses upon lacks the requisite defamatory sting or is otherwise not actionable. *See Hetrick v. Iink Corp.*, 2024 WL 1417952, at *4 (E.D. Va. 2024) ("Resolution of . . . defamation claims must be done on a statement-by-statement basis."). By contrast, Plaintiff's Opposition eschews the details, favoring a high-level "holistic" review that amounts to no response at all. Plaintiff fails to explain why any one of her specific allegations of defamation meets the applicable standards. The closest she comes to even mentioning a specific allegation is a single vague reference (without an accompanying complaint citation) to challenged statements by Defendant Reid, which Plaintiff claims amounted to an "aspersion[] against [her] character." Opp. at 28. Yet the alleged statements by Dr. Reid to which Plaintiff presumably refers, *see* SAC ¶¶ 59-60, merely entail Dr. Reid summarizing the content of FCPS's responses to pending government investigations. Nowhere in the SAC does Plaintiff specifically allege these statements are false. Moreover, as explained in Defendants' Motion, statements made in response to government investigations are immunized against claims

10

of defamation. *See* Mot. at 26 n.5.

Plaintiff's Opposition also utterly ignores various additional arguments in Defendants'
Motion, including that one-off statements about teaching performance issues are not actionable;
that statements made in the course of an attorney-client relationship are absolutely privileged; that
the "trespass" statement does not carry the sting of a reprehensible crime and was not published to
any third parties; that statements about Plaintiff's relationships with students were made between
FCPS staff and administrators and therefore not reputationally injurious; that at least some of the
challenged statements are "substantially true"; and that there was no allegation that Dr. Reid's
statements were false. *Compare* Mot. at 28-31, *with* Opp. at 27-29. Plaintiff's failure to combat (or
even mention) these arguments constitutes waiver. *See Evans v. City of Lynchburg*, 766 F. Supp.
3d 614, 618 (W.D. Va. 2025) ("Failure to respond to conspicuous, nonfrivolous arguments in an
opponent's [motion to dismiss] constitutes a waiver of the corresponding claims.") (collecting
cases).

## IV.    Plaintiff's State and Federal Free Speech Claims (Counts IV and V) Should Be Dismissed on Multiple Grounds

### A.    Plaintiff's Speech Does Not Address a Matter of Public Concern

As Plaintiff states in her Opposition, First Amendment free speech claims brought under
Section 1983 and state law free speech claims brought under the Virginia Constitution's Article I
§ 12 are typically analyzed together applying the same standards. Opp. at 29. To state a claim for
retaliation under the First Amendment (and Section 12), Plaintiff must establish as a matter of law
that she spoke as a private citizen on a matter of public concern—not as an employee on a matter
of personal interest. *See Connick v. Myers*, 461 U.S. 138, 154 (1983) (warning against "attempt[s]
to constitutionalize the employee grievance"). As the Fourth Circuit has explained, "to
constitutionalize poor personal chemistry in the workplace" would "elevate the infinitude of

worker dissatisfactions with supervisors to a constitutional plane." *Brooks v. Arthur*, 685 F.3d 367, 373 (4th Cir. 2012). "To do so would turn the workplace into a constitutional landmine, while offering public employees inflated speech rights not shared by their private counterparts." *Massaro v. Fairfax Cnty.*, 95 F.4th 895, 907 (4th Cir. 2024). Yet that is precisely what this case involves— Plaintiff's effort to elevate a workplace dispute into a purported constitutional controversy, which is both disingenuous and at odds with the pleaded facts in Plaintiff's own SAC.

As much as Plaintiff attempts to argue otherwise, the reality is that she did not surface and promote her claims of alleged school-sponsored, school-funded student abortions to draw attention to a matter of public concern. By her own admission, Plaintiff raised these claims as a form of retaliation "*[i]n response*" to purportedly "false allegations" made by a co-worker, Carolina Diaz—who alleged that Plaintiff "had provided a pregnancy test to a student." ECF 31 ¶ 12 (emphasis added).

Plaintiff was determined to accuse Mrs. Diaz of doing something far worse than "provid[ing] pregnancy tests . . . to minor students"—namely, asserting that Mrs. Diaz had facilitated and paid for "pregnancy solutions." *Id.* ¶ 12. After first raising her highly charged claims against Mrs. Diaz in a meeting with Defendant Lehman in May 2022, Plaintiff repeated them in another meeting with Lehman in November 2022. *Id.* ¶¶ 12-16. In the interim between these two meetings, Plaintiff commenced her own private fact-finding efforts, seeking to uncover proof substantiating her claims. Plaintiff was determined to "prove that [she was] right," *id.* ¶ 17, about her accusations of wrongdoing by her in-school nemesis, Mrs. Diaz. As of November 2022 when she met with Lehman for the second time, Plaintiff claims that she had all the "evidence" needed to prove that "Carolina Diaz" was guilty of "facilitat[ing]" student abortions. *Id.* ¶ 17. According to the SAC, Plaintiff "procured" a statement from Doe #1 "dated November 19, 2022" attesting

that Diaz "paid for the costs" of the student's "November 2021" abortion. *Id.* ¶ 18. Plaintiff also claimed to have obtained an "audiotaped interview" from Doe #1's "uncle and legal guardian, Mr. S," that she claims supported her allegations against Diaz. *Id.* ¶ 20.

