IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ZENAIDA PEREZ, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-2126-AJT-IDD |
| | ) | |
| FAIRFAX COUNTY | ) | |
| SCHOOL BOARD, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Zenaida Perez, a public high school teacher, brings claims for defamation, free speech violations, and statutory whistleblower-protection violations against various school and school board officials whom she alleges retaliated against her by placing her on administrative leave after she repeatedly accused her high school's guidance counselor and other personnel of facilitating minor students' abortions without parental consent. Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim [Doc. No. 22] (the "Motion") on numerous grounds, but centrally on claims of sovereign and qualified immunity. The Court held a hearing on the Motion on March 5, 2026, following which it took the Motion under advisement. Upon consideration of the Motion, the memoranda in support thereof and in opposition thereto, the argument of counsel at the hearing, and for the reasons stated herein, the Motion is **GRANTED.**

**I. BACKGROUND**

The Second Amended Complaint alleges the following:

Plaintiff Zenaida Perez is a career English for Speakers of other Languages (ESL) teacher and has worked at Centreville High School since 2008. [Am. Compl.] ¶ 10. At some point in her employment, Perez became aware of facts suggesting that a guidance counselor had provided

1

pregnancy tests to minor students and had directed them to abortion providers, given them money, or otherwise facilitated that kind of procedure without first seeking their parents' consent in violation of Virginia law. *Id*. ¶¶ 11-12.[1]

Beginning in May 2022, Perez made a series of complaints and communications to school officials related to her concerns about the guidance counselor's activity, first, on May 5, with a verbal report to her direct supervisor George Michael Parker and assistant principal Alexis Wenzel, evidently in response to similar allegations against Perez herself. *Id*. ¶ 12. This was followed up by similar verbal and written communications from Perez to her supervisor and Principal Chad Lehman on May 13 and November 22, 2022. *Id*. ¶¶ 12, 15. Principal Lehman at first disregarded her reports, and when confronted, ultimately stated that the guidance counselor and the student in question denied the allegations. *Id*. ¶¶ 15, 17. Plaintiff alleges that from then on Lehman (who was replaced by another Principal, Eric Healey, the following school year) avoided her in the hallways and never spoke to her again. *Id*. ¶ 24.

Plaintiff alleges that beginning in the following school year (2023-2024), she began experiencing retaliation by school administrators and details a long and varied list of incidents, including that administrators (almost exclusively Healey and Brown) assigned her an abnormally onerous class schedule and repeatedly changed her schedule; accelerated her performance review cycle; directed students to "do or say things about Perez to get her in trouble;" scheduled meetings

---

[1] Unstated is exactly when and how Perez first learned of this information, but the more specific allegations center on two separate occasions. On one occasion, it is alleged that the guidance counselor "facilitated an abortion for a minor student [who] actually got the abortion, and that her legal guardian (her uncle) only found out about the abortion when he had to take her to the hospital because the procedure caused extensive blood loss." *Id*. ¶ 15. Perez allegedly procured a statement from this student to this effect, which also mentioned that "an envelope was given to her for the abortion clinic…which more than raises the presumption that the funds to cover the abortion were in the envelope." *Id*. ¶¶ 18-19. With respect to another incident, Perez also obtained a statement from a student claiming the guidance counselor, along with the school nurse, allegedly attempted to pressure her into getting an abortion when she was already five months pregnant; and who claimed that the school nurse told her she had previously facilitated other students' abortions. *Id*. ¶¶ 21-22. A local journalist reported on these accounts in August 2025, with Perez' participation, which included an audio interview with one of the students' relatives. *Id*. ¶¶ 20-21.

during her vacation and other scheduled time off; and falsely accused her of illicit relationships with students and other offenses. *Id*. ¶¶ 28, 32-76. Plaintiff also alleges that school board officials have issued various disciplinary sanctions against her, including twelve disciplinary memoranda and reprimands, a one-day suspension in the Spring of 2025 for insubordination, and her placement on paid administrative leave in October 2025, which came the same day that she made public statements about the abortion allegations on television. *Id*. ¶¶ 52, 67, 76; [Doc. No. 37-9]. Plaintiff alleges that her supervisor made a remark which she interpreted as acknowledging the retaliation. *Id*. ¶ 29. She also has formally complained to the School Board Office of Employee Relations ("OER"), her union, and the Equal Employment Opportunity Commission, and has attempted to transfer to another school, all to no avail.  *Id*. ¶¶ 29, 34, 38, 43.