Yet, notably, Plaintiff never shared this information with Defendant Lehman or anyone else within the school. She acknowledges that Lehman asked her in late November 2022 "what further information" she could "share" in relation to her claims against Mrs. Diaz, and also asked "how [she] got the information." ECF 31 ¶ 17. But despite purportedly having compiled a considerable amount of "evidence" by this time, including the written statement from Doe #1 and the audiotaped interview with Doe #1's uncle, Plaintiff did not come forward with this information. On the contrary, she concealed this "evidence" for another two-and-a-half-plus years, ultimately choosing to share it with a political blogger, Walter Curt, who published "Doe #1's statement" in a blog posting in "August 2025." *Id.* ¶ 20. Mr. Curt's August 2025 blog also called attention to a statement procured by Plaintiff from "another CHS student, 'Doe #2,'" who claimed that "Diaz, and perhaps others" within the school, had pressured her to get an abortion. *Id.* ¶ 21.

Plaintiff's Opposition (at 22-26) works mightily to recast these facts as involving speech of "social, political, or other interest to the community," *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004), and to characterize herself as a crusading "citizen" seeking to "participate in a larger public dialogue." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 585 (4th Cir. 2017). But none of this is remotely credible. If Plaintiff, when she accused her coworker of criminal acts, had been "speaking as a citizen upon a matter of public concern," rather than "as an employee about a matter of personal interest," *id.* at 583, she presumably would have done something in 2022 (or 2023, or 2024, or 2025) to bring her "evidence" of criminal wrongdoing to the attention of the school division, or law enforcement, or the public at large. Instead, she sat on this "evidence"

for several years—until it became expedient to release it. And her own complaint provides clues about the timing of that release. The SAC pleads that Plaintiff came under scrutiny from school administrators in the "spring [of] 2025" for again allegedly "obtaining pregnancy tests for students." ECF 31 ¶ 28. It was only months later that she, in coordination with Walter Curt, publicly accused not only Mrs. Diaz, but also her employer, FCPS, and multiple senior FCPS administrators (including Superintendent Reid and former Principal Lehman) of criminal wrongdoing and a cover up. These facts telegraph the reality that Plaintiff, at every stage, was indeed acting out of personal interest, not public concern.

Although the media seized upon her sensationalized claims and various parties sought to leverage them for political gain, her speech involved precisely the type of personal workplace grievances that the Supreme Court has warned courts to guard against in the employee speech context. *See Connick*, 461 U.S. at 154. Moreover, the Court need not credit Plaintiff's *post hoc* characterizations of her speech because the public-concern inquiry considers only the "content, form, and context" of the speech at the time it was made. *Connick*, 461 U.S. at 147-48; *cf. Spatafore v. City of Clarksburg*, 2024 WL 4280959, at *11 (N.D.W. Va. 2024) (rejecting "[p]laintiff's [later] characterization" of her "Facebook comments" and concluding that the speech "did not relate to issues of public concern" when it was made), *aff'd*, 2026 WL 49568 (4th Cir. 2026). For the same reasons, the subsequent government investigations do not transform Plaintiff's private grievances into matters of public concern. Because "[t]he gravamen of this matter . . . remains a series of personal differences," Plaintiff cannot establish this threshold element of her free speech claim. *Brooks*, 685 F.3d at 372.

### B.    The Individual Defendants Are Entitled to Qualified Immunity

Plaintiff concedes that qualified immunity applies "unless" she can demonstrate that Defendants violated her clearly established right. Opp. at 34. But she does not cite any controlling

authority establishing her right to make unsubstantiated accusations against coworkers and then withhold evidence for three years; she merely invokes the general principle that "[r]etaliat[ing] against a schoolteacher for speaking on a matter of public concern is a violation of the First Amendment." Opp. at 35. As explained in Defendants' Motion (at 27), the qualified immunity analysis does not permit a plaintiff to paint with such broad strokes. Because the public concern inquiry "requires a 'particularized balancing' that is subtle, difficult to apply, and not yet well-defined," courts rarely find it "clearly established that a public employee's speech on a matter of public concern is constitutionally protected." *DiMeglio v. Haines*, 45 F.3d 790, 804 (4th Cir. 1995).