Central to her claims in this case are Perez's communications about the purported abortion scandal to school administrators and their counsel, journalists, and the public, which took place in various contexts. Plaintiff alleges that she continued to complain about the issue to school administrators and through the the OER, union, and EEOC complaints;[2] but as time went on without an official school response to the abortion allegations, Plaintiff appears to have shifted her focus toward public advocacy. In that regard, she emailed her concerns to a journalist sometime before January 2025, was interviewed for a story which was published on a conservative journalist's blog on the platform Substack in August 2025, and in October 2018 appeared on "the news" as well as on a webinar hosted by the nonprofit Americans United for Life. *Id*. ¶¶ 20, 37, 67, 95. Also, beginning in 2025, various government entities began launching investigations into Plaintiff's allegations, including the Defendant School Board, the U.S. Department of Education,

---

[2] Although Plaintiff's internal complaints following Lehman's 2022 investigation were more focused on the alleged retaliation against her than the underlying abortion accusations themselves, when viewed most favorably to Plaintiff, these complaints appear to relate to both issues.

and the U.S. Senate Committee on Health, Education, Labor and Pensions. *Id*. ¶¶ 59-64. Plaintiff was interviewed multiple times in connection with these investigations, including in March, May, and August of 2025. *Id*. ¶¶ 46, 53, 62.

The preliminary and final reports by the school board included findings that Perez's allegations were untrue and that she falsified evidence and refused to cooperate with the initial school investigation. *Id*. ¶¶ 59-60, 70-72. Given the media coverage and concern about the controversy among school staff and parents, Defendants (chiefly Superintendent Reid) made various written and oral statements to these government investigators and other stakeholders in which the preliminary and final investigation findings were conveyed. *Id.*

Plaintiff's Second Amended Complaint (the Complaint)[3] asserts five causes of action:

1. Retaliation in violation of the Virginia Whistleblower Protection Law ("VWPL"), Va. Code Ann.§ 40.1-27.3(A)), filed against only the school board (Count I);

2. Retaliation in violation of the Fraud and Abuse Whistleblower Protection Act ("FAWBPA"), Va. Code§ 2.2-301 l(A)), filed against only the school board (Count II);

3. Defamation per se, filed against all Defendants (Count III);

4. Retaliation in violation of her right to free speech under the Virginia Constitution, Art. 1, Section 12, filed against all Defendants (Count IV); and

5. Retaliation in violation of her First Amendment right of free speech in violation of 42 U.S.C. §1983, filed against all Defendants (Count V).

In response to the  Complaint, Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that (1) they enjoy sovereign and qualified immunity; (2) that their

---

[3] Plaintiff filed her original complaint in state court in October 2025, which was removed to this Court on November 21, 2025; Plaintiff filed her First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1) on November 25, 2025 [Doc. No. 6], and filed the operative Second Amended Complaint with leave of this Court on January 20, 2026. [Doc. No. 31].

statements were privileged and not defamatory; and (3) that Plaintiff's speech was not protected as being related to a matter of public concern. [Doc. No. 35].

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This does not require detailed allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "When a . . . complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand [a motion to dismiss]." *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 517 (2014) (quoting *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993)). The Court must accept all well-pled facts in the complaint as true and construe all facts in the light most favorable to Plaintiffs. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).

## III. DISCUSSION

### A. <u>The VWPL Claim is Barred by Sovereign Immunity (Count I)</u>

Plaintiff's first claim for violation of the VWPL is brought only against the school board. The VWPL states, in relevant part, that an employer shall not take retaliatory action against an employee because the employee "in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official." *See* Va. Code Ann. § 40.1-27.3(A). Defendants contend that this claim is barred by sovereign immunity. In that regard, Defendants argue that the definition of "employer" from Va. Code Ann. § 40.1-2, which

5

is incorporated into the VWPL, omits any reference to public entities, that this omission is intentional and that sovereign immunity has therefore not been waived for purposes of the VWPL.