Plaintiff's marquee case, *Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292 (4th Cir. 2006), does not help her. For starters, *Ridpath* predates the Supreme Court's *Iqbal/Twombly* decisions. So the Fourth Circuit's analysis must be considered in the context of the far more lenient pleading standard operative at the time—under which a court could only reject a claim under Rule 12(b)(6) if "it appear[ed] beyond all doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 317. Moreover, the facts alleged in *Ridpath* provided a clear throughline between the plaintiff's external reports to the NCAA about the university's NCAA violations and the plaintiff's subsequent discharge "due to negative comments he made about the University's conduct during the NCAA investigation." *Id.* at 302. In fact, in *Ridpath*, the plaintiff provided sworn testimony from a university official in a related grievance proceeding confirming his theory. *See id*. Here, Plaintiff alleges far murkier facts. She alleges that Defendant Lehman investigated her initial allegations (even if cursorily) in November 2022 and that she then ignored his request for corroborating information. ECF 31 ¶¶ 17-18. She waited more than two years to report her claims to outside counsel and a district investigator during unrelated investigations. *Id.* ¶¶ 46, 53. If anything, the contrast between the allegations in *Ridpath* and the

SAC only confirms the implausibility of Plaintiff's theory. A reasonable official would not have understood that investigating and taking administrative action against an employee who made unfounded accusations to deflect from other investigations—and then refused to provide evidence in her possession substantiating her claims—violated that employee's constitutional rights.

Plaintiff's belated claim (*see* Opp. at 35) that the Individual Defendants were "on notice that" retaliation against teachers reporting "reasonable suspicion of sexual misconduct or abuse by another employee" was forbidden and thus knew her speech was protected is a red herring. Lehman investigated her claims and deemed them baseless. ECF 31 ¶¶ 17-18. Even if the Court were inclined to find plausible that Plaintiff's complaints pertained to matters of public concern, her complaints were so enmeshed with personal grievances that a reasonable official certainly could have viewed Plaintiff's speech as purely personal. Such "guesses in gray areas" are precisely what qualified immunity exists to protect. *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007).

### C.    The School Board Is Immune from Liability Under *Monell*

Plaintiff's half-hearted defense of her Section 1983 claim against the School Board likewise fails. As also explained in Defendants' Motion, under *Monell v. Department of Social Services*, 436 U.S. 658, 663 (1978), and its progeny a plaintiff must show that a local government entity caused the constitutional violation through the execution of an official policy or custom. Mot. at 36. Plaintiff concedes that the School Board did not have "an official policy encouraging its school administrators to unlawfully retaliate against its teachers." Opp. at 38. But Plaintiff's "failure-to-train" theory doesn't work either. Under *City of Canton v. Harris*, which Plaintiff cites for the basic principle that a municipality *can* be held liable for failure to train, it is not enough that "a particular officer may be unsatisfactorily trained." 489 U.S. 378, 391 (1989). The plaintiff must allege that the deficiency in training "actually caused" the harm complained of—not merely that a municipality "could have done" more. *Id.* at 391-92. That is, a plaintiff must identify a

"specific deficiency rather than general laxness or ineffectiveness in training." *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987); *accord G.M. v. Virginia Beach Sch. Bd.*, 2025 WL 1819269, at *5 (E.D. Va. 2025) (dismissing failure-to-train claim that merely "allege[d] that the School Board failed to train [school bus operators] by conclusively stating that the School Board 'failed to train'" but "does not otherwise allege facts in support of his failure to train theory"); *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F. Supp. 3d 721, 727 (E.D. Va. 2014) (rejecting failure-to-train claim when plaintiff "fails to state sufficient facts" showing "that the School Board failed to train school administrators in an area where there is an obvious need for training": "how to search students"). Plaintiff's vague intimation that the School Board should have trained administrators to "respect[] the constitutional limits on retaliatory discipline," Opp. at 30, is not enough.

Plaintiff's theory that the School Board, and "especially" Superintendent Reid, "ratified and acquiesced in the unconstitutional actions against Plaintiff" is similarly underdeveloped. *Id.* In *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), upon which Plaintiff relies, the Fourth Circuit affirmed a grant of summary judgment on the plaintiff's ratification theory because the plaintiff had "forecasted no evidence" showing that the city had approved of the retaliation. Although Plaintiff urges that "a jury could plausibly" find in her favor, this puts the cart before the horse. Opp. at 30. Plaintiff is not entitled to present her case to a jury because simply parroting the general *Monell* standard without pleading the elements of, or facts to support, any of its four theories of liability is not sufficient to survive a motion to dismiss. To the contrary, a court need not "try to surmise which theory of municipal liability [might have] support in the complaint." *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015); *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) (affirming dismissal where plaintiff failed to plead basic elements of *Monell* liability, including that defendant had requisite "policymaking authority" and "what action

17

he took that could fairly be said to be policy"); *Baxter ex rel. Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994) (similar). Despite her multiple amendments, Plaintiff still does not allege any facts supporting her underlying theory that she was suspended or placed on administrative leave as unconstitutional retaliation—much less that the School Board actually approved either incident.