The Virginia Supreme Court has not addressed the issue, although other courts, both state and federal, have concluded in unpublished opinions that sovereign immunity has not been waived for claims under the VWPL.  *See Konate v. Norfolk State Univ.,* No. CL 21-5224 (Va. Cir. Feb. 7, 2022) (Norfolk)).  *See also Moschetti v. Office of Inspector General,* 2022 WL 3329926, at *10 (E.D. Va. 2022)); *Jordan v. School Board of City of Norfolk*, 640 F. Supp. 3d 431, 452–53 (E.D. Va. 2022). Significant in this regard is that a separate Virginia whistleblower protection statute, the FAWBPA, the basis for Plaintiff's claim under Count II, expressly applies to public-sector employees and expressly waives sovereign immunity. See Va. Code § 2.2-3011. Because sovereign immunity must be expressly waived, *see Passaro v. Virginia*, 935 F.3d 243, 248 (4th Cir. 2019), the Court concludes that sovereign immunity has not been waived for claims under the VWPL and this claim against the school board is barred and will be dismissed.

## B. **Plaintiff's FAWBPA Claim Fails to Plead Causation (Count II)**

Plaintiff claims that the school board retaliated against her in violation of FAWBPA, a Virginia whistleblower protection statute that applies to public-sector employees. Va. Code § 2.2-3011. With respect to this claim, Defendants chiefly argue that Plaintiff does not plead facts showing a causal relationship between any protected activity and any alleged retaliation. In that regard, nearly three years elapsed between her initial report to Principal Lehman in November 2022, the only protected activity alleged, and the only adverse employment action taken against her, namely, her placement on paid administrative leave in October 2025.[4]

---

[4] The Second Amended Complaint highlights the temporal proximity between her placement on administrative leave and her participation in a publicly broadcast Webinar hosted by Americans United for Life." [Am. Compl.] ¶¶ 67, 100. But her publicly broadcast speech does not constitute protected activity under the FAWBPA, as that statute protects only the reporting of misconduct to an "appropriate authority," which is defined as "a federal,

6

Under both Title VII and most whistleblower statutes, a *prima facie* case of causation can be made based on circumstantial evidence including temporal proximity, deviation from normal practices, or evidence of concealment. *Sneed v. Montgomery Housing Authority,* 956 F. Supp. 982 (M.D. Ala. 1997), aff'd, 136 F.3d 1331 (11th Cir. 1998). Although there is no bright-line rule for when temporal proximity sufficiently alleges causation, the "rule of thumb" in Title VII cases is that a delay over two months requires additional proof or explanation. *See Laurent-Workman v. Wormuth*, 54 F.4th 201, 218-19 (4th Cir. 2022), see also *Wood v. Bristol Va. Util. Auth.*, 661 F. Supp. 3d 538, 553 (W.D. Va. 2023) (collecting cases).

Plaintiff alleges numerous acts by Healey and Brown, which she does not expressly contend were adverse actions individually, but which, she contends, show, when viewed most favorably to her, as required on a Motion to Dismiss, a slow but sufficiently unbroken progression of retaliatory actions culminating in her administrative leave, such that there is sufficient temporal proximity between her protected activity in 2022 and her placement on administrative leave in 2025. This contention finds some support within the context of a Title VII claim. In *Lettieri v. Equant Inc.* 478 F.3d 640 (4th Cir. 2007), the Fourth Circuit found the causation element satisfied for a Title VII sex discrimination claim when, over the seven months period between the plaintiff's complaints of gender discrimination and her firing by her supervisors, those same superiors "reduced her supervisory responsibilities over the sales team and took away her authority to set prices and meet directly with Sprint clients." *Id.* at 650. However, courts have been reluctant to extend the reasoning in *Lettieri* to other Title VII claims with less temporal proximity or less clear evidence, with no cases found extending temporal proximity to state-law statutory claims like

state, or local agency or organization having jurisdiction over criminal law enforcement, regulatory violations, professional conduct or ethics, or abuse; or a member, officer, agent, representative, or supervisory employee [thereof]." Va. Code § 2.2-3010.

Plaintiff's FAWBPA claim. *See, e.g., Walton v. Harker*, 33 F.4th 165, 178 (4th Cir. 2022) ("*Lettieri's* facts do not resemble this case. The pattern of animus there was severe and took place over a truncated period of months. Here, [plaintiff] Walton points to only one alleged comment over six years by a supervisor that did not relate in any way to her 2013 job reassignment.")