### D.     Plaintiff's State Law Free Speech Claim Is Also Subject to Dismissal as Seeking Only a Form of Relief the Law Disallows

Plaintiff's efforts to resuscitate her claim under Article I of the Virginia Constitution are unavailing. As this Court has observed, "the Supreme Court of Virginia has never recognized an implied cause of action for damages under Article I, Section 12." *McCaffrey v. Chapman*, 2017 WL 4553533, at *5 (E.D. Va. 2017); *see also Suiter v. Taylor*, 2024 WL 3466186, at *4 (W.D. Va. 2024) (Section 12 is "only self-executing for claims challenging [the constitutionality of] laws or ordinances."); *Ford v. Northam*, 2023 WL 2767780, at *8 (W.D. Va. 2023) ("no viable claim under Section 12" where "claims [were] not based on a law or ordinance, but on procedures and policies of a state agency"); *Mais v. Albemarle Cnty. Sch. Bd.*, 657 F. Supp. 3d 813, 825 (W.D. Va. 2023) (similar); *Va. Student Power Network v. City of Richmond*, 2021 WL 6550451, at *2 (Richmond Cir. Ct. 2021) (similar and collecting cases). Plaintiff declines to address any of Defendants' case law supporting these propositions.

Instead, Plaintiff vaguely observes that she "does seek prospective relief." Opp. at 29. But Plaintiff cannot rewrite the SAC at this eleventh hour. She has pleaded this claim *thrice*, each time seeking only "compensatory damages" and not once mentioning "prospective relief." ECF 1-2 at 25; ECF 6 at 26-27; ECF 31 at 29. Even if she had included the phrase, she alleges no facts upon which to grant prospective relief. *See Gordon v. James Madison Univ.*, 2014 WL 3579663, at *2 (W.D. Va. 2014) (explaining that "adding the words 'equitable relief' to a claim for damages did

not change the nature or availability of the underlying claim"). Indeed, because Plaintiff is not challenging the constitutionality of a law or ordinance, it is unclear what prospective relief this Court could even provide. Because no court has countenanced a claim for damages under Article I, Section 12, and Plaintiff's belated claim of entitlement to prospective relief is hollow, this Court can and should dismiss Count IV with prejudice on this ground alone.

## **CONCLUSION**

Defendants respectfully request that the Court dismiss the SAC with prejudice.

Dated: February 23, 2026                              Respectfully submitted,

                                                      */s/ Edward Lee Isler*
                                                      Edward Lee Isler, Va. Bar No. 27985
                                                      Micah E. Ticatch, Va. Bar No. 83351
                                                      ISLER DARE, P.C.
                                                      1945 Old Gallows Road, Suite 650
                                                      Vienna, Virginia 22182
                                                      Tel: (703) 748-2690
                                                      Fax: (703) 748-2695
                                                      Email: eisler@islerdare.com
                                                      Email: mticatch@islerdare.com

                                                      M. Sean Royall, *pro hac vice*
                                                      Lucas M. Fields, *pro hac vice*
                                                      Zoe M. Beiner, *pro hac vice*
                                                      KING & SPALDING LLP
                                                      1700 Pennsylvania Ave., NW, Suite 900
                                                      Washington, D.C. 20006
                                                      Tel: (202) 626-2627
                                                      Fax: (202) 626-3737
                                                      Email: sroyall@kslaw.com
                                                      Email: lfields@kslaw.com
                                                      Email: zbeiner@kslaw.com

                                                      *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of February 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically sends notification to the following:

>Monique A. Miles
>Virginia Bar No. 78828
>OLD TOWNE ASSOCIATES, P.C.
>201 N. Union Street, Suite 110
>Alexandria, Virginia 22314
>Tel: (703) 519-6810
>Email: mmiles@oldtowneassociates.com
>
>Steven H. Aden, *pro hac vice*
>Virginia Bar No. 48036
>AMERICANS UNITED FOR LIFE
>1150 Connecticut Ave., NW, Suite 500
>Washington, D.C. 20036
>Email: Steven.Aden@aul.org
>*Counsel for Plaintiff*

>*/s/ Edward Lee Isler*
>Edward Lee Isler, Va. Bar No. 27985
>ISLER DARE, P.C.
>1945 Old Gallows Road, Suite 650
>Vienna, Virginia 22182
>Tel: (703) 748-2690
>Fax: (703) 748-2695
>Email: eisler@islerdare.com
>
>*Counsel for Defendants*