Here, the temporal proximity between Plaintiff's protected activity and her adverse employment action is much more attenuated than in *Lettieri* (almost five times longer), the ultimate adverse action less sever (administrative leave with pay as opposed to termination), and the school officials alleged to have engaged in conduct that Plaintiff contends was retaliatory are other than either those Plaintiff complained to or those she complained about,[5] as is the official who actually imposed her administrative leave.[6]

In sum, Plaintiff has failed to plead facts which, when viewed most favorably to her, plausibly give rise to a claim for whistleblower retaliation under FAWBPA.

### C. <u>The Defamation Claim is Barred by Qualified Privilege (Count III)</u>

Plaintiff brings a claim for defamation *per se* against the Individual Defendants in their individual capacities only ([Opp.] at 22) for over a dozen statements, mostly within or related to the school board's investigation into her job performance and conduct with students. [Am. Compl.] ¶¶ 31-32, 35-36, 40, 45-46, 48, 56-60, 66-74. Defendants argue, *inter alia*, that this claim is barred by a qualified privilege. [Mot.] at 24–28.

---

[5] Specifically, Perez alleges that the alleged retaliation began the school year after Plaintiff complained to Lehman, Wenzel and Parker, and with the exception of Lehman, the Complaint does not allege that any of those individuals (nor the guidance counselor or the school nurse, the subjects of her complaints) participated in any of the alleged retaliation; and the only specifically described conduct claimed to be retaliatory (though still not rising to the level of an adverse employment action) are against Healy and Brown. As to Lehman, the only "retaliation" alleged is the conclusory statement that "[a]fter the 2022-2023 academic year, Perez began to experience animosity and retaliatory actions against her, first by CHS Principal Lehman… [who] never again acknowledged her or greeted her. When he saw her in the hallways, Lehman walked in the opposite direction to avoid her." [Am. Compl.] ¶ 24.

[6] The Second Amended Complaint alleges that Plaintiff was placed on administrative leave by Bill Fulton, Director of FCPS Office of Employee Relations, without any allegation of personal involvement in that decision by Plaintiff's alleged harassers (Healey and Brown). *See* [Am. Compl.] ¶¶ 52, 67.

Under Virginia law, qualified privilege attaches to communications between "co-employees and employers in the course of employee disciplinary or discharge matters." *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000); *see also Dwyer v. Smith*, 867 F.2d 184, 195 (4th Cir. 1989) (communications relating to matters of mutual interest and employee investigations into misconduct or discipline are presumptively privileged under Virginia law)*.* To establish defamation liability for employment-related statements, a plaintiff must overcome the presumption that the declarant's comments were not malicious. *Larimore,* 528 S.E.2d at 122. This presumption can be overcome by a showing that "(1) the statements were made with knowledge that they were false or with reckless disregard for their truth, (2) the statements [we]re communicated to third parties who have no duty or interest in the subject matter; (3) the statements were motivated by personal spite or ill will, (4) the statements included strong or violent language disproportionate to the occasion, or (5) the statements were not made in good faith." *Cashion v. Smith,* 749 S.E.2d 526 (Va. 2013) (citing *Great Coastal Express, Inc. v. Ellington,* 334 S.E.2d 846 (Va. 1985)) (cleaned up).

Plaintiff argues that the alleged defamatory statements were not  privileged since they came within the exclusion from the qualified privilege for "actions taken outside the scope of [the official's] employment, or for actions within the scope of their employment that are so grossly negligent or willful and malicious that they are no longer entitled to claim the immunity that the State enjoys." [Opp.] at 23 (citing *Tomlin v. McKenzie*, 468 S.E.2d 882, 884 (Va. 1996)). Here, however, each alleged defamatory statement appears from the allegations to have been made in the context of the declarant's supervision of the Plaintiff concerning her professional conduct (and therefore squarely within the scope of employment). And as referenced above, such statements are presumed to lack malice, and the only allegations that relate to whether the statements fall within

a recognized exclusion from the qualified privilege are Plaintiff's conclusory assertions insufficient to make the required showing.[7]

That the qualified privilege applies to the alleged defamatory statements is supported by what appears to be one of the most recent, if not the most recent consideration of that privilege by a Virginia appellate court. In *Harless v. Nicely,* 80 Va. App. 678 (Va. Ct. App. 2024), after an altercation at a high school football game, various school officials conducted an investigation into a coach from a neighboring district, and their report included numerous statements to the effect that the coach had repeatedly made racist remarks and engaged in improper recruiting techniques (he was allegedly cleared of any recruiting violations before bringing his lawsuit). *Id*. at 683–85. The named coach brought defamation claims against the declarants, but the Court of Appeals affirmed the trial court's ruling that qualified privilege barred these claims because "each defendant made their respective statements in order to express their concerns about another employee who could have potentially been violating the [Virginia High School League's] policies." *Id*. at 689–90. Here, the facts alleged as to the relied upon statements are even less favorable for the Plaintiff than in *Harless*, as the declarants are Plaintiff's superiors within the same organization, rather than employees of a different school district.

For these reasons, the Individual Defendants' statements alleged to be defamatory are protected by qualified privilege, and thus Plaintiff's defamation claim will be dismissed.

---

[7] Plaintiff's conclusory allegations include that "[t]he Defamatory Statements were… false," [Am. Compl.] ¶ 104, and "necessarily hurtful." *Id*., ¶ 106, and 'Defendants knew they were false because, as just one example, they said Mrs. Perez enabled students for inappropriate sexual misconduct," *Id*. ¶ 108, or "should have known they were false," *Id.,* ¶ 109, "had the intention of inflicting harm," *Id*. ¶ 111 and "were motivated …because of their actual malice, spite, hatred, ill-will, and a grudge against Perez." *Id*. ¶ 112.

### D. **Plaintiff's Free Speech Claims Likewise Fail (Counts IV, V)**

Plaintiff brings two constitutional free speech claims, one under state law (Count IV) and one under 42 U.S.C. § 1983 alleging deprivation of her federal First Amendment rights (Count V). Both claims exclusively seek damages for the deprivation of her right to speak on matters of public concern. [Am. Compl.] ¶¶ 119, 122. Article I, Section 12 of the Virginia Constitution is co-extensive with the First Amendment (s*ee McCaffrey v. Chapman*, 2017 WL 4553533, at \*5 (E.D. Va. 2017)), and both free speech claims are in substance identical.

### iii) *The Individual Defendants are Protected by Qualified Immunity*

Defendants argue that the Individual Defendants are protected by qualified immunity because their actions did not violate a clearly established right.[8] Even if a public employee's speech is protected, Courts are consistently reluctant to hold that their First Amendment rights were clearly established because the existence of those rights turns upon a sensitive balancing of the employee's speech rights against the government employer's right to operate effectively and efficiently. *See, e.g. DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995); *see also Myers v. Morris,* 810 F.2d 1437, 1462 (8th Cir.) ("[I]f the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered 'clearly established,' at least in the absence of closely corresponding factual and legal precedent."). Under this so-called *Pickering* balance,[9] the official enjoys qualified immunity provided that a reasonable person could have believed the balance would be struck in favor of the government. *See Lane v. Franks*, 573 U.S. 228, 242 (2014) (holding that although state college employee's

---

[8] Defendants also contend that Plaintiff's free speech claims should be dismissed because her speech did not deal with a matter of public concern but rather was directed internally and focused on her dispute with a coworker (the guidance counselor.) [Mot.] at 33–34. While her dispute with the guidance counselor may have been the genesis of the dispute, the allegations concerning Plaintiff's speech, much of which was directed externally, are more consistent with a form of public anti-abortion advocacy than a mere workplace squabble blown out of proportion. *See* [Am. Compl.] ¶¶ 20, 37, 67, 95.

[9] *See Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968).

testimony under subpoena at a criminal trial is protected, the official who terminated him enjoyed qualified immunity because judicial precedent at the time did not preclude the reasonable belief that a government employer could fire an employee for testimony given under oath outside his ordinary job duties). Here, the parties posit different framings of the "right" that was violated, with Plaintiff framing it as her right to speak on a matter of public concern ([Opp.] at 30–31), and Defendants as the Plaintiff's claimed right "to make unsubstantiated accusations against coworkers." [Reply] at 20–21.

Given the required particularized framing of the right at issue for the purposes of a claim under Section 1983, "only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply, and not yet well-defined." *DiMeglio*, 45 F.3d at 806; *see also, e.g., Iglesias v. Wolford*, 667 F. Supp. 2d 573 (E.D. N.C. 2009) (finding no Section 1983 violation where administrative assistant to police chief was fired after repeatedly accusing chief of embezzling funds).

Even were Plaintiff's speech motivated more by pro-life sentiment than personal grievance against the guidance counselor, or any other school official, none of the various alleged investigations substantiated Plaintiff's claims, and the Individual Defendants could reasonably have believed that Plaintiff's speech interests were outweighed by the school system's countervailing interests, particularly in light of her failure to provide Lehman with the evidence she claimed to have, which she instead published years later through a report by a political blogger. *See* [Am. Compl.] ¶¶ 17-21.

For these reasons, even when viewing the allegations in the Complaint as a whole, and most favorably to the Plaintiff, the Court concludes as a matter of law that at all times it was

reasonable for the Individual Defendants to believe that Plaintiff's right to make her repeated accusations against her coworkers was not clearly established and the Individual Defendants are therefore protected by qualified immunity from Plaintiff's First Amendment and state constitutional free speech claims, and Counts IV and V must be dismissed as to the Individual Defendants.[10]

iii) *The School Board Is Immune from Liability Under Monell*

Defendants argue that Plaintiff's free speech claims under Section 1983 against the school board (and the Individual Defendants in their official capacities), are subject to dismissal because she failed to allege that an official policy or custom caused the alleged first amendment violation. Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 (1978) and its progeny, a "local government may be held liable for a decision made by an individual whose edicts or acts may fairly be said to represent official policy," but not for "going along with the discretionary decisions made by [a] subordinat[e]." *See Lytle v. Doyle*, 326 F.3d 463, 472 (4th Cir. 2003). Discretionary decisions may form the basis for liability when "a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law" (*Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)) or when a municipality's lack of supervision, delegation, or training amounts to deliberate indifference. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 390 (1989)). While a single decision can occasionally create liability, that decision must be made by the official with "final policymaking authority." *See Stickley v. Sutherly*, 667 F. Supp.

---

[10] Defendants also contend that Plaintiff's free speech claim against the school board under Article I, Section 12 of the Virginia Constitution is barred by sovereign immunity, since Virginia law permits a private cause of action under the Virginia Constitution against a governmental entity only where the provision is self-executing (which in any case is limited to claims for declaratory judgment and injunctive relief; s*ee Ibanez v. Albemarle Cnty. Sch. Bd.*, 897 S.E.2d 300, 311-12 (Va. Ct. App. 2024)) or where the General Assembly, by creating a cause of action, has expressly waived sovereign immunity. See *Mais v. Albemarle Cnty. Sch. Bd.*, 657 F. Supp. 3d 813, 819, 823 (W.D. Va. 2023). Given that Plaintiff's Virginia free speech claim is independently subject to dismissal on the merits, the Court need not address this alternative basis.

13

2d 664, 673 (W.D. Va. 2009) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.12 (1986)).

Plaintiff argues that her claim should not be dismissed because she has alleged that "[t]he actions of Defendants reflected an unconstitutional policy or custom of Defendant Fairfax County School Board to retaliate against, harass, intimidate and silence FCPS employees who report internally or who speak out publicly against unlawful conduct engaged in by other FCPS employees." [Am. Compl.] ¶ 123. But this thoroughly conclusory allegation is not supported by any allegation, conclusory or otherwise, that any of the Defendants have retaliated against any other whistleblower (let alone on similar facts). *See Johnson v. Baltimore City, Maryland*, 163 F.4th 808, 823 (4th Cir. 2026) (plaintiff police officer failed to plead municipal policy or custom of, *inter alia*, retaliating against fellow officers who stood up against police department for violations of their civil rights, where only specific instances that officer alleged in support of her *Monell* claim were her own). Second, Plaintiff alleges that FCPS failed to train its school officials in the constitutional limits on retaliatory discipline, but the Second Amended Complaint contains no particularized allegations concerning this lack of training. In any event, and as the Court has concluded, there was a reasonable basis for the Individual Defendants' belief that their disciplinary actions against Plaintiff were lawful; and Plaintiff has therefore failed to allege facts that would make plausible any claim that she was harmed by a lack of training.

In sum, Plaintiff has failed to show that municipal liability exists under *Monnell,* and her Section 1983 claim against the school board and the Individual Defendants in their official capacities must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Motion is **GRANTED** as to all Counts, and this action is **DISMISSED**.

_____ /s/
Anthony J. Trenga
Senior U.S. District Judge

May 8, 2026
Alexandria, Virginia

